UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

WELL-COM ASSOCIATES, L.P.,

Plaintiff,

v.

HONEYWELL INTERNATIONAL, INC.,

Defendant.

# 05·10056 JLT

Civil Action No.

RECEIPT #_____
AMOUNT $_____150.00____
SUMMONS ISSUED___1_____
LOCAL RULE 4.1___✓_____
WAIVER FORM___✓_____
MCF ISSUED____✓_____
BY DPTY. CLK.___M.P._____
DATE_____1/10/05_____

## COMPLAINT

Well-Com Associates, L.P. ("Well-Com") brings this complaint for relief under the

Comprehensive Environmental Response, Compensation, and Liability Act of 1980

("CERCLA"), 42 U.S.C. § 9601 et seq., and Massachusetts G.L. c. 21E, against Honeywell

International, Inc. ("Honeywell"), and alleges as follows:

## THE PARTIES

MAGISTRATE JUDGE____MBB____

1.    Plaintiff Well-Com is a Massachusetts limited

partnership, with a principal place of business at 300 Commercial Street, Malden, Massachusetts.

2.    Defendant Honeywell is a corporation organized and existing under the laws of

Delaware with its principal place of business in Morristown, New Jersey.  Honeywell is in the

business of manufacturing products and technologies related to homes, buildings, automobiles,

power generations systems, chemicals, fibers, and plastics, among other things.

3.    Honeywell is the corporate successor of AlliedSignal, Inc. ("Allied"), a Delaware

corporation with a principal place of business in New Jersey, and the Barrett Company

("Barrett"), a chemical company that began as a wholly owned subsidiary of Allied and eventually merged into an operating division of Allied. The corporate history of Allied and Barrett is set forth below in paragraphs 6 and 7.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction pursuant to 42 U.S.C. § 9601, et seq. and 28 U.S.C. §§ 1331 and 2201. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over all claims arising under Massachusetts law.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because it is where both the events giving rise to the claim occurred, and where the property that is the subject of the action is situated.

## FACTS

### The Defendant

6.      On information and belief, Allied began its corporate history as Allied Chemical and Dye Corporation, which was formed in 1920 as an amalgamation of five chemical companies: Barrett, Solvay Process Company, General Chemical Company, National Aniline & Chemical Company, and Semet-Solvay Company. The five companies operated as wholly owned subsidiaries until their merger in the 1940s, at which point they became operating divisions of Allied Chemical and Dye Corporation.

7.      On information and belief, Barrett merged with Allied in 1941.

8.      In 1958, Allied Chemical and Dye Corporation changed its name to Allied Chemical Corporation. In 1981, Allied Chemical Corporation changed its name to Allied Corporation. In 1985, Allied-Signal Inc. was formed when Allied Corporation

00887346                                        2

merged with The Signal Companies, Inc. In 1993, Allied-Signal, Inc. changed its name to

AlliedSignal. In 1999, Honeywell and Allied merged, and the new company has operated under

the name of Honeywell.

## The Site

9.      On information and belief, in 1932, Barrett acquired a parcel of land of

approximately 9.5 acres located at what is now known as 378 Commercial Street, Malden,

Massachusetts ("Site").

10.     On information and belief, the Site was undeveloped marshland at the time of

Barrett's purchase of the property.

11.     At the time of its purchase in 1932, Barrett had already received a license from the

Commonwealth of Massachusetts for the rights to: 1) dredge the Malden River; 2) fill a portion

of the tidal creek on the Site; and 3) build a pier on the Malden River. On information and belief,

at some point between 1932 and 1939 Barrett exercised all of those rights under the license.

12.     On information and belief, on or about 1936 Barrett began construction of a coal

tar processing plant at the Site ("Plant"), and on or about 1937 Barrett opened the Plant for the

business of manufacturing and selling a variety of coal tar products, industrial chemicals, lead-

based paints, and protective coatings.

13.     On information and belief, Barrett received raw coal tar for processing via barge

and rail car.

14.     On information and belief, the Plant included a number of above and below

ground tanks for the storage and processing of coal tar and other chemicals. A drainage pipe led

from the tanks and process areas into an adjacent water body on the southern border of the Site

known as Little Creek, which feeds directly into the Malden River, located on the eastern border of the Site.

