UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WELL-COM ASSOCIATES, L.P., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HONEYWELL INTERNATIONAL INC., )<br>)<br>Defendant. )<br>) | Civil Action No. 05-10056-JLT |

### ANSWER AND AFFIRMATIVE DEFENSES

COMES NOW the defendant in the above-captioned cause, Honeywell International, Inc. ("Honeywell"), and as and for its Answer and Affirmative Defenses to the Complaint in that action, states as follows:

### THE PARTIES

1.  Admitted.

2.  Admitted.

3.  Admitted.

### JURISDICTION AND VENUE

4.  Honeywell Admits that this Court has jurisdiction over the subject matter hereof.

5.  Honeywell Admits that venue is proper in this District.

## FACTS

### The Defendant

6. Admitted.

7. Admitted.

8. Admitted.

### The Site

9. Admitted.

10. Honeywell is without sufficient information to either admit or deny the condition of the site in or around 1932, and demands proof thereof. And further answering, Honeywell states that it is informed and believes, and on that basis alleges, that Bell Rock Leather Tanning Corp., Eastern Metals & Refinishing Co., and Richards and Company (a metal finishing company) all previously held title to the Site; and the extent to which (if at all) these entities utilized the site and contributed to its current environmental condition remains unclear.

11. Honeywell Admits that Barret had certain licenses from the Commonwealth of Massachusetts, which licenses speak for themselves, and further Admits that Barret exercised some rights under said licenses. In all other respects, Honeywell is without sufficient information to either admit or deny the material allegations of paragraph 11 of the Complaint and demands proof thereof.

12. Honeywell Admits that, on or about 1936, Barret began construction of a coal tar processing plant at the Site ("Plant"), and that on or about 1937 Barret

opened the Plant for the business of manufacturing and selling a variety of coal tar products. In all other respects, Honeywell is without sufficient information to either admit or deny the material allegations of paragraph 12 of the complaint, and demands proof thereof.

13. Honeywell is without sufficient information to either admit or deny the material allegations of paragraph 13 of the Complaint, and demands proof thereof.

14. Honeywell Admits that the Plant included a number of above and below ground tanks for the storage and processing of coal tar and other chemicals. In all other respects, Honeywell is without sufficient information to either admit or deny the material allegations in paragraph 14 of the Complaint, and demands proof thereof.

15. Honeywell Admits that certain drawings depict a filter bed on the southwestern corner of the Site, and further Admits that Exhibit A to the Complaint is a photograph that includes the Site taken in or about 1939. In all other respects, Honeywell is without sufficient information to either Admit or Deny the material allegations of paragraph 15 of the Complaint and demands proof thereof.

16. Admitted.

17. Honeywell Admits that, during the period between 1937 and 1965, there were certain press reports of incidents and the like, but is without any further information to either Admit or Deny the material allegations of paragraph 17 of the Complaint and demands proof thereof.

18. Honeywell does not understand what is meant by "filling the site" or "hazardous substances and materials", and therefore cannot respond to same. Honeywell is without sufficient information to either Admit or Deny the remaining allegations of paragraph 18 of the Complaint and demands proof thereof.

19. Honeywell Admits that, in 1965, Allied Chemical Corporation sold the Site to Wellington Realty Corporation; and in all other respects Denies the material allegations of paragraph 19 of the Complaint. Further answering, Honeywell states that the term "contaminated condition" as used therein is vague and ambiguous, and therefore cannot be responded to; and the condition of the Sites, as well as its past and then-current uses, were open, obvious, and well known to Wellington Realty Corporation at the time of its purchase of the Site.

20. Admitted.

21. Based upon information provided by Well-Com to date and subject to further discovery, admitted. Further answering, Honeywell states that it is unclear to what extent, if at all, the various transactions transferring all or a portion of the title to the Site from and to various entities as pled in paragraphs 21 through 25 of the Complaint were at arms' length, between unrelated parties, and for value, and demands proof thereof.

22. Based upon information provided by Well-Com to date and subject to further discovery, admitted. Further answering, Honeywell states that it is unclear to what extent, if at all, the various transactions transferring all or a portion of

the title to the Site from and to various entities as pled in paragraphs 21 through 25 of the Complaint were at arms' length, between unrelated parties, and for value, and demands proof thereof.

23. Based upon information provided by Well-Com to date and subject to further discovery, admitted. Further answering, Honeywell states that it is unclear to what extent, if at all, the various transactions transferring all or a portion of the title to the Site from and to various entities as pled in paragraphs 21 through 25 of the Complaint were at arms' length, between unrelated parties, and for value, and demands proof thereof.

24. Based upon information provided by Well-Com to date and subject to further discovery, admitted. Further answering, Honeywell states that it is unclear to what extent, if at all, the various transactions transferring all or a portion of the title to the Site from and to various entities as pled in paragraphs 21 through 25 of the Complaint were at arms' length, between unrelated parties, and for value, and demands proof thereof.

25. Based upon information provided by Well-Com to date and subject to further discovery, admitted. Further answering, Honeywell states that it is unclear to what extent, if at all, the various transactions transferring all or a portion of the title to the Site from and to various entities as pled in paragraphs 21 through 25 of the Complaint were at arms' length, between unrelated parties, and for value, and demands proof thereof.

26. Based upon information provided by Well-Com to date and subject to further discovery, Honeywell admits that certain tanks were removed from the Site.

       Honeywell is informed and believes, and on that basis alleges, that these tanks were removed by and/or at the direction of Wellington and the Malden Redevelopment Authority. In all other respects, Honeywell is without information to either admit or deny the material allegations of paragraph 26 of the Complaint, and demands proof thereof.

27. Based upon information provided by Well-Com to date and subject to further discovery, admitted. Further answering, Honeywell states it does not know to what extent, if at all, such demolition and construction created environmental issues at the site, and is currently investigating same.

28. Honeywell admits that Wellington Realty Corporation and its various successors in interest have utilized the site for various purposes. In all other respects Honeywell is without sufficient information to either Admit or Deny the material allegations of paragraph 28 of the Complaint, and demands proof thereof. And further answering, Honeywell, upon information and belief, alleges that Wellington Realty Corporation and its various successors in interest, in utilizing the site, have introduced contaminants of concern to the Site, have adversely affected the environmental condition of the Site; and Honeywell is conducting an ongoing investigation to determine the extent of same.

29. Denied.

30. Honeywell Admits that a number of environmental studies of the area specified were conducted on or about the mid to late 1980s, which studies

        speak for themselves. In all other respects, Honeywell Denies the material allegations of paragraph 30 of the Complaint.

31. Honeywell Admits that, prior to 1986, it shared in the costs of certain environmental investigations; and that the parties received a "Notice of Responsibility Pursuant to M.G.L. Chapter 21E" in or about December of 1986; and that, thereafter, Honeywell shared, to a lesser extent, in an environmental investigation of the Site. In all other respects, Honeywell Denies the material allegations of paragraph 31 of the Complaint.

32. Admitted.

33. Honeywell Admits that, at some time during 2000, Rizzo submitted a document entitled "Phase I Initial Site Investigation and Tier Classification Submittal", which document speaks for itself. In all other respects, Honeywell Denies the material allegations of paragraph 33 of the Complaint.

34. Honeywell Admits that the Phase I report identified certain substances, and refers to that report, which speaks for itself. In all other respects, Honeywell Denies the material allegations of paragraph 34 of the Complaint.

35. Honeywell Admits that the Phase I report identified certain substances, and refers to that report, which speaks for itself. In all other respects, Honeywell Denies the material allegations of paragraph 35 of the Complaint.

36. Honeywell Admits that, in or about April, 2001, Rizzo provided Well-Com with a proposal, which proposal speaks for itself. In all other respects, Honeywell Denies the material allegations of paragraph 36 of the Complaint.

37. Honeywell Admits, that on or about July 3, 2001, Well-Com served Honeywell with a notice, which notice speaks for itself. In all other respects, Honeywell Denies the material allegations of paragraph 37 of the Complaint.

38. Honeywell Admits that, on or about November 2001, representatives of Well-Com and Honeywell engaged in a confidential settlement meeting which did not resolve the outstanding issues between them. In all other respects, Honeywell Denies the material allegations of paragraph 38 of the Complaint.

39. Honeywell does not know what Well-Com has done, further answering, Honeywell alleges that such efforts have been neither necessary nor effective, and Well-Com failed to meet its obligations under the MCP.

40. Honeywell does not know what Well-Com has done, further answering, Honeywell states that such efforts have been neither necessary nor effective, and Well-Com failed to meet its obligations under the MCP.

41. Admitted.

42. Honeywell Admits that, on or about December 9, 2003, Well-Com received a revised "Notice of Non-Compliance with the MCP", which notice speaks for itself, and set forth certain dates as stated therein. In all other respects, Honeywell Denies the material allegations of paragraph 42 of the Complaint.

43. Honeywell Admits that, on or about March 25, 2004, Rizzo submitted to Well-Com, and on or about March 26, 2004, Well-Com submitted to Honeywell, a document entitled, "Proposal for Supplemental Subsurface Investigation", which document speaks for itself. In all other respects, Honeywell Denies the material allegations of paragraph 43 of the Complaint.

44. Admitted.

45. Honeywell is informed and believes, and on that basis alleges, that Rizzo performed certain soil borings at the Site in or about April, 2004. In all other respects, Honeywell Denies the material allegations of paragraph 45 of the Complaint.

46. Honeywell Admits that, on or about June 1, 2004, it entered into an agreement entitled "Memorandum of Agreement and Tolling Agreement," which document speaks for itself. In all other respects, Honeywell Denies the material allegations of paragraph 46 of the Complaint.

47. Admitted.

48. Honeywell Admits that Well-Com applied for and received an extension to July 21, 2004 for the filing of the Phase II/III report. In all other respects, Honeywell Denies the material allegations of paragraph 48 of the Complaint.

49. Honeywell Admits that Well-Com applied for and received additional extensions to August 6, 2004 for the filing of the Phase II Comprehensive Site Assessment, August 27, 2004 for the Phase II Remedial Action Alternative Report, and December 17, 2004 for the Phase IV plan. In all other respects, Honeywell Denies the material allegations of paragraph 49 of the Complaint.

50. Honeywell Admits that, during various times in the month of July, 2004, its representatives made comments about and circulated revisions to a draft Phase II Comprehensive Site assessment, in consultation with various Well-Com representatives, including Rizzo; and that a Phase II Comprehensive Site

assessment was filed on or about August 6, 2004. In all other respects, Honeywell Denies the material allegations of paragraph 50 of the Complaint.

51. Honeywell states that the Phase II report is a written document which speaks for itself. In all other respects, Honeywell Denies the material allegations of paragraph 51 of the Complaint, including (but not limited to) the characterizations and/or accuracy of the document.

52. Honeywell states that the Phase II report is a written document which speaks for itself. In all other respects, Honeywell Denies the material allegations of paragraph 52 of the Complaint, including (but not limited to) the characterizations and/or accuracy of the document.

53. Honeywell Admits that, on or about August 20, 2004, Well-Com and Honeywell representatives had certain confidential settlement discussions. In all other respects, Honeywell Denies the material allegations of paragraph 53 of the Complaint.

54. Honeywell admits that, on or about August 27, 2004, a document purporting to be a "Phase III Report" was filed. In all other respects, Honeywell Denies the material allegations of paragraph 54 of the Complaint.

55. Honeywell states that the Phase III report is a written document which speaks for itself. In all other respects, including (but not limited to) the characterizations and/or accuracy of the document, Honeywell Denies the material allegations of paragraph 55 of the Complaint.

56. Honeywell Admits that, on or about September 14, 2004, the parties entered into an agreement entitled "First Amendment and Extension of Memorandum

of Agreement and Tolling Agreement of June 1,2004" which document speaks for itself. In all other respects Honeywell Denies the material allegations of paragraph 56 of the Complaint.

57. Honeywell Admits that, at its request, some time after November 5, 2004, its contractor, MACTEC, Inc., received certain samples from Rizzo, which were collected at various locations on the Site. In all other respects, Honeywell is without sufficient information to either Admit or Deny the material allegations of paragraph 57 of the Complaint, and demands proof thereof.

58. Honeywell Admits that, on or about November 18, 2004 and December 8, 2004, the parties entered into certain letter agreements , which documents speak for themselves. In all other respects, Honeywell Denies the material allegations of paragraph 58 of the Complaint.

59. Honeywell admits that, on or about December 1, 2004, it provided to Well-Com a letter entitled "Preliminary Draft - Settlement Confidential" which document speaks for itself, and is inadmissible. In all other respects, Honeywell Denies the material allegations of paragraph 59 of the Complaint.

60. Honeywell Admits that its representatives met with Well-Com representatives on or about December 16, 2004 to discuss various matters concerning the Site, which meeting was designated "settlement confidential". In all other respects, Honeywell Denies the material allegations of paragraph 60 of the complaint.

61. Honeywell Admits that the parties have been unable to resolve the differences between them. In all other respects, Honeywell Denies the material allegations of paragraph 61 of the Complaint.

62. Honeywell does not know what "substantial sums" means, and does not know what amounts, if any, Well-Com has expended, and to what extent, if at all, such expenditures (if any) were necessary, appropriate reasonable or in accordance with either the MCP or the NCP; and demands proof thereof.

63. Honeywell is without sufficient information to either admit or deny the extent (if any) of Well-Com's response costs, or their necessity, appropriateness, reasonableness and the extent to which (if at all) they are in accordance with either the MCP or the NCP; and demands proof thereof.

64. Denied.

## COUNT I

### (CERCLA Cost Recovery)

65. Honeywell incorporates by reference its responses to paragraphs 1 through 64 as if fully set forth herein.

66. Denied.

67. Denied.

68. Denied.

69. There is no paragraph numbered 69 in the Complaint, and no answer thereto is therefore required.

70. There is no paragraph numbered 70 in the Complaint, and no answer thereto is therefore required.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

## COUNT II

### (CERCLA Contribution)

75. Honeywell incorporates by reference its responses to paragraphs 1 through 74 as if fully set forth herein.

76. Denied.

77. Denied.

## COUNT III

### (Massachusetts G.L. c. 21E)

78. Honeywell incorporates by reference its responses to paragraphs 1 through 77 as if fully set forth herein.

79. Honeywell Admits that, for purposes of Mass. G.L. c. 21E, sec. 5(a)(2), it is a "person", but Denies that it is liable thereunder.

80. Denied. And further answering, Honeywell states that Well-Com and its various predecessors in interest took title to the Site fully aware of its environmental condition, and did so nevertheless, and that they then knew or should have known what costs, if any would ensue thereby, and that they therefore took the obligation upon themselves to pay such costs.

81. Denied.

82. Denied.

## AFFIRMATIVE DEFENSES

A. Plaintiff's claims are barred, in whole or in part, by applicable statutes of limitations.

B. Plaintiff is liable for 100% of all response costs under applicable statutory law.

C. All or part of Plaintiff's costs were unnecessary, inappropriate and unreasonable under M.G.L. c. 21E, sec. 4, and were incurred in a manner inconsistent with the Massachusetts Contingency Plan.

D. All or part of Plaintiff's costs were excessive, inappropriate and unnecessary and were incurred in a manner inconsistent with CERCLA and/or the National Contingency Plan.

E. Plaintiff's failure to promptly address the environmental situation at the Site exacerbated subsurface conditions and increased response costs, and, under M.G.L. c. 21E and CERCLA, Plaintiff therefore bears equitable responsibility for those increased costs.

F. Plaintiff has failed and continues to fail to mitigate its damages.

G. Any costs incurred by the Plaintiff resulted from acts or omissions of third parties who are not employees or agents of Honeywell and had no contractual relationship with Honeywell.

H. The Complaint fails to join all indispensable parties.

I. Plaintiff has failed to comply with the statutory prerequisites to filing its claim pursuant to M.G.L. c. 21E and CERCLA, and, therefore, is barred from obtaining relief.

J. Plaintiff failed to comply with M.G.L. c. 21E sec. 4A(d) and, therefore, is not entitled to an award of attorney fees.

K. The substances allegedly released at the Site do not constitute "hazardous material," within the definition of M.G.L. c. 21E, or "hazardous substances," within the definition of CERCLA.

L. All, or a portion of, the contamination at the Site is attributable to petroleum releases, and the Complaint fails to state a claim for costs attributed to such releases.

M. Plaintiff knew or had reason to know of the Site's condition at the time it took title to the Site.

N. Honeywell's predecessor in interest sold the property on an "as is" basis and Honeywell is therefore entitled to indemnification or should otherwise be held harmless by Well-Com and/or its predecessors in interest.

N. The statutes relied upon by the Plaintiff in its Complaint do not authorize the imposition of joint and several liability upon Honeywell.

O. In the event Honeywell is held liable for any of the Plaintiff's damages as alleged in the Complaint, then Honeywell's liability should be limited to its fair, equitable and proportionate contribution to the alleged harm at the Site.

P. In the event Honeywell is held liable for any of the Plaintiff's damages as alleged in the Complaint, then Honeywell's liability should be off-set by its response costs incurred at the Site to date.

Q. Plaintiff fails to plead a claim for which relief may be granted.

R. Plaintiff lacks standing to assert any claim against Honeywell under CERCLA.

S. Plaintiff's claims are barred by the doctrines of laches and estoppel.

## PRAYER FOR RELIEF

WHEREFORE, Honeywell respectfully requests that this Court enter:

1. Against Well-Com, a judgment for attorneys' fees, pursuant to M.G.L. c. 21E, sec. 4A(f);

2. Against Well-Com, a judgment in Honeywell's favor on all Counts brought by Well-Com against Honeywell;

3. Such other relief which to this Court seems appropriate.

Dated: April 22, 2005

HONEYWELL INTERNATIONAL INC.,

By its attorneys,

s/David B. Chaffin
Thomas K. Christo
BBO No. 083240
David B. Chaffin
BBO No. 549245
Hare & Chaffin
160 Federal Street
Boston, MA 02110
(617) 330-5000

Of Counsel:

Brian D. Israel, Esq.
Arnold & Porter, LLP
555 12th Street, NW
Washington, D.C. 20004
(202) 942-6546