UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| WELL-COM ASSOCIATES, L.P., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Docket Number 05-10056-JLT |
| HONEYWELL INTERNATIONAL, INC., | ) ) ) | |
| Defendant. | ) ) | |

## AFFIDAVIT OF ROBERT J. ANKSTITUS

I, Robert J. Ankstitus, having personal knowledge of the facts herein stated, under oath depose and say as follows:

1. I am a Senior Project Manager at Rizzo Associates, Inc. ("Rizzo"), a Tetra Tech Company.

2. I have been employed at Rizzo since 1992, and worked in the industry since 1975, including experience with two regulatory agencies and a remediation contractor.

3. I have been retained by Well-Com Associates, L.P. ("Well-Com") as a Licensed Site Professional in connection with property located at 378 Commercial Street, Malden, Massachusetts ("the Site").

4. I received my Bachelor of Science in Civil Engineering from the Worcester Polytechnic Institute in 1975.

5. I received my Master of Science in Civil/Environmental Engineering from the Worcester Polytechnic Institute in 1983.

6. I have attended the following training sessions:

    a. USEPA Incident Response Training, Vanderbilt University
    b. Hazardous Chemical Safety, J.T. Baker
    c. Personnel Protection and Safety, USEPA
    d. Hazardous Material Incident Operations, USEPA
    e. Sampling at Hazardous Materials Incidents, USEPA
    f. Removal Cost Management Systems, USEPA
    g. Hazard Evaluation and Environmental Assessment, USEPA
    h. Media for Managers, USEPA
    i. Emergency Treatment of Injuries, U.S. Army
    j. LSPA and DEP courses for MCP/LSP certification
    k. OSHA 40-Hour Health and Safety Training
    l. OSHA 8-Hour Refresher Training
    m. OSHA Competent Persons Training

7. I am a Registered Professional Engineer in Massachusetts since 1990.

8. I am a Licensed Site Professional in Massachusetts since 1993.

9. I am a Certified Hazardous Material Manager, Master Level.

10. I am a Licensed Industrial Wastewater Treatment Plan Operator, Grade 2.

11. In my present position with Rizzo, I am responsible for managing site investigations and remediation projects for public and private clients.

12. My duties include project scheduling, estimating, contract administration, contract compliance, contract negotiations, client relations, regulatory compliance, legal review, expert witness testimony, design, construction, site supervision, and site engineering.

13. My project experience includes execution and review of geotechnical studies, facility assessments, federal regulation, and Massachusetts Contingency Plan (MCP) compliance, treatment system design and construction, remediation of multimedia contaminants, underground storage tank (UST) replacement and remediation programs, transportation and disposal of hazardous wastes, site investigations, and proposal preparation.

14. My project experience includes site investigations; landfill remediation; landfill stabilization; leachate treatment; provision of alternative water supplies; lagoon stabilization and closure; demolition of contaminated structures; asbestos abatement; emergency response cleanup for oil and chemical spills; cleanup actions at chemical and disposal site fires; decontamination of industrial facilities and residential homes; remediation of releases of oils, hazardous materials; hazardous wastes and mixed wastes to soil, surfacewater, and groundwater; on-site treatment and remediation of oil and chemical wastes; response actions for releases to the air; UST decontamination and removals; aboveground storage tank (AST) decontamination and demolition; abandoned drum and buried drum site remediation; and pesticide use and pesticide burial site cleanups.

15. My experience with technologies at remediation sites includes soil vapor extraction; air stripping; excavation and disposal; on-site soil stabilization/encapsulation; bioventing; biotreatment; pump and treat systems; carbon treatment systems; ion exchange; on-site detoxification; asphalt batching; on-site incineration; air injection systems; air sparging; water curtains; slurry walls; liner systems; landfill gas venting and treatment; sedimentation; flocculation; precipitation; metals sequestering; UV/oxidation; thermal oxidation; chemical oxidation; on-site thermal desorption; phase separation; and dewatering.

16. I possess more than twenty years of emergency response project experience at hundreds of spill response incidents with local emergency officials, responsibly parties, cleanup contractors, and regulatory agencies.

17. I have handled multimedia response incidents for petroleum, PCBs, hazardous materials, and hazardous wastes.

18.  I have conducted training in first responder courses for federal Superfund Amendments and Reauthorization Act (SARA) Title III presentations to private industries and public agencies.

19.  Prior to joining Rizzo, I served as Senior Project Manager for Clean Harbors of Kingston, Inc. from 1998 to 1992, a Civil/Environmental Engineer, On-Scene Coordinator/Project Manager from 1977 to 1988 at the U.S. Environmental Protection Agency Prior, and as Field and Construction Engineer for Alaskan Resource Sciences Corporation from 1975 to 1977.

20.  As a Licensed Site Professional at the Site for Well-Com, I prepared and implemented the following documents:

   a.  Phase I Initial Site Investigation of August 18, 2000
   b.  Tier Classification Submittal of August 18, 2000
   c.  Phase II Comprehensive Site Assessment of August 6, 2004
   d.  Phase II Remedial Action Alternatives Report of August 27, 2004
   e.  Phase IV Remedy Implementation Plan of April 29, 2005
   f.  Release Abatement Measure Plan of May 24, 2005
   g.  Tier II Extension of September 1, 2005

21.  Rizzo submitted the above documents to the Department of Environmental Protection on behalf of Well-Com.  By virtue of these response actions, Well-Com has exercised due care with respect to the oil or hazardous material on the Site.  Well-Com has complied with the notification provisions of M.G.L. c. 21E, §7.

22.  Based on Site information and data, I have formed an opinion as to the source of the contaminants on the Site.

23.  It is my opinion that the contaminants on the Site are the direct result of past operations at the Site by Honeywell International, Inc. ("Honeywell") and its predecessors, including Allied Chemical and the Barrett Company.

24. It is also my opinion that Site usage by Well-Com and its tenants did not contaminate or contribute to the contamination at the Site.

25. The Barrett Company and its successors operated the Site as a coal tar facility for the production of Tarvia, Tarvia-lithic, bituminous concrete, asphalt, roofing materials, and a variety of industrial chemicals, paints and protective coatings from approximately 1937 through transfer of deed in June 1965.

26. According to an Allied Chemical Plot Plan last dated December 10, 1965, the Barrett Company (Allied Chemical Company) appears to have remained as a tenant to Wellington Realty Corporation on a portion of the Site located adjacent to the former sand filter bed following transfer of deed in 1965 through approximately 1974.

27. Pursuant to the Phase I Initial Site Investigation, Rizzo supervised the advancement of 15 soil borings at the Site.

28. Soil samples were collected during advancement of the soil borings for field screening and/or laboratory analysis. Three of the soil borings were completed as groundwater monitoring wells.

29. Stratified layers of coal tar were identified during subsurface investigations primarily on the southern portions of the Site. Rizzo Associates concluded that the source of coal tar compounds present at the Site are likely attributable to the previous Site usage by the Barrett Chemical Company and its successors as a coal tar facility.

30. Elevated concentrations of lead and arsenic were also identified in Site soils that were attributed to coal ash contaminated fill (not a coal tar processing related material from the

Barrett facility but related to the import of fill to the Site) at the Site as well as former coal tar facility operations.

31. In addition elevated concentrations of polynuclear aromatic hydrocarbon (PAH) and extractable petroleum hydrocarbon (EPH) compounds, cadmium and cyanide were detected in Site soil and groundwater and are also likely attributable to coal ash contaminated fill and past coal tar operations at the Site.

32. The subsurface investigation conducted by Rizzo Associates at the Site in June and July 1999 identified elevated concentrations of organic compounds and metals, including lead and arsenic, above the applicable Reportable Concentrations (RCs) in soil and groundwater at the Site that are likely attributable to coal ash fill and past coal tar operations at the Site.

33. Additionally, a review of plans of the Barrett Company facility indicate that a sump structure with connecting drainage piping from the railroad tracks servicing the Barrett facility and drainage piping from a tank storage area and coal tar process areas of the Barrett Plant discharged directly to Little Creek.

34. In 1944, there was a fire at the Site caused by a tar heater springing a leak, allowing "hot oil to fall to the ground." The oil ignited, resulting in a fire that "covered an area of about 100 square feet."

35. Pursuant to the Phase II Comprehensive Site Assessment, Rizzo conducted additional subsurface investigations at the Site, including the advancement of 89 soil borings, the installation of 7 new groundwater monitoring wells, the collection and laboratory analysis of soil and groundwater samples from newly installed soil borings and wells, the collection of 6 sediment samples and 3 surface water samples from the adjacent Little Creek, the collection of 3

sediment samples, and 3 surface water samples from the adjacent Malden River, and a groundwater elevation survey.

36. The following are contaminants that may be attributed to coal ash and coal tar materials that were identified in Site soils:

    a. Arsenic
    b. Lead
    c. Cyanide
    d. PCH
    e. EPH
    f. Coal tar non aqueous phase liquid (NAPL)

37. Site subsurface investigations have identified the following contaminants of concern (COCs) at the Site:

    a. Metals
    b. PAH
    c. EPH
    d. Cyanide
    e. Volatile organic compounds (groundwater)
    f. Coal tar NAPL

38. The presence of coal tar related COCs is likely attributable to former Site coal tar operations.

39. During Site investigation activities, stratified layers of coal tar and coal tar deposits were identified along the southern and central portions of the Site.

40. The presence of coal tar in areas known to have been filled during the period of operation by the Barrett Company coal tar facility at the Site suggests that the presence of coal tar within these fill areas can be attributed to the former operations of the coal tar facility at the Site.

41. Based on Rizzo's field observations and the laboratory analysis results for the soil samples collected at the Site, elevated concentrations of metals, PAH, and EPH can be attributed

to coal tar laden soils used as fill at the Site, likely byproducts of former coal tar operations at the Site.

42.     Three types of coal tar impacted materials were identified as being released at the Site (viscous or semi-viscous coal tar, non-viscous coal tar and sand/ash mix, and hardened (asphalt-like) coal tar and gravel); in addition, urban fill material potentially impacted by coal ash and/or coal tar products was identified in two areas of the Site.

43.     The highest concentration of Site COCs and measured thicknesses of coal tar were identified in the southern portions of the Site. The central and eastern portions of the Site were the locations of major filling operations conducted during the Barrett plant development and operation between 1937 and 1965.  The observed locations of identified coal tar source areas appear to correlate well with the observed features and structures of the former Barrett Company facility.

44.     The extent of groundwater contamination appears related to the presence of coal tar fill material both above and below the water table.

45.     Elevated concentrations of coal tar related compounds including EPH, PAH, and cadmium were detected in groundwater samples obtained from locations within or directly down gradient of identified coal tar source areas.

46.     Elevated concentrations of cyanide were also detected in the groundwater monitoring wells at the Site and may be related to former coal tar operations conducted at the Site.

47.     Visual and olfactory evidence exists of the presence of weathered coal tar sediments within Little Creek. From Rizzo's research of former Barrett facility plans, drainage

structures from coal tar processing and storage facilities apparently discharged directly to Little Creek.

48. During Site activities related to operation of the Barrett Company coal tar facility, there is evidence and reports of releases of coal tar and related compounds.

49. In addition, there is photographic and plan evidence of continued filling of site surface water features and wetland areas throughout development of the Site and operation of the plant by the Barrett Company between 1937 and 1965.

50. Aerial photos taken in 1939, 1955 and 1962 and plan evidence indicate that apparent disposal of coal tar and coal tar compounds likely occurred on the Site, in addition to the placement of fill.

51. The first reported evidence of release of oil or hazardous materials at the Site occurred in September of 1937.

52. As recorded by the Malden Evening News a holding tank at the plant exploded and caused the spill of 30,000 gallons of road tarvia onto the Site creating a fire that the Malden Evening News referred to as "a blazing sea of tarvia."

53. The expenses and actions of Well-Com to date were necessary and appropriate and consistent with the Massachusetts Contingency Plan within the meaning of M.G.L. c. 21E, §4 and the Federal Contingency Plan within the meaning of 42 U.S.C. §9607(a)(4)(B).

54. The anticipated actions and costs incurred by Well-Com in cleaning up the Site are necessary and appropriate and consistent with the Massachusetts Contingency Plan within the meaning of M.G.L. c. 21E, §4 and the National Contingency Plan within the meaning of 42 U.S.C. §9607(a)(4)(B).

55. The opinions contained herein are based on my experience, education and training described above as well as my personal observations and services provided to Well-Com in responding to the contamination at the Site.

Signed under the pains and penalties of perjury this 13th day of February, 2006.

/s/ Robert J. Ankstitus
**ROBERT J. ANKSTITUS**

**CERTIFICATE OF SERVICE**

I, Matthew M. O'Leary, hereby certify that on this 13th day of February, 2006, a copy of the foregoing was served on the attorney for the defendant by electronic means pursuant to Local Rule 5.2(b).

/s/ Matthew M. O'Leary
Matthew M. O'Leary

00979344.DOC