15.    On information and belief, a sand filter bed was located on the southwestern corner of the Site, immediately south of a railroad spur and immediately north of Little Creek. A sump structure and connecting drainage pipe led from the railroad spur in the direction of the filter bed, adjacent to Little Creek. A true copy of a photograph of the Site taken in approximately 1939 is attached hereto as Exhibit A.

16.    In 1941, Barrett deeded the Site to Allied Chemical and Dye Corporation in connection with the merger of the two companies.

17.    On information and belief, between the years 1937 and 1965, Barrett, and then Allied Chemical and Dye Corporation in 1941, operated the Plant at the Site, and there were a number of incidents in which tanks and stills on the Site experienced spills, leaks, fires, or explosions, including in approximately 1937, a 30,000 gallon spill that occurred at the Site.

18.    On information and belief, in filling the Site and operating the Plant, Allied and Barrett released hazardous substances and materials, including coal tar, coal tar related compounds, and other materials related to Plant operations, at the Site.

19.    In 1965, Allied Chemical Corporation sold the Site to Wellington Realty Corporation; at that time the Site was in a contaminated condition, and Allied did not remove or otherwise remediate the contamination at the Site upon the sale to Wellington.

20.    On information and belief, after the sale of the Site to Wellington Realty Corporation, Allied Chemical Corporation retained a facility on a leased back portion of the Site, which was occupied and operated by the Plastics Division of Allied Chemical Corporation until

at least 1970.

21.    In 1981, Wellington Realty Corporation deeded the Site to Wellington Realty Co., a Massachusetts Limited Partnership.

22.    In 1983, Wellington Realty Co., L.P. deeded the Site to Wellington Realty Co., a Massachusetts general partnership.

23.    In December of 1986, Wellington Realty Co. deeded the Site to Wellington Realty Company Limited Partnership.  That same month, Wellington Realty Company deeded a 50% undivided interest in the Site to Commercial Street Properties, Inc., a 49% undivided interest in the Site to Well-Com Associates, Inc., and a 1% undivided interest to Well-Com, Inc.

24.    In July of 1996, Commercial Street Properties, Inc. deeded its 50% undivided interest in the Site to Well-Com Associates, Inc.

25.    In November of 1996, Well-Com, Inc. deeded its 1% undivided interest in the Site to Plaintiff Well-Com Associates, L.P.  That same month, Well-Com Associates Inc. deeded its 99% interest in the Site to Well-Com, giving Well-Com full ownership of the Site.

26.    On information and belief, the above ground storage tanks at the Site were removed on or about 1966, and certain below ground storage tanks were removed on or about 1974.

27.    On information and belief, at some point in the mid 1970s, certain buildings associated with the plant were demolished and new buildings or additions to existing buildings were built.

28.    Since Allied's sale of the Site to Wellington Realty Corporation, the Site has been used for storage, warehousing, and parking of commercial vehicles.

29.    No release of oil or hazardous materials has occurred
at the Site as a result of Site usage by Well-Com or any of its predecessors in interest since
Wellington Realty Co. sold the Site in 1986.

30.    A number of environmental studies of the area known as the "Lower Commercial
Street Area," in which the Site is located, were conducted throughout the mid to late 1980s,
leading to the discovery of coal tar, coal tar related compounds, and other hazardous substances
and materials on the Site.

31.    In December of 1986, Wellington Realty Co., Allied Corporation, and Well-Com,
Inc., each received a "Notice of Responsibility Pursuant to M.G.L. Chapter 21E" from the
Massachusetts Department of Environmental Quality Engineering, now known as the
Massachusetts Department of Environmental Protection ("DEP"), informing those parties of their
potential financial responsibility for environmental conditions at the Site.  All three parties
shared in the costs of the investigations of the entire lower Commercial Street area, which also
included 326 and 356 Commercial Street.

32.    In 1987, DEP assigned a release tracking number and designated the Site as a
Confirmed Disposal Site.

33.    In 2000, acting in accordance with revised Massachusetts Contingency Plan
("MCP") regulations, Rizzo Associates, Inc. ("Rizzo") prepared a Phase I Initial Site
Investigation and Tier Classification Submittal ("Phase I report") for the Site and submitted it to
DEP on behalf of Well-Com.  The Phase I report classified the Site as a Tier II disposal site
pursuant to the MCP.

34.    The Phase I report subsurface investigation revealed elevated concentrations

above the Reportable Concentrations ("RCs") under the MCP of polycyclic aromatic hydrocarbon ("PAH") compounds, lead, and arsenic in the soil.

35.      The subsurface investigation also revealed elevated concentrations above the applicable RCs of PAH compounds, extractable petroleum hydrocarbon ("EPH") compounds, cadmium, and cyanide in the groundwater.

36.      In April, 2001, Rizzo provided Well-Com with a proposal to implement a subsurface investigation at the Site and to prepare a Phase II Comprehensive Site Assessment and Phase III Remedial Action Alternatives Report ("Phase II/III report").

37.      On July 3, 2001, Well-Com served Honeywell with notice, pursuant to Mass. G. L. c. 21E, §4A, of its intent to seek contribution from Honeywell for the costs of environmental remediation at the Site, including costs already expended on the Phase I report.

38.      In November of 2001, acting pursuant to the procedure set forth in G. L. c. 21E, §4A, representatives of Well-Com and Honeywell met to discuss settlement. The parties were unsuccessful in reaching an agreement for allocating the costs of remediation amongst themselves.

39.      Since the parties' meeting, Well-Com undertook an extensive investigation of the history of the Site and Barrett and Allied's operations at the Site in order to enhance future remedial efforts.

40.      Well-Com's investigation also included a survey of other environmental reports related to the surrounding area, which is now part of an EPA-funded redevelopment project known as Telecom City.

41.      On November 26, 2003, DEP issued a Notice of Noncompliance with the MCP to

Well-Com, stating that the MCP deadlines had expired for submission of the Phase II/III report and a Phase IV Remedy Implementation Plan ("Phase IV plan").

42.    Well-Com requested an extension from DEP and received a revised deadline of July 1, 2004 for submission of the Phase II/III report, and a September 1, 2004 deadline for submission of the Phase IV plan.

43.    On March 25, 2004, Rizzo provided Well-Com with an updated proposal to implement the Phase II/III report, which Well-Com forwarded to Honeywell.

44.    On April 23, 2004, representatives of Well-Com hosted a meeting with representatives of Honeywell to share the results of its historic research of the Site and discuss plans for Site remediation.

45.    In May of 2004, Rizzo commenced subsurface investigations at the Site in connection with the Phase II/III report.

46.    On June 1, 2004, Well-Com and Honeywell entered into a "Memorandum of Agreement and Tolling Agreement" ("Tolling Agreement"), tolling any applicable statute of limitations while Rizzo prepared the Phase II/III report in accordance with the DEP deadline and the parties further discussed settlement.

47.    On June 3, 2004, Well-Com hosted another meeting with Honeywell to discuss the Phase II/III Report.

48.    On June 15, 2004, at Honeywell's request, Well-Com applied for and received from DEP an additional extension for the filing of the Phase II/III report of July 21, 2004.

49.    On July 20, 2004, at Honeywell's request, Well-Com applied for and received additional extensions from DEP of August 6, 2004 for the Phase II Comprehensive Site

Assessment, August 27, 2004 for the Phase III Remedial Action Alternatives Report, and

December 17, 2004 for the Phase IV plan.

50.    Throughout the month of July, Well-Com and Honeywell prepared and circulated

written comments to a draft Phase II Comprehensive Site Assessment provided by Rizzo, which

they discussed with Rizzo during telephone conference calls. The Phase II Comprehensive Site

Assessment was filed in accordance with the deadline of August 6, 2004.

51.    The Phase II report's subsurface investigation further delineated the extent of soil

and groundwater contamination at the Site and also identified an area of Little Creek sediments

containing elevated concentrations of EPH, PAH, lead, arsenic, cadmium, chromium, and

mercury. The subsurface investigation revealed certain hot spots of soil and groundwater

contamination on the Site, including two large areas of viscous and semi-viscous coal tars that

represented non aqueous phase liquid (NAPL) under the MCP. These contaminants are by-

products of Barrett operations including coal tar processing, paint and dye production and

industrial chemical production.

52.    The Phase II report included a risk assessment, which found a condition of

"significant risk" to human health, the environment and public welfare.

53.    On August 20, 2004, Well-Com and Honeywell discussed the draft Phase III

report provided by Rizzo in late July of 2004, and had additional conferences concerning the

Site.

54.    On August 27, 2004, the Phase III report was filed in accordance with the DEP

deadline.

55.    The Phase III report evaluated a number of remedial alternatives and selected

excavation and off-site disposal as the remedy for contaminated soils and Little Creek sediments. The Phase III report also selected natural attenuation with spot pump and treat, in-situ chemical oxidation, and enhanced bioremdiation as the remedy for contaminated groundwater, after evaluating a number of alternatives.

56.    On September 15, 2004, the parties extended the Tolling Agreement until November 22, 2004, in order to provide Honeywell with an opportunity to prepare an alternative proposal to that contained in the Phase III report ("Honeywell Proposal").

57.    On November 5, 2004, Rizzo conducted additional soil and Little Creek sediment sampling on the Site, at Honeywell's request and in consultation with MACTEC, Inc., Honeywell's contractor in charge of preparing the Honeywell Proposal.  Rizzo provided MACTEC, Inc. with split samples of all samples collected.

58.    The parties further extended the Tolling Agreement until December 16, 2004, and again to January 9, 2005.

59.    On December 1, 2004, Honeywell provided Well-Com with the Honeywell Proposal.

60.    On December 16, 2004, representatives of Well-Com and Honeywell met to discuss the Honeywell Proposal and the possibility of settlement.

61.    Well-Com and Honeywell remain unable to reach an agreement for addressing Site contamination and allocating the costs of remediation.

62.    Well-Com has spent and continues to spend substantial sums for the investigation, assessment, and remedial response (collectively, "response costs") at the Site in accordance with the MCP.

63.    Well-Com's incurrence of response costs has been ongoing and is expected to continue.

64.    A substantial portion of the response costs result directly from contamination at the Site caused by Allied's use of the Site; Allied has had the benefit of the money it received to the sale of the Site since 1965, but has failed the clean up or remediate the contamination at the Site.

## COUNT I

### (CERCLA cost recovery)

65.    Well-Com incorporates by reference paragraphs 1 through 64 as if fully set forth herein.

66.    Honeywell is a person liable under 42 U.S.C. § 9607(a)(2) for the release of hazardous substances on the site.

67.    Honeywell's release of hazardous substances has caused the Well-Com to incur, and will continue to cause Well-Com to incur, "necessary costs of response" as defined by 42 U.S.C. § 9607(a)(4)(B).

68.    Well-Com's response actions are reasonable and consistent with the National Contingency Plan ("NCP").

71.    Well-Com has not caused any of the contamination at the Site.

72.    Well-Com is eligible for the defense to liability set forth in 42 U.S.C. § 9607(b)(3).

73.    Honeywell is subject to strict and joint and several liability pursuant to 42 U.S.C. § 9607(a).

00887346                                        11

74.     By reason of the foregoing, Well-Com is entitled to:  a) recover from Honeywell all of its necessary costs of response expended, including all costs spent by Well-Com in researching the Site history; and b) a judgment declaring Honeywell liable for necessary costs of response that Well-Com will expend in the future, in accordance with its final remediation plan.

## COUNT II

### (CERCLA contribution)

75.     Well-Com incorporates by reference paragraphs 1 through 74 as if fully set forth herein.

76.     The same prima facie elements that support Well-Com's claim for cost recovery, set forth above, also support Well-Com's claim in the alternative for contribution and equitable allocation pursuant to 42 U.S.C. § 9607.

77.     By reason of the foregoing, Well-Com is entitled to:  a) recover from Honeywell an equitable allocation of all of its necessary costs of response expended, including all costs spent by Well-Com in researching the Site history; and b) a judgment declaring Honeywell liable for necessary costs of response that Well-Com will expend in the future, in accordance with its final remediation plan.

## COUNT III

### (Massachusetts G.L. c. 21E)

78.     Well-Com incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

79.     Honeywell is a person liable under Mass. G.L. c. 21E, § 5(a)(2).

80.     Honeywell's release of hazardous materials has caused Well-Com to incur, and

will continue to cause Well-Com to incur, reasonable costs of "response" as defined by G.L. c. 21E §§ 2 and 4.

81.    Well-Com's has complied with Mass. G.L. c. 21E, § 4A, and its response actions are necessary, appropriate and consistent with the MCP.

82.    By reason of the foregoing, Well-Com is entitled to recover from Honeywell all of its response costs, both past and future, including all costs spent by Well-Com in researching the Site history, and all reasonable attorneys' fees, pursuant to G.L. c. 21E, §§ 4 and 4A.

## PRAYER FOR RELIEF

WHEREFORE, Well-Com respectfully requests that this Court enter:

1.    Against Honeywell, a judgment for all response costs incurred at the Site, pursuant to 42 U.S.C. § 9607(a), or, in the alternative, an equitable allocation for the full amount pursuant to 42 U.S.C. § 9607;

2.    Against Honeywell, a judgment for all response costs incurred at the Site, pursuant to G.L. c. 21E, §§ 4 and 4A;

3.    Against Honeywell, a declaratory judgment establishing its liability in any action seeking recovery of further response costs related to its release at the Site, pursuant to 42 U.S.C. § 9613(g)(2) and G.L. c. 21E, §§ 4 and 4A;

4.    Against Honeywell, a judgment for attorneys' fees, pursuant to G.L. c. 21E, § 4A; and

5.    Such other relief as the Court deems appropriate.

Plaintiff claims a trial by jury for all claims so triable.

Well-Com Associates, L.P.

A.  Neil Hartzell, Esq. (BBO #544752)
Matthew M. O'Leary (BBO #~~641002~~)
                             652033
Donovan Hatem LLP
Two Seaport Lane
Boston, MA  02110
(617) 406-4500


Brian A. Cafferty, Esq. (BBO #637781)
Combined Properties
300 Commercial Street
Suite 25
Malden, MA  02148
(781) 321-7800

Dated:  January 10, 2004



# CIVIL COVER SHEET

%JS 44 (Rev. 11/04)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

Well—Com Associates, L.P.

**(b)** County of Residence of First Listed Plaintiff **Middlesex County**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number) **(617) 406-4500**
A. Neil Hartzell, Donovan Hatem LLP,
2 Seaport Lane, Boston, MA 02210

## DEFENDANTS

Honeywell International, Inc.

County of Residence of First Listed Defendant **Morris County, NJ**
(IN U.S. PLAINTIFF CASES)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known) Unknown

05 10056 JLT

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☒ 3  Federal Question (U.S. Government Not a Party)

☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☒ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **PRISONER PETITIONS** | ☐ 871 IRS —Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 510 Motions to Vacate Sentence | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | **Habeas Corpus:** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 530 General | | |
| | ☐ 440 Other Civil Rights | ☐ 535 Death Penalty | | |
| | | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

PERSONAL INJURY
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability
PERSONAL PROPERTY
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. Section 9601 et seq.

Brief description of cause:
Plaintiff seeks recovery for costs related to release of hazardous substances.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions)

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1.  Title of case (name of first party on each side only).  Well-Com Associates, L.P.
    v. Honeywell International, Inc.

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.  (See
    local rule 40.1(a)(1)).

    [ ]    I.     160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

    [X]    II.    195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,      *Also complete AO 120 or AO 121
                  740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

    [ ]    III.   110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
                  315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
                  380, 385, 450, 891.

    [ ]    IV.    220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,     05·10056 JLT
                  690, 810, 861-865, 870, 871, 875, 900.

    [ ]    V.     150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)).  If more than one prior related case has been filed in
    this district please indicate the title and number of the first filed case in this court.

    None

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?
                                                                        YES [ ]    NO [X]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See
    28 USC §2403)
                                                                        YES [ ]    NO [X]

    If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?
                                                                        YES [ ]    NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?
                                                                        YES [ ]    NO [X]

7.  Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
    Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule
    40.1(d)).
                                                                        YES [X]    NO [ ]

    A.  If yes, in which division do all of the non-governmental parties reside?

        Eastern Division [X]        Central Division [ ]        Western Division [ ]

    B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
        agencies, residing in Massachusetts reside?

        Eastern Division [ ]        Central Division [ ]        Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court?  (If
    yes, submit a separate sheet identifying the motions)
                                                                        YES [ ]    NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  A. Neil Hartzell
ADDRESS  Donovan Hatem LLP, 2 Seaport Lane, Boston, MA   02210
TELEPHONE NO.  (617) 406-4500

(Coversheetlocal.wpd - 10/17/02)