## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                               )

**WELL-COM ASSOCIATES, L.P.,**      )
                  **Plaintiff,**    )
                               )

    **vs.**                         )       **Docket No. 05-10056-JLT**
                               )

**HONEYWELL INTERNATIONAL, INC.,**  )
                  **Defendant.**  )
_____

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT, AND IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

      Plaintiff, Well-Com Associates, L.P. ("Well-Com") respectfully submits this Memorandum of Law in support of its Cross-Motion for Partial Summary Judgment (incorporated herein by reference) and in Opposition to Defendant Honeywell International, Inc.'s ("Honeywell's) Motion for Partial Summary Judgment.

## 1) PRELIMINARY STATEMENT

### (1) Procedural Background

    On January 10, 2005, Well-Com Associates, L.P. ("Well-Com") filed a Complaint against Honeywell International, Inc. ("Honeywell") in the United States District Court for the District of Massachusetts, under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601 et seq, and the Massachusetts Oil and Hazardous Material Release Prevention Act, Mass. Gen. Laws c. 21E, for the recovery of its costs with regard to the assessment, containment and removal of hazardous wastes at 378 Commercial Street in Malden (the "site"). Well-Com's complaint contains three counts: Count

One (CERCLA cost recovery) asserts that Honeywell is liable under 42 U.S.C. § 9607(a)(4)(B) for all of the response costs incurred by Well-Com in the assessment, containment or removal of hazardous materials from the site. Count Two (CERCLA contribution) asserts that, in the event the court should rule that Well-Com is not entitled to recover all of its costs pursuant an action for direct cost recovery under § 9607(a)(4)(B), and is limited instead to an action for contribution under § 9607, Well Com is still entitled to recover from Honeywell an equitable allocation of the necessary costs it has incurred in researching the Site history, and for the necessary costs of its continued response and clean up of the site, in accordance with its final remediation plan. Count Three (Massachusetts G.L. c. 21E) asserts that under G.L. c. 21E, § 4, § 4A and § 5, Well-Com is entitled to recover from Honeywell all of its response costs, both past and future, and all reasonable attorneys fees pursuant to G.L. c. 21E, § 15. Well-Com also seeks declaratory relief, pursuant to 42 U.S.C. § 9613(g)(2) and G.L. c. 21E, §§ 4 and 4A, establishing its liability for the recovery of further response costs related to the site.

On January 18, 2006, Honeywell filed a Motion for Partial Summary Judgment and Local Rule 56.1 Statement of Undisputed Facts, which asks the court to dismiss Count One (42 U.S.C. § 9607(a)(4)(B)) in its entirety. Honeywell argues that "Count I, a cost recovery claim under § 107 of CERCLA, will not lie because Well-Com is itself liable under CERCLA." Additionally, Honeywell seeks partial summary judgment with regard to Count Two (42 U.S.C. § 9607 contribution) and Count Three (G. L. c. 21E), on the grounds that "Well-Com is not entitled to 100% . . . of its past and future response costs." Honeywell does not contend that Well-Com either caused or contributed to the contamination at the site, but argues that Well-Com is not entitled to recover its full costs because it cannot assert and prove an affirmative

defense under 42 U.S.C. § 9607(b) or G.L. c. 21E, § 5 (c).  In particular, Honeywell argues that

proof of "innocent landowner status" is a condition precedent for assertion of a cost recovery

action under both  42 U.S.C. § 9607(a)(4)(B) and G.L. c. 21E, § 4,  § 5 and § 5(b).  Specifically,

Honeywell claims that Well-Com is barred from asserting a cost recovery action under both

statutes because it acquired the property with knowledge of its contamination and that, for this

reason, Well-Com is entitled only to equitable contribution.

## B.    Summary of Argument

Honeywell's argument based on the "innocent landowner" defense is without merit.

Well- Com is entitled to maintain an action for cost recovery  because it has satisfied all of the

requisite elements of proof for such a cause of action under 42 U.S.C. § 9607(a)(4)(B).  There is

no genuine dispute that Well-Com  has shown that:

> (1) a release of a 'hazardous subtance' from the subject 'facility' occurred, or is
> threatened; (2) the defendant comes within any of  four categories of 'covered
> persons,' which include current owners or operators of the facility, see 42 U.S.C.
> § 9601(9)(B), as well as the owners and operators of the facility at the time the
> contamination occurred (3) the release or threatened release has caused (or may
> cause) the claimant to incur response costs; and (4) the response costs are
> 'necessary' and 'consistent with the national contingency plan.'

In re Hemingway Transp., Inc. 993 F.2d at 931; SOF, ¶¶ 10 – 42, 55-72 ;  Affidavit of Robert J.

Ankstitus, ¶ 54 (all of the response costs incurred by Well-Com to date . . . were necessary,

appropriate and consistent with the national contingency plan).   The First Circuit has instructed

that liability for cost recovery actions brought against PRPs under section 107(a) is joint and

several, and that under section 107, plaintiffs may "recoup the whole of their expenditures."

United Techs. Corp. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 100 (1st Cir. 1994).  The First

Circuit has clarified that "damages should be apportioned only if the defendant can demonstrate

that the harm is divisible." O'Neil v. Picillo, 883 F.2d 176, 178 – 79 (1st Cir. 1989).  Other

federal courts agree that a section 107 defendant may seek apportionment only where there is a

reasonable basis for determining the contribution of each cause to a single harm.  New Castle

County v. Halliburton Nus Corp., 111 F.3d 1116, 1121 (3d Cir. 1997) ("[i]t is defendant's

burden to prove that the harm is divisible and that the damages are capable of some reasonable

apportionment"); see also H.R. Rep. No. 99-253(I) (1985).   Honeywell does not contend that the

harm at the site is divisible.  Moreover, it is undisputed that Well-Com is a non-polluting PRP

that acquired the site after contamination.  Therefore, this exception to pure joint and several

liability is not applicable here, and Well-Com is entitled to recoup all of its expenditures

regardless of fault.   O'Neil v. Picillo, 883 F.2d at 179.

      Prior to the Supreme Court's recent decision in Cooper Indus., Inc. v. Aviall Serv., Inc.,

543 U.S. 157 (2004), many of the Courts of Appeals read into the language of CERCLA a

distinction between "innocent parties" and parties that, if sued by the United States, would be

held liable under Section 107(a), and barred "non-innocent" parties from recovering under

section 107(a).   A discussed in more detail, below, neither the United States Supreme Court nor

the First Circuit has ever required a plaintiff to prove an affirmative defense under 42 U.S.C. §

9607(b) before allowing a cost recovery action under section 42 U.S.C. § 9607(a).  See   United

Techs. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 100 (1st Cir. 1994); In re Hemingway

Transp., Inc., 993 F.2d 915, 1150 (1st Cir. 1993); Dedham Water Co. v. Cumberland Farms

Dairy, Inc., 889 F.2d 1146, 1150 (1st Cir. 1989).  Moreover, following the Cooper Industries

decision, many of the Courts of Appeals will be required to overrule their prior decisions under

Section 107 which barred plaintiffs from recovering under § 107 unless they could prove

4

"innocent" landowner status. See Consol. Edison Co. v. UGI Util., Inc., 423 F.3d 90 (2d Cir. 2005)(overruling its prior decision in Bedord Affiliates).

Finally, there is nothing in Massachusetts G.L. c. 21E which precludes Well-Com from recovering its full costs from Honeywell. There is no genuine dispute that Well-Com did not "cause or contribute" to the contamination of the Site and, therefore, Well-Com is entitled to invoke the exception to liability provided by G.L. c. 21E, § 5(b). As discussed below, the plain language of the statute states that if Well-Com can invoke the exception provided by G.L. c. 21E, § 5(b), it cannot be liable to Honeywell under Chapter 21E, §§ 5(a) and 5(b) and, for this reason, Honeywell may not pursue damages against Well-Com. By contrast, it is undisputed that Honeywell's liability is joint and several under section 5(a) and, for this reason, Well-Com may recover its full damages for the full cost of a reasonable and appropriate response action, plus attorneys fees.

For the reasons discussed in more detail, below, Well-Com respectfully requests that the court grant its motion for partial summary judgment, and award it all of the response costs it has incurred and will continue to incur in remediating the Site. Additionally, Well-Com asks that the court deny Honeywell's motion for partial summary judgment.

## II.  STATEMENT OF UNDISPUTED FACTS

1.  The Site is currently owned by Well-Com, which is a limited partnership. John Pereira owns 100% of the limited partnership interest. The general partner is of Well-Com is 378 Commercial Street Associates, Inc. Mr. Pereira owns 100% of the stock of 378 Commercial Street Associates, Inc. SOF, ¶¶ 53-54; Affidavit of John Pereira, ¶3.

5

2.    The Site is contaminated with coal tar residues, heavy metals, and other hazardous substances.  SOF, ¶¶  59-67;  Declaration of Thomas K. Christo, Exhibit R, Proposed Consent Order.

3.     The contaminants on the Site are the direct result of past operations at the Site by Honeywell International, Inc. ("Honeywell") and its predecessors, including Allied and the Barrett Company, and their use of the Site, for over thirty years, as a coal tar facility.    SOF, ¶¶ 4 - 30; Affidavit of Robert J. Ankstitus, ¶¶ 23, 25-52.

4.    On June 29, 1965, Allied deeded the site to Wellington Realty Corporation ("Wellington") for a purchase price of $350,000.    SOF,¶ 25.   John Kazanjian was the President and Treasurer of Wellington, as well as the principal of three subsequent grantees between 1981 and 1986.  SOF, ¶ 28.  Allied's  sale of the site to Wellington Realty Corp., for $350,000,  ended Allied's ownership interest in the site.    Neither Well-Com, nor any of its predecessors, were involved in the sale of the site from Allied to Wellington in 1965, for the amount of $350,000. SOF, ¶ 29.

5.    A 1965 plan of the "leased area" indicates that Allied leased back from Wellington a portion of the Site lying to the west of Commercial Street, which included underground storage tanks and a filter bed.   SOF, ¶¶ 27,  30.

6.    On December 22, 1986, Wellington LLP deeded a 50% undivided interest in the Site to Commercial Street Properties, Inc., a 49% undivided interest in the site to Well-Com Associates, Inc., and a 1% undivided interest in the site to Well-Com, Inc. (collectively "1986 Grantees") for consideration of $3,600,000.    SOF, ¶ 37.   The sale of the site to the 1986 Grantees ended Wellington's and John Kazanjian's interest in the site.

6

7.    The underlying principals of the 1986 Grantees were Stanton L. Black, President and Treasurer of Well-Com, Inc. and Well-Com Associates, Inc., and Joseph F. Carabetta, Treasurer and Vice President of Commercial Street Properties, Inc.  SOF,  ¶¶ 39, 49 - 51 .

8.    In 1996,  Well-Com Associates, L.P.  acquired a 100% ownership interest in the site through a series of  conveyances from Commercial Street Properties, Inc., Well-Com Associates, Inc., and Well-Com, Inc. SOF, ¶ 53.

9.    Well-Com  has not  caused or contributed to the contamination at the Site in any way.  SOF,  ¶ 68;  Affidavit of Robert J. Ankstitus, ¶24.

10.    On or about 2000, Well-Com engaged Rizzo Associates ("Rizzo") to perform a site investigation and develop a remediation plan for the Malden site.  SOF, ¶ 55-70. Affidavit of Robert J. Ankstitus, ¶ 20.    Well-Com has expended amounts in excess $450,000.00 to investigate and implement a remediation plan. Affidavit of John M. Pereira, ¶ 18.  In 2000, Rizzo prepared a Phase I  Initial Site Investigation and Tier Classification Submittal for the Site and submitted it to DEP on behalf of Well-Com.   SOF, ¶ 57;  Affidavit of Robert J. Ankstitus, ¶  20 . The Phase I report classified the Site as a Tier II disposal site pursuant to the Massachusetts Contingency Plan ("MCP").    SOF, ¶ 59; Affidavit of Robert J. Ankstitus, ¶ 22.  Rizzo attributes the soil and groundwater contamination to Plant operations at the site by the Barrett Chemical Company and its successor, Allied, who utilized the site as a coal tar facility.  SOF, ¶¶ 66, 4 – 29,  Affidavit of Robert J. Ankstitus, ¶¶ 25-52.

11.    Well-Com's response actions with regard to the hazardous materials have been necessary, appropriate and consistent with the Massachusetts Contingency Plan, within the meaning of M.G.L. c. 21E, § 4, and the National Contingency Plan, within the meaning of 42

U.S.C. § 9607(a)(4)(B).  SOF, ¶ 69.  Affidavit of Robert J. Ankstitus, ¶¶ 53, 54.  Well-Com has

expended sums in connection with  preparation and implementation of the following (a)  Phase I

Initial Site Investigation of August 18, 2000; (b) Tier Classification Submittal of August 18,

2000; (c) Phase II Comprehensive Site Assessment of August 6, 2004;  (d) Phase II Remedial

Action Alternatives Report of August 27, 2004;  (e) Phase IV Remedy Implementation Plan of

April 29, 2005; (f)  Release Abatement Measure Plan of May 24, 2005; (g)  Tier II Extension of

September 1, 2005.  SOF, ¶ 70;  Affidavit of Robert J. Ankstitus, ¶¶ 20, 21.

     12.    By virtue of these response actions, Well-Com has exercised due care with respect

to the oil or hazardous material on the Site.  Affidavit of Robert J. Ankstitus, ¶21.

     13.    Honeywell's predecessor, Allied Signal, Inc., has recovered insurance proceeds

from its insurer, The Travelers Indemnity Co. ("Travelers") for sums that it will be required to

pay  in connection with releases of hazardous materials at various properties, including the

Malden site at issue in this lawsuit.  SOF, ¶¶ 73 - 81; See Union Texas Petroleum Holdings, Inc.

v. Travelers Indemnity Co., 1998 Del. Ch. Lexis 27 (Court of Chancery of Delaware, New Castle

1998).   On or about September 13, 1990,  Allied and  Travelers entered into a Settlement

Agreement that covered "any site that is, was, or may be the subject of an Environmental

Pollution Claim."  SOF, ¶¶ 73 - 81;  Union Texas Petroleum Holdings, 1998 Del. Ch. Lexis 27,

at *5, fn 3.  The Settlement Agreement "obligated Travelers to pay a multi-million dollar lump

sum to Allied-Signal in exchange for Allied-Signal's releasing and discharging Travelers for

liability for any and all present and future environmental property damage claims."  SOF, ¶¶ 73 –

81;  Union Texas Petroleum Holdings, 1998 Del. Ch. Lexis 27, at  *4.

14.     Although Allied received insurance proceeds from Travelers to remediate the site, neither Allied nor its successor corporation, Honeywell, have ever done so.  Declaration of Thomas K. Christo, Exhibit R, Proposed Consent Order.

## 2) <u>ARGUMENT</u>

### A.     <u>SUMMARY JUDGMENT STANDARD</u>

In adjudicating a motion for summary judgment, a district court construes the facts "in the light most amiable to the nonmovant[] and indulges all reasonable inferences favorable to him." <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990).  The civil rules empower the court to render summary judgment only when there is "no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  A factual issue is "genuine" if "it may reasonably be resolved in favor of either party" and, therefore, requires the finder of fact to make a "choice between the parties' differing versions of the truth at trial." <u>Garside</u>, 895 F.2d at 48.  Material facts are those that "possess the capacity to sway the outcome of the litigation under the applicable law."   In the present case, there is no genuine issue of material fact which might preclude summary judgment as a matter of law in Well-Com's favor.   Although Honeywell attempts to raise an issue with regard to whether Well-Com knew or should have known, prior to purchase of the Malden property,  that the property was contaminated with hazardous wastes, Wellcom's knowledge or lack of knowledge regarding the presence of hazardous waste  does not impact a cost recovery action under 42 U.S.C. § 9607(a) or  G.L. c. 21E.

**B.    WELL-COM IS ENTITLED TO BRING AN ACTION UNDER CERCLA, 42 USC §§ 9607(a) (4)(B)  AND 9607(c) FOR COST RECOVERY AGAINST HONEYWELL**

This court should hold that Well-Com is entitled to invoke the cost recovery provisions of section 107(a) for two reasons.   First, the plain language of CERCLA states that the cause of action is available.  42 U.S.C. § 9607(a)(4)(B).  Additionally, Well- Com has satisfied all of the requisite elements of proof for a cause of action under 42 U.S.C. § 9607(a)(4)(B), and is entitled to recover all of its response costs,  because there is no genuine dispute that it  has shown that

> (1) a release of a 'hazardous subtance' from the subject 'facility' occurred, or is threatened; (2) the defendant comes within any of  four categories of 'covered persons,' which include current owners or operators of the facility, see 42 U.S.C. § 9601(9)(B), as well as the owners and operators of the facility at the time the contamination occurred (3) the release or threatened release has caused (or may cause) the claimant to incur response costs; and (4) the response costs are 'necessary' and 'consistent with the national contingency plan.'

In re Hemingway Transp., Inc. 993 F.2d at 931; SOF, ¶¶ 10 – 42, 55-72 ;  Affidavit of Robert J. Ankstitus, ¶ 54 (all of the response costs incurred by Well-Com to date . . . were necessary, appropriate and consistent with the national contingency plan).   Plaintiff recognizes, however, that the Supreme Court's recent decision in Cooper Indus., Inc. v. Aviall Serv., Inc., 895 F.2d 46 (1st Cir. 1990), has effectively overruled the decisions of many of the  Courts of Appeals, and will necessitate a change in the federal common law of many jurisdictions.   Therefore, this memorandum will first address the impact of the  Cooper Industries decision on the rights of litigants pursuing Section 9607 cost recovery actions.

1.    **The Supreme Court's Decision In Cooper Indus., Inc.  v. Aviall Serv., Inc.  Vacates A Large Body Of Case Law Under CERCLA**

The Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) was designed to advance two goals:  (1) encouraging prompt and voluntary cleanup of hazardous wastes, and (2) imposing the costs of cleanup on responsible parties.  The present declaratory judgment action asks the court to clarify the relationship between cost recovery actions under 42 U.S.C. § 9607(a) and contribution actions under 42 U.S.C. § 9613  in light of the recent Supreme Court decision, Cooper Indus., Inc. v. Aviall Serv., Inc., 543 U.S. 157 (2004), and to rule as a matter of law that Well-Com is entitled to recover the totality of  its costs from Honeywell, pursuant to 42 U.S.C. § 9607(a), which imposes joint and several liability, and therefore, provides complete indemnity. [1]  As a preliminary matter, Honeywell argues that Well-Com cannot bring a cost recovery action under Section 107 of CERCLA because it is a potentially responsible party who is not entitled to assert an affirmative defense under Section 107(b), and as such,  is limited to an action for contribution under Section 113 of CERCLA.  Prior to Cooper Industries, a majority of courts addressing whether  a private party that is itself a PRP can recover costs under Sections 107(a)(4)(B) and 107(c) had concluded that PRPs seeking recovery for the costs of a  remediation effort  are limited to an action under Section 113 for contribution.  See Cooper Indus., Inc., 543 U.S. at 169 (collecting decisions of the Courts of Appeals for First, Second, Third, Fourth, Sixth, Ninth, Tenth and Eleventh Circuits).  However,

---

[1]    To recover costs under Section 107(a)(4)(B) "a plaintiff must have actually incurred response costs." A. Shapiro & Sons, Inc. v. Rutland Waste & Metal Co., 76 F. Supp. 2d 82,   (D. Mass. 1999) citing Bowen Eng'g v. Estate of Reve, 799 F. Supp. 467, 476 (D.N.J. 1992)(declaratory relief only appropriate once some expenditure has been made toward necessary response costs); Lewis v. Gen Elec. Co., 37 F. Supp. 2d 55, 62 (D. Mass. 1999)(citing 42 U.S.C. § 9706(a)(4)); Dedham Water Co. v. Cumberland Farm Dairy, Inc., 889 F.2d 1146, 1157 (1st Cir. 1989).  Section 113(g)(2) of CERCLA provides that  in actions under § 107, the "court shall enter a declaratory judgment on liability for response costs . . . that will be binding on any subsequent action or actions to recover further response costs." 42 U.S.C. § 9613(g)(2).

there is a critical distinction between most of these cases, and the present case.   Unlike the present case, in *most* of these decisions of the Courts of Appeals, including the First Circuit Court of Appeals, the plaintiff PRPs had already admitted liability, or had been subject to an administrative order, consent decree or judgment under CERCLA.  Thus, in most of these cases there was either a pending or adjudged section 106 administrative order, or a civil action pending or completed under CERCLA, so that it was reasonable for the Courts to hold that § 113, which provides that "Any person may seek contribution . . . during or following any civil action under 9606 of this title or under section 9607(a) of this title," was the appropriate avenue of relief.  In Cooper Industries, however, the Supreme Court clarified that the § 113 contribution provision cannot be invoked whenever a private party has incurred response costs,  irrespective of whether a § 106 or § 107 action is pending or completed, because the enabling clause that establishes the right of contribution provides that contribution may only be sought subject to the specific condition "during or following" a §106 or § 107 action.  Id.  ("there is no reason why Congress would bother to specify conditions under which a person may bring a contribution claim, and at the same time allow contribution actions absent those conditions").  Thus, it is clear that Well-Com cannot invoke the contribution provisions of § 113 in the absence of a pending action under CERCLA.

> **2.     CERCLA Has Three Separate Provisions Authorizing Parties
> To Recoup Money Spent to Clean Up A Contaminated Site**

CERCLA was enacted in 1980 with the primary goal of encouraging the timely cleanup of hazardous waste sites.  See Key Tronic Corp. v. United States, 511 U.S. 809, 819, n. 13 (1984)("we recognize that CERCLA is designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others"); see also

FMC Corp. v. Aero Indus., Inc., 998 F.2d 842, 847 (  Cir. 1993); H.R. Rep. No. 96-1016(I), at 17 (1980), reprinted in 1980 U.S.C.C.A.N. 6119, 6120 (stating that CERCLA's purposes include furthering the recovery of costs for cleanup of hazardous waste sites "from persons liable therefore" and inducing those persons "voluntarily to pursue appropriate environmental response actions").  In order to achieve this goal, CERCLA currently has three separate provisions which authorize parties to recoup money spent to clean up and prevent future pollution at contaminated sites.  Section 107 is the original pre-SARA "cost recovery" section of CERCLA, and it lists four classes of potentially responsible persons (PRPs) that "shall be liable" for . . . "all costs or removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan." § 107(a) (4)(A).  Under § 107, the federal government may recover its response costs from any of the four classes of PRPs.  Additionally, section 107(a) provides that PRPs shall be liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." § 107(a)(4)(B).  Section 107(a) provides a cost recovery remedy for private parties, as well as the government, because it states that "any other person" may recover costs incurred consistent with the national contingency plan. Although the statutory language of section 107(a)(4)(B) expressly provides for a private enforcement right, litigation arose after CERCLA's enactment over whether a private party that had voluntarily cleaned up a site, and was not itself subject to government action under CERCLA, had a cause of action under section 107(a)(4)(B) for cost recovery against other PRPs. Cooper Indus., Inc. v. Aviall Serv., Inc., 543 U.S. 157, 161 -162 (2004).  Most courts agreed that section 107(a) (4)(B) authorized a private cause of action for cost recovery by a PRP which had incurred response costs.  Walls v. Waste Res. Corp., 761 F.2d 311 (6th Cir. 1985)(district courts

"have been virtually unanimous" in holding that § 107(a)(4)(B) creates a private right of action for the recovery of necessary response costs). The Supreme Court has stated that "section 107 unquestionably provides a cause of action for private parties to seek recovery of cleanup costs." Key Tronic Corp. v. United States , 511 U.S. at 817.

In its original form, however, CERCLA contained no express provision authorizing a private party that had incurred cleanup costs (because it had been sued in a cost recovery action by either the government or another PRP) to seek contribution from other PRP's. Key Tronic Corp. v. United States, 511 U.S. at 815. Because CERCLA did not include a provision expressly allowing PRPs to seek contribution from each other, litigation arose over whether a private party that had been sued by the government, or another PRP, under the cost recovery provisions of section 107, could obtain contribution from other PRPs. Although nothing in section 107(a) provided an express right to contribution, many courts (but not all) held that such a right could be implied . See, e.g., Sand Springs Home v. Interplastic Corp., 670 F. Supp. 913, 916-17 (N.D.Okla. 1987)(adopting reasoning of New Castle County that CERCLA contribution right exists as a matter of federal common law); United States v. New Castle County, 642 F. Supp. 1258, 1262-69 (D.Del. 1986)(express contribution provisions were considered by Congress and rejected prior to passage of final CERCLA bill, but contribution right exists as a matter of federal common law); United States v. Conservation Chemical Co., 619 F. Supp. 162, 227-29 (W.D.Mo. 1985)(holding that a CERCLA contribution right is implied in the statute's language which refers to the federal Water Pollution Control Act, under which federal judiciary has fashioned a federal remedy of contribution). But see United States v. Westinghouse Elec. Corp., No. IP 83-9-C, 1986 U.S. Dist. Lexis 15850, at *9 , * 14 (S.D.Ind. June 29, 1983)(declining to

find a contribution right because plaintiff had not cited any statutory language, legislative history

or cases that disclosed such a right).    The Supreme Court has recently stated, *in dictum*, that the

conclusion that an implied contribution right exists as a matter of federal common law "was

debatable in light of . . . decisions of this Court that refused to recognize implied or common-law

rights to contribution in other federal statutes." Cooper Indus., Inc. v. Aviall Serv., Inc., 543

U.S. at 557.

In 1986, Congress amended CERCLA with the Superfund Amendments and

Reauthorization Act ("SARA") to provide for two express causes of action for contribution.

These two contribution provisions, sections 113(f)(1) and 113(f)(3)(B), create separate

contribution rights.  Section 113(f)(1) creates a contribution right for parties liable or potentially

liable under CERCLA and section 113(f)(3)(B) creates a separate contribution right for parties

that have resolved their liability by settlement.  Section 113(f)(1) states that "any person may

seek contribution from any other person who is liable or potentially liable under section 9607(a)

. . . during or following any civil action under section 9606 of this title or under section 9607(a)

of this title."  A savings clause in section 113(f)(1) provides that "[n]othing in this subsection

shall diminish the right of any person to bring an action for contribution in the absence of a civil

action under section 9606 of this title or section 9607 of this title."  In Key Tronics, the Supreme

Court explained that following the SARA enactments, "the statue now expressly authorizes a

cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat

overlapping remedy in § 107." Id. at 816.

3.    **Following the Enactment Of Sara, Some Courts Of Appeals Held, Erroneously,  That PRP's Who Initiated A Voluntarily Clean Up, Were Relegated to Recouping Costs By A Cause Of Action For Contribution Under Section 113**

Following the SARA amendments to CERCLA, however, a significant issue arose in the district courts, as well as the Courts of Appeals, over whether a party that was itself a PRP could pursue a cost recovery action under section 107(a) against other PRPs for joint and several liability, or whether a PRP was instead relegated to bringing an action under section 113 for contribution.   Thus, a controversy arose, after the adoption of SARA, regarding whether PRPs could seek joint and several cost recovery under § 107, which imposes strict liability and would allow them to sue only one party for the entire response costs, without regard to that party's degree of fault.  See Centerior Serv. Co. v. ACME Scrap Iron & Metal Corp., 153 F.3d 344, 349 (6th Cir. 1996). Some Circuit Courts held that if a PRP had initiated a voluntarily clean up of a site (perhaps in connection with a state agency) and was not itself subject to either an administrative proceeding or a civil action under CERCLA, it still could not bring a cost recovery action under section 107(a), due to its status as a potentially responsible person, and was limited to recovery for contribution under section 113(f).  See, e.g., Bedford Affiliates v. Sills , 156 F.3d 416, 424 (2d Cir.  1998) (party who cleaned up a site under supervision of the New York State DEC was restricted to seeking contribution); Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1303 (9th Cir. 1998)(finding that a PRP who had voluntarily cleaned up a site was still restricted to seeking contribution).   Other courts that denied PRP standing to bring suit under section 107 reasoned that a claim to reapportion costs between PRPs is essentially a claim for contribution as that term is defined at common law, and should proceed

16

under section 113, the express CERCLA provision for contribution.  <u>See</u>, <u>e.g.</u>, <u>Bedford Afiliates</u>

<u>v. Sills</u>, 156 F.3d 416 (2d Cir. 1998)(to bring a derivative action to recoup costs exceeding a

PRPs equitable share of the overall liability is a "quintessential claim for contribution"); <u>Azko</u>

<u>Coatings, Inc. v. Aigner Corp.</u>, 30 F.3d 761, 764 (7th Cir. 1994)(action in which a liable party

seeks costs is the "quintessential claim for contribution").

      Still other courts, including the First Circuit Court of Appeals, held that a PRP who had

been sued by the United States, under CERCLA, for the costs the United States had incurred and

would continue to absorb in responding to releases at a site, could not bring a cost recovery

action against other PRPs under section 107, but could seek contribution under section 113,

rather than complete indemnity.  <u>United Tech. Corp. v. Browning-Ferris Indus., Inc.</u>, 33 F.3d 96,

100 (1st Cir. 1994). In the <u>Browning-Ferris</u> case, the First Circuit noted that it made sense "to

assume that Congress intended only innocent parties – not parties who were themselves liable –

to be permitted to recoup the whole of their expenditures."  <u>Id</u>.  The above-quoted statement by

the First Circuit  echos the words and rationale of the New Jersey District Court in <u>Transtech</u>

<u>Indus. v. A & Z Septic Clean</u>, 798 F. Supp. 1079 (D.N.J. 1992),  one of the first courts to find

that a  PRP who was actually liable under CERCLA  lacked standing to bring a section 107 cost

recovery action.  <u>Id</u>. at 1084.   The <u>Transtech</u> court  held that a plaintiff was not entitled to

maintain a section 107 action because a clean up initiated pursuant to EPA action was not

"voluntary" within the meaning of section 107 and, for this reason,  the  claims were more

properly characterized as section 113 contribution claims.  <u>Id</u>. at 1086 – 87 ("I find that the

plaintiffs are being facetious at best in their argument that they acted voluntarily, privately and in

keeping with the goals of CERCA, and not as a result of government threats") . [2]

---

2.  Well-Com has pleaded a contribution theory only in the alternative, in the event that the court declines to allow Count One, for cost recovery under 42 U.S.C. § 9607(a)(4)(B). But even if this was a contribution proceeding, which it is not, the district court would have discretion to decide what factors ought to be considered in allocating costs, and would be entitled to allocate all of the costs to Honeywell on the grounds that Well-Com is a non-polluting PRP .  CERCLA case law makes clear that in applying  § 113, district courts  have "'discretion to decide what factors ought to be considered, as well as the duty to allocate costs according to these factors' without being bound by or limited to any predetermined list of factors."  Western Properties Serv. Corp. v. Shell Oil Co., 358 F.3d 678, 690 (9th Cir. 2004).  In an appropriate case, the court "might properly exercise its discretion under § 113(f)(1) to allocate a smaller portion or even no portion of the cleanup cost to a non-polluting PRP landowner."  Id.  In  Pinal Creek  the Ninth Circuit noted that it did "not foreclose the possibility that a court could find, after balancing the equities as required by § 113, that a particular PRP's equitable share of the total liability should be zero."  Pinal Creek, 118 F.3d at 1301 n. 3 (emphasis supplied).  In PMC, Inc. v. Sherwin-Williams Co., the Seventh Circuit explained, "the district judge decided to make Sherwin Williams not 80 or 90 or 95 but 100 percent responsible for the costs of cleaning up the site . . . this would be an unexceptional decision if all the pollution had occurred before PMC took over the property." PMC, Inc. v. Sherwin –Williams Co., 151 F.3d 610, 616 (7th Cir. 1998)(district court did not abuse discretion when awarding 100% of costs of remediation where other spills were inconsequential). See also Cadillac Fairview/Cal. v. Dow Chem. Co., 299 F.3d 1019, 1026 (9th Cir. 2002)(no abuse of discretion for trial court to allocate total contribution liability to defendant); Franklin County Convention Facilities Auth. v. Am. Premier Underwriters, Inc., 240 F.3d 534, 549 (6th Cir. 2001)(no abuse of discretion for trial court to allocate total contribution liability to defendant).

To resolve contribution claims, many courts look to the "Gore Factors," proposed as a moderate approach to joint and several liability by Senator Albert Gore, to apportion contribution claims under § 113(f)(1).  The six factors are:  (i) the ability of the parties to demonstrate that their contribution to a discharge, release or disposal of hazardous waste can be distinguished; (ii) the amount of the hazardous waste involved; (iii) the degree of toxicity of the hazardous waste involved; (iv) the degree of involvement by the parties in the generation, transportation, treatment, storage or disposal of the hazardous waste; (v) the degree of care exercised by the parties with respect to the hazardous waste concerned, taking into account the characteristics of such hazardous waste; and (vi) the degree of cooperation by the parties with the Federal, State or local authorities to prevent any harm to the public health or the environment.  Environmental Transp. Sys., Inc. v. ENSCO, Inc., 969 F.2d 503, 508 – 09 (7th Cir. 1992).

 Applying the Gore factors in the present case, it is clear that all of the pollution occurred before Well-Com took over the property.  SOF, ¶ 4-53, Affidavit of Robert J. Ankstitus, ¶ 23.  Thus, even if this court were to determine that a contribution scheme applies in this case,  and/or that the Gore factors should be considered in allocating response costs, the district court has discretion to decide what factors ought to be considered, and may allocate all of the costs to Honeywell on the grounds that Well-Com is a non-polluting PRP. SOF, ¶ 66-68; Affidavit of Robert J. Ankstitus, ¶24.  Additionally, a court would be entitled to weigh heavily the fact that Allied has already recovered insurance proceeds under a Settlement Agreement with Travelers Insurance Com., which covered the Site.  SOF, ¶¶ 76-81; Union Texas Petroleum Holdings, 1998 Del. Ch. Lexis 27, at *5, fn 3.  Despite having received money from Travelers to remediate the site, Allied has not done so.  SOF, ¶ 81.

4.      **The Supreme Court Has Clarified That Section 113 Contribution Is Unavailable In The Absence Of A Pending Or Completed CERCLA Action**

In 2004, the Supreme Court issued its decision in Cooper Industries, Inc. v. Aviall Serv., Inc., clarifying that a PRP has no right to seek contribution under section 113(f) until it has been sued under section 106 or section 107.  Cooper Industries, 543 U.S. at  168 .  The Cooper Industries decision has fatally undermined the decisions of the Courts of Appeals and  district courts which held that PRPs must always utilize section 113(f) to recoup costs, even in the absence of a CERCLA proceeding.  Many of these decisions were predicated on the premise that if section 107(a) was available as an avenue of relief, it would render section 113(f)(1) superfluous – i.e.,  if PRPs could choose whether to bring suit under section 107(a) or section 113(f), they would always choose to proceed under section 107, which provides a more generous statute of limitations ( compare 42 U.S.C. § 9613(g)(2) with § 9613(g)(3)), and also provides for joint and several liability unless a defendant proves the harm is divisible.  See Bedford Affiliates, 156 F.3d at 424.  The Cooper Industries decision created a debacle for the district courts, since the question of how section 107(a) and section 113 should be applied was left open by the Supreme Court.  Cooper Industries,  543 U.S. at 169 (observing that the question whether a plaintiff may recover costs under 107(a)(4)(B), even though it is a PRP, is a "significant issue in its own right . . . well beyond the scope of the briefing  and  . . . the question presented [on appeal]").

In the wake of Cooper Industries, many district courts were forced to reverse their interlocutory orders and/or rulings in pending CERCLA actions, in which they had determined that a plaintiff could maintain an action under section 113(f)(1) even though it had not been sued

under section 106 or section 107.  See Waukesha v. Viacom International, Inc., 362 F. Supp. 2d 1025, 1027 (E.D. WI. 2005).   In some jurisdictions, the fall out of Cooper Industries was particularly onerous, as the district courts felt compelled to rule, in reliance upon former Court of Appeals precedent, that a PRP who has voluntarily cleaned up a site, but is barred from bringing a section 107(a) action because it does not have a section 107(b) affirmative defense, *no longer has any* viable CERCLA claim against any other PRP.  See  Montville Twp. v. Woodmont Builders, LLC, 2005 U.S. Dist. Lexis 18079, * 36 (D. N.J. 2005)("[u]ntil the Supreme Court addresses the issue, courts in the Third Circuit are bound by New Castle County which precludes a PRP from obtaining recovery of costs from another PRP under § 107(a)"). Other district courts tried to grapple with the logical outcome.   See  Elementis Chem., Inc. v. TH Agric. & Nutrition, 373 F. Supp. 257, 276 (S.D. N.Y. 2005)("[w]hy would a PRP who had been sued, and who thus was not barred by Cooper Industries from utilizing § 113(f)(1), choose to proceed under the stingier § 113(f)(1) rather than the more generous § 107(a) if both were available? . . . [p]erhaps the Court of Appeals will hold . . . that PRPs who have not been sued may proceed under the more generous § 107(a), but PRPs who have been sued must be content with the stingier § 113(f)(1)").

In a recent decision, the Second Circuit  hinted that, when faced with the issue directly, it would overrule its decision in Bedford Affiliates, which leaves a PRP who has no affirmative defense under section 107(b) with no cause of action under CERCLA for recovering response costs, unless and until CERCLA proceedings  are brought against the PRP.  See Syms v. Olin Corp., 408 F.3d 95, 106 (2d Cir. 2005).   In Syms v. Olin Corp., the Second Circuit declined to address the question directly, because Cooper Industries was decided after oral argument in the

case before it, and the parties had not fully briefed or argued the impact of that decision.  Id.

However, the Second Circuit foreshadowed how it would likely rule in the future, stating:

> Together, *Cooper Industries* and *Bedford Affiliates* leave a PRP with no
> mechanism for recovering response costs until proceedings are brought against
> the PRP.  This might discourage PRP's from voluntarily initiating clean-up,
> contrary to CERCLA's stated purpose of 'inducing such person voluntarily to
> pursue appropriate environmental response actions with respect to inactive
> hazardous waste sites.' H.R. Rep. No. 96-1016(I), at 17 (1980), *reprinted* in 190
> U.S.C.C.A.N. 6119, 6120. This is because if a PRP remediates a facility on its
> own initiative, it reduced the likelihood that it will be sued under § 106 or §
> 107(a), and thereby jeopardizes its opportunity to seek contribution under § 113(f)
> from other PRPs.  **The combination of <u>Cooper Industries</u> and <u>Bedford
> Affiliates</u>, if the latter remains unaltered, <u>would create a perverse incentive</u>**
> for PRPs to wait until they are sued before incurring response costs.

Id.  (emphasis supplied). The Second Circuit elected not to decide the issue itself, and remanded

it to the district court below.  However, by recognizing that its prior decision, if it remained

unaltered, "would create a perverse incentive,"   the Second Circuit put litigants on notice that it

would, in fact, reverse its prior ruling when given the opportunity in an appropriate case.  More

recently, in <u>Consol. Edison Co. v. UGI Util., Inc.</u>, 423 F.3d 90 (2d Cir. 2005), the Second Circuit

had such an opportunity because the parties "submitted, at the court's request, briefs on this

purely legal issue." Id. at 100.

The Second Circuit stated in <u>Consolidated Edison</u> that in light of the Supreme Court's

decision in <u>Cooper Industries</u>, "it no longer makes sense" to view section 113(f)(1) as the sole

means of reimbursement under CERCLA for  PRP's that "would themselves be liable if sued

under section 107(a)." Id. at 99 ("[e]ach of these sections, 107(a) and 113(f)(1), embodies a

mechanism for cost recovery available to persons in different procedural circumstances").  The

Second Circuit held that the appropriate avenue of relief for a person who has not been sued

under CERCLA is section 107(a), which makes PRPs liable for the government's remedial and removal costs, and for "any other necessary costs of response incurred by any other person consistent with the national contingency plan." Id. citing 42 U.S.C. § 9607(a)(4)(B). Additionally, the Second Circuit found "no basis for reading into this language a distinction between so-called "innocent" parties and parties that, if sued, would be held liable under section 107(a)." Id. ("nowhere does the plain language of section 107(a) require that the party seeking necessary costs of response be innocent of wrongdoing"). Thus, the Court rejected the notion that a party who may themselves be liable under section 107(a), because they may not be able to prove an affirmative defense under section 107(b) (i.e., the "innocent landowner" defense) should be barred from recovering under CERCLA unless or until they are sued. Id. Although the Court did not explain its rationale, the reason is clear - to bar a PRP who has not been sued from recovering under CERCLA would create the same "perverse incentive" which the Court's decision was intended to prevent. Compare Metro. Water Reclamation Dist. v. Lake River Corp., 365 F. Supp. 2d 913, 918 (N.D.Ill. 2005)("[s]ince the Water Rec. Dist. does not fit into the innocent landowner exception and since it cannot seek contribution under § 113(f)(1), its only remaining remedy under CERCLA is an implied right to contribution under § 107(a)").

5. **The First Circuit Has Never Held That An Action For Cost Recovery Under Section 107(a) Is Unavailable To A Party Who Cannot Prove An Affirmative Defense Under Section 7(b)**

Unlike many of the other Courts of Appeal, the First Circuit has never held that a plaintiff who remediates a facility on its own initiative may not bring a cost recovery action under section 107(a), and is instead limited to suing for contribution under section 113. See United Tech. Corp. v. Browning-Ferris Indus., Inc., 33 F.3d at 101 (where appellants had been sued by the

EPA under CERCLA their claim must be classified as "an action for contribution").    Therefore, unlike the decisions of many of the Courts of Appeals, the decisions of the First Circuit do not, in the wake of <u>Cooper Industries</u> "leave a PRP with no mechanism for recovering response costs until proceedings are brought against the PRP." <u>Compare</u> <u>Syms v. Olin Corp.</u>, 408 F.3d at 106. The First Circuit has recognized on more than one occasion that section 107(a)(4)(B) "provides a private right of action" for CERCLA response costs, which is available "'to any person' who incurs necessary response costs, presumably without regard to whether the plaintiff is an EPA target; i.e., a PRP or 'covered person' under section 9607(a)." <u>In re Hemingway Transp., Inc.</u>, 993 F.2d 915, 931 (1993); <u>see also</u>  <u>Dedham Water Co. v. Cumberland Farms Dairy, Inc.</u>, 889 F.2d 1146, 1150 (1st Cir. 1989).  The First Circuit stated in <u>In re Hemingway Transport</u> that "section 9607(a)(4)(B) simply requires the private-action plaintiff to prove that . . .

> (1) a release of a 'hazardous subtance' from the subject 'facility' occurred, or is threatened; (2) the defendant comes within any of  four categories of 'covered persons,' which include current owners or operators of the facility, see 42 U.S.C. § 9601(9)(B), as well as the owners and operators of the facility at the time the contamination occurred (3) the release or threatened release has caused (or may cause) the claimant to incur response costs; and (4) the response costs are 'necessary' and 'consistent with the national contingency plan.'

<u>In re Hemingway Transp., Inc.</u>, 993 F.2d at 931.    The First Circuit explained that "in the event the private-action plaintiff itself is potentially 'liable' to the EPA for response costs, and thus is akin to a joint 'tortfeasor,' section 9607(a)(4)(B) serves as the <u>pre-enforcement analog</u> to the 'impleader' contribution action permitted under section 9613(f). Id. (emphasis supplied).  Thus, the First Circuit has recognized that a plaintiff such as Well-Com, who is only "potentially" liable to the EPA, but is not an EPA target because it has not been sued under CERCLA , has a private right of action under 9607(a)(4)(B) for response costs.  Notwithstanding Honeywell's

lengthy argument that Well-Com is barred from recovery under section 107(a) unless it

establishes "innocent landowner status," see Honeywell's Memorandum In Support Of Motion

For Partial Summary Judgment, pp. 2 – 15, there is nothing in any decision of the First Circuit

which requires a PRP to  prove that it is an "innocent landowner," or establish some other

affirmative defense under section 107(b) as a prerequisite to bringing a cost recovery action

under Section 107(a).

Many courts in other jurisdictions have read into CERCLA  a distinction between PRPs

who are "innocent" because they can prove the availability of an affirmative defense under

section 107(b)(which provides a complete defense to a CERCLA action), and have held that

section 113 is the only available avenue of relief in the absence of innocent landowner status.

See , e.g., Bedford Affiliates v. Sills, 156 F.3d at 425 ("we hold that a potentially responsible

person under § 107(a) that is not entitled to any of the defenses enumerated under § 107(b) . . .

cannot maintain a § 107(a) action against another potentially responsible person"); New Castle

County v. Halliburton Nus Corp., 111 F.3d 1116,  (3d Cir. 1997)("[e]very court of appeals that

has examined this issue has come to the same conclusion: a section 107 action . . . may be

brought only by innocent parties that have undertaken clean-ups"); Redwing Carriers, Inc. v.

Saraland Apartments, 94 F.3d 1489, 1496 (11th Cir. 1996)("to bring a cost recovery action based

solely on § 107(a), [plaintiff] would have to be an innocent party") Cf.  Nutra Sweet Co. v. X-L

Eng'g, 227 F.3d 776,  784  (7th Cir. 2000)(noting availability of § 107 action for innocent

landowners);  Rumpke of Indiana, Inc. v. Cummins Engine Co., Inc., 107 F.3d 1235 (7th Cir.

1997)(allowing cost recovery claim by "innocent" PRP who had not contributed to site

contamination); Azko Coatings, Inc. v. Aigner Corp., 30 F.3d 761, 764 (7th Cir. 1994)(under the

"Azko exception" a landowner may bring a § 107 action "if the party seeking relief is itself not responsible for having caused any of the hazardous materials to be spilled on the property"). In its Motion for Partial Summary Judgment, Honeywell has asked the court to adopt the reasoning of these cases and to rule that a plaintiff is precluded from invoking Section 107(a)(4)(B) unless it can establish "innocent landowner status." See Honeywell's Memorandum In Support Of Motion for Partial Summary Judgment, p. 1-14.

However, the First Circuit has never required a plaintiff to prove an affirmative defense under section 7(b) before allowing an action for cost recovery under section 107(a)(4)(B). In United Techs. Corp. v. Browning-Ferris Indus., Inc., the First Circuit held that a claim for Section 113 contribution is the only available cause of action for a party that *has already been sued* under CERCLA. Id. at 101. In deciding that a party that has incurred expenditures under a consent order with a government agency, and has therefore been found partially liable, may not bring a section 107(a) recovery action, the Court noted that "it is sensible to assume that Congress intended only *innocent parties* – not parties who were themselves liable – to be permitted to recoup the whole of their expenditures." Id. at 100 (emphasis supplied). Reading the word "innocent" in this sentence out of context, some courts have cited the United Technologies case as authority for imputing a requirement of "innocent landowner status" under section 7(b) before a PRP can invoke the cost recovery provisions of section 7(a)(4)(B). See Bedford Affiliates v. Sills, 156 F.3d at 424; Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp., 153 F.3d at 349; New Castle County v. Halliburton Nus Corp., 111 F.3d at 1121.

A closer reading of the United Technologies decision, however, reveals that the First Circuit said no such thing. The rationale behind the holding in United Technologies, that

25

parties subject to consent decree and lawsuit under CERCLA may only seek contribution under section 113(f)(1), is based upon Section 113(g)(3)'s three-year statute of limitations associated with actions for contribution . Id. at 101. The court explained that "the shorter prescriptive period contained in 42 U.S.C. § 9613(g)(3), governs actions brought by liable parties during or following a civil action under 42 U.S.C. §§ 9606-9607(a),while the longer statute of limitations, contained in 42 U.S.C. § 9613(g)(2), addresses actions brought by innocent parties that have undertaken cleanups (say the federal, state or local government)." Id. (emphasis supplied). When read in this context, it is clear that the First Circuit intended the word "innocent" to mean simply that a longer statute of limitations applies to cost recovery actions under section 107(a), where a clean up was voluntary, and was not compelled by an EPA proceeding. See Transtech Indus. v. A & Z Septic Clean, 798 F. Supp. at 1086-87 (court held that an EPA target who undertook remedial work pursuant to an EPA order was actually liable under CERCLA and did not act voluntarily).

If the word "innocent" were used as Honeywell suggests, to foreclose a cost recovery action under Section 107(a)(4)(B), then Well-Com would have no avenue of relief under CERCLA, because an action for contribution under Section 113(f)(1) is not available in the absence of a CERCLA proceeding. Cooper Industries, 543 U.S. at 170; see also United Techs. Corp. v. Browning-Ferris, 33 F.3d at 99 (recognizing that a PRP who initiates a voluntary cleanup without EPA prodding does not have an express cause of action for contribution under section 113(f)(1)). In essence, Honeywell asks the court to insert the word "innocent" into the text of section 107(a), so that an action for cost recovery under section 107(a)(4)(B) is only available to "any other [innocent] person. " The interpretation advanced by Honeywell would

read out of CERCLA the express provision in section 107(a) that makes entities liable for "any other necessary costs of response incurred by <u>any other person</u> consistent with the national contingency plan."  42 U.S.C. § 9607(a) (4)(B) (emphasis supplied).  Such a reading of CERCLA, to preclude a cost recovery action by party who has initiated a voluntary clean up, unless it can plead and prove an affirmative defense,  would fly in the face of the Supreme Court's recent mandate in <u>Cooper Industries</u> that the words of CERCLA must be strictly construed to mean what they say.   <u>Cooper Industries</u>, 543 U.S. at 167 ("[g]iven the clear meaning of the text, there is no need to . . . consult the purpose of CERCLA at all").

 This court should therefore hold that Well-Com is entitled to invoke the cost recovery provisions of section 107(a) for two reasons.  First, the plain language of CERCLA states that the cause of action is available.[3]  <u>See</u>,  <u>Adhesives Research Inc. v. American Inks & Coatings Corp.</u>, 931 F. Supp. 1231, 1239 (M.D.Pa. 1996)(finding "no reason to give the phrase 'any other person' other than its plain meaning"); <u>Charter Twp. Of Oshtemo v. American Cyanamid Co.</u>,

---

[3]   Courts agree that liability for cost recovery actions brought against PRPs under § 107(a) is joint and several for any defendant PRP regardless of fault, and that § 107  plaintiffs are entitled to "full recovery" of all costs. Honeywell does not dispute this.  In its Memorandum In Support Of Motion for Summary Judgment, Honeywell states at p. 10, "A cost recovery action, by contrast, involves a claim for "full recovery" of all the response costs incurred by a non-responsible party in connection with a site, i.e., "complete indemnity."  The First Circuit has also stated that under section 107, a plaintiff may "recoup the whole of their expenditures." <u>United Techs. V. Browning-Ferris Indus.</u>, 33 F.3d at 100. <u>See  also</u>  <u>Centerior Serv. Co. v. General Elec. Co.</u>, 153 F.3d  at 348.  The First Circuit has stated that "[a]fter bringing a cost recovery action, plaintiffs must prove only that each defendant is a 'liable' party and not that defendants are responsible for a certain share of the plaintiff's response costs" <u>Id.</u>;  <u>New Castle County v. Halliburton Nus Corp.</u>, 111 F.3d at 1121; <u>O'Neil v. Picillo</u>, 883 F.2d 176, 178 (1st Cir. 1989) ("courts have continued to impose joint and several liability on a regular basis, reasoning that where all of the contributing causes cannot fairly be traced, Congress intended for those proven at least partially culpable to bear the cost of the uncertainty").  This is such a case where the contamination at the site is indivisible.  <u>See</u> Affidavit of Robert J. Ankstitus, 29-52; Well-Com's  Statement of Facts, ¶¶ 3-41.  Moreover, Honeywell does not dispute that the contamination at the site is indivisible.  Only if a defendant can affirmatively prove that the harm is divisible, will damages from a cost recovery action brought pursuant to § 107(a) be apportioned according to fault.  <u>Id.</u>  However, "given the nature of hazardous waste disposal, rarely if ever will a PRP be able to demonstrate divisibility of harm, and therefore joint and several liability is the norm."

910 F. Supp. 332, 337 (W.D.Mich. 1995)(finding that interpreting CERCLA to bar § 107 cost

recovery actions by PRPs "ignores the plain language of section 107").

Second, a cost recovery cause of action under section 107 advances CERCLA's goal of

encouraging prompt and voluntary cleanup of hazardous wastes, because it provides PRPs with

incentives for early cleanup and settlement.  See Pinal Creek, 926 F. Supp. at 1407; As the

district court explained in Pinal Creek, prohibiting PRPs from bringing cost recovery actions

under section 107 "would turn the CERCLA incentive scheme on its head."  Pinal Creek, 926 F.

Supp. at 1408; see also Syms v. Olin Corp., 408 F.3d at 106 ("leav[ing] a PRP with no

mechanism for recovering response costs . . . would create a perverse incentive"); see also

Adhesives Research, 931 F. Supp. 1231, 1237 (M.D. Pa. 1996)("with 'incentives' like these, no

prudent party would leap into a voluntary cleanup effort").   Finally, Well- Com has satisfied all

of the requisite elements of proof for a section a cause of action under 42 U.S.C. §

9607(a)(4)(B), and is entitled to recover all of its response costs,  because it has shown that

> (1) a release of a 'hazardous subtance' from the subject 'facility' occurred, or is
> threatened; (2) the defendant comes within any of  four categories of 'covered
> persons,' which include current owners or operators of the facility, see 42 U.S.C.
> § 9601(9)(B), as well as the owners and operators of the facility at the time the
> contamination occurred (3) the release or threatened release has caused (or may
> cause) the claimant to incur response costs; and (4) the response costs are
> 'necessary' and 'consistent with the national contingency plan.'

In re Hemingway Transp., Inc. 993 F.2d at 931; SOF, ¶¶ 10 – 42, 55-72;  Affidavit of Robert J.

Ankstitus, ¶ 54 (all of the response costs incurred by Well-Com to date . . . were necessary,

appropriate and consistent with the national contingency plan).

C.    **WELL-COM IS ENTITLED TO COMPLETE INDEMNITY FROM HONEYWELL ON ITS CLAIMS UNDER CHAPTER 21E**

1.    <u>**Gen. Laws. Ch. 21E Imposes Strict Liability Under Section 5(a)**</u>

Well-Com has also brought a cause of action for recovery of its remediation expenditures from Honeywell, pursuant to Massachusetts Oil and Hazardous Material Release Prevention Act, G.L. c. 21E.   Well-Com seeks to recover costs previously incurred, as well as not-yet-incurred cleanup costs, under the statute.  The preamble to the 1983 Act, which "breathed life into the Massachusetts effort to clean up hazardous materials and oils," states that the purpose of G.L. c. 21E was "to clarify and improve the commonwealth's capability for responding to releases of oil and hazardous material and to recover response costs from persons responsible for releases." <u>Sanitoy, In. v. Ilco Unican Corp.</u>, 413 Mass. 627, 629 (1992).

Section 5(a) lists five categories of persons who are potentially liable for hazardous material releases.  G.L. c. 21E, § 5(a).   Liability applies to the "owner or operator" of a "site from or at which there is or has been a release . . . of oil or hazardous material" under § 5(a) (1). Well-Com is an owner or operator of a site within the meaning of § 5(a)(1) and, therefore, qualifies as a potentially responsible party, or "PRP."   Liability also applies to "any person who at the time of storage or disposal of any hazardous material owned or operated any site at or upon which such hazardous material was stored or disposed of and from which there has been a release." Ch. 21E, §(a)(2).  Honeywell falls into the category defined by § 5(a)(2), because it owned the site at the time of disposal of hazardous materials.

Section 5(a)(5) provides, further, that "any person who . . . caused or is legally responsible for a release . . . of hazardous material . . . shall be liable, without regard to fault . . . to any person for damage to his real or personal property  . . . *[ex]cept as provided in paragraphs*

29

*(b) and (k) such liability shall be joint and several.*" Ch. 21E, § 5(a)(5)(iv). (Emphasis supplied.)

Thus, a person liable for cleanup under § 5 can sue other liable parties to recover the costs

incurred.    CERCLA and G.L. c. 21E have "similar objectives and overlap in coverage," in that

both statutes enumerate similar categories of potentially responsible parties (PRP's), and both

provide for strict liability. See   Martignetti v. Haigh-Farr, Inc., 425 Mass. 294,302 (1997)("[t]o

the extent that there are similarities in language and structure, it is desirable to arrive at similar

interpretations").   However, the language and structure of c. 21E is fundamentally different from

CERCLA in other ways and, as indicated in § 5(a)(5)(iv), liability is not always "joint and

several" under Ch. 21E, nor are "potentially responsible parties" always liable to each other for

some portion of response costs.

## 2.   Interaction of G.L. c. 21E, §§ 5(a) and 5(b)

Determining liability for contamination is also the focus of G.L. c. 21E, § 5(b).  Section

5(b) provides in pertinent part that "[n]o person who is liable solely pursuant to clause (1) of

paragraph (a) and who did not own or operate the site at the time of the release or threat of

release in question and did not cause or contribute to such release or threat of release shall be

liable to any person who is liable pursuant to clauses (2), (3), (4), or (5) of said paragraph . . ."

See Ch. 21E, § 5(b).  There is no similar language or exception to liability in CERCLA.  By

virtue of the exception under Section 5(b), any entity such as Well-Com, who "did not operate

the site at the time of the release . . ." and did not "cause or contribute to such release," cannot be

liable to an entity such as Honeywell, "who is liable pursuant to clauses (2), (3), (4), or (5)."

See 2A N. Singer, Sutherland Statutory Construction, § 46.06 (4th ed. 1984)("A statute should be

construed so  that . . . no part will be inoperative or superfluous, void or insignificant").  If Well-

Com can prove that it is entitled to invoke the exception to liability provided by Section 5, its liability is not "joint and several."  See § 5(a) (2)(iv)("[e]xcept as provided in paragraphs (b) and (k), such liability shall be joint and several").  Honeywell does not dispute that Well-Com is liable solely pursuant to clause (1) of paragraph (a).  Additionally, there is no genuine dispute that  Well-Com  did not "cause or contribute to such release or threat of release" within the meaning of the statute.  See  SOF, ¶¶ 66-68; Affidavit of Robert J. Ankstitus, ¶ 22-54  ("It is . . . my opinion that Site usage by Well-Com and its tenants did not contaminate or contribute to the contamination at the Site") .   Accordingly, this court should hold that the section 5(b) exception applies to Well-Com in this case.

### 3.    Interaction of G.L. c. 21E, §§ 5(b) and 4

Section 4 provides that "any person who undertakes a necessary and appropriate response action regarding the release or threat of release or oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such response action."  G.L. c. 21E, § 4.   The plain meaning of this clause is that Well-Com is entitled to full reimbursement from Honeywell if Well-Com undertakes a clean up of the Site.   However, Honeywell argues in its Memorandum In Support Of Motion For Partial Summary Judgment that Well-Com is only entitled to recover its "equitable share of response costs."   In making this argument, Honeywell focuses on the next sentence of Section 4, which provides as follows:

> If two or more persons are liable pursuant to section five for such release or threat of release, **each shall be liable to the others** for their **equitable share** of the cost of such response action.

G.L. c. 21E, § 4 (emphasis added).    Honeywell, in essence, attempts to read out of G.L. c. 21E, the clause in Section 5(b) which states explicitly that "[n]o person who is liable solely pursuant to clause (1) of paragraph (a) and who did not own or operate the site at the time of the release . . .and did not cause or contribute to such release . . . shall be liable to any person who is liable pursuant to clause[] (2) . . ." See G.L. c. 21E, § 5(b).   If Well-Com did not own or operate the site at the time of release, and did not cause or contribute to the release, and for this reason, is not liable to Honeywell under §5(b), it cannot be "liable to [Honeywell] for [an] equitable share of the costs of such response action" within the meaning of Section 4.  See Section 4 ("each shall be liable to the others for their equitable share").  As noted above, there is no genuine dispute that Well-Com did not own or operate the site at the time of release, or  "cause or contribute to such release or threat of release" within the meaning of the statute.  See Affidavit of Robert J. Ankstitus, ¶ 22-54, SOF, ¶¶ 66-68.   Accordingly, this case presents a question of law concerning the meaning of, and relationship between, G.L. c. 21E, §§ 4 and 5(a) (2) (iv), and the exception provided by Section 5(b).   "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001)(quoting Duncan v. Walker, 533 U.S. 167, 174 (2001)(internal quotation marks omitted). See also 2A N. Singer, Sutherland Statutory Construction, § 46.06 (4th ed. 1984)("[a] statute should be construed so that  . . .  no part will be inoperative or superfluous, void or insignificant").

        The primary rule of statutory construction is to give effect to the intention of the Legislature.  Commonwealth v. Boston Edison Co., 444 Mass. 324, 332 (2005)("[i]n construing

G.L. c. 21E, we apply the general rule of statutory construction that a statute is to be interpreted 'according to the intent of the Legislature ascertained from all its words . . . considered in connection with the cause of its enactment"). Additionally, a court construing a statute must also invoke the common mandate of statutory construction that its interpretation of a statute must avoid absurd results. Both the language and the structure of Chapter 21E evince a Legislative intent that Well-Com's liability is not joint or several vis-à-vis Honeywell, <u>see</u> § 5(a)(2)(iv); that Well-Com is not liable to Honeywell, <u>see</u> § 5(b); and that for these reasons, Well-Com cannot be liable to Honeywell for an "equitable share of the costs of [a] response action." G.L. c. 21E, § 4. Instead, if Well-Com undertakes a clean-up of the site, it is entitled to full reimbursement from Honeywell for the reasonable costs of such a response action. G.L. c. 21E, § 4 ("[a]ny person who undertakes a necessary and appropriate response action regarding the release or threat of release or oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such response action").

As explained by the Supreme Judicial Court in <u>Martignetti v. Haigh-Farr Inc.</u>, "the very structure of G.L.c. 21E" reflects that it is a "strict liability statute that imposes liability on the basis of status." <u>Martignetti v. Haigh-Farr Inc.</u>, 425 Mass. 294, 308 (1997). The structure of G.L. c. 21E allows the Commonwealth to make one liable party entirely responsible for a cleanup under Section 5(a), but a person who is liable solely pursuant to § 5(a)(1) is relieved from liability vis-à-vis other PRP's who are strictly liable under subsections (2), (3), (4), or (5), if can prove that it has not caused or contributed to the release of hazardous materials. An examination of the Legislative history of Section 4 supports Well-Com's construction of Chapter 21E. In

1992, the Legislature amended Section 4, by substituting the third and fourth paragraphs, and

deleting a former third paragraph which read:

> Any person who undertakes assessment, containment or removal action regarding
> the release or threat of release or oil or hazardous material shall be entitled to
> reimbursement from any other person liable for such release or threat of release
> for the reasonable costs of such assessment, containment and removal.  If such
> release resulted from the negligence of two or more persons, *each shall be liable*
> *to the others* for his pro rata share of the costs

Although Section 4, as presently drafted, incorporates some new language in setting out a right

to "equitable share" contribution, as opposed to the former language providing for "pro rata

share" contribution, the Legislature chose to leave in the clause the qualifying words "*each shall*

*be liable to the others*." See G. L. c. 21E, § 4.   As noted above,  since Well-Com can invoke the

exception provided Section 5(b), it  cannot be liable to Honeywell under Chapter 21E, §§ 5(a)

and 5(b) and, for this reason, Honeywell may not pursue damages against Well-Com.  By

contrast, it is undisputed that Honeywell's liability is joint and several under Section 5(a) and,

for this reason, Well-Com may recover its full damages for the full cost of a reasonable and

appropriate response action.   See Commonwealth v. Boston Edison, 444 Mass. 324, 328

(2005)("[w]here joint and several liability applies, plaintiffs may recover their full damages from

any liable party").

### D.    WELL-COM IS ENTITLED TO INVOKE THE DEFENSE OF AN INNOCENT PRP UNDER M.G.L, c. 21E, § 5 (C).

It is clear from the language and structure of Chapter 21E that since Well-Com can prove

that it is entitled to invoke the exception under section 5(b), its only liability as a PRP can be to

the Commonwealth.   Section 5(b) provides an exception to liability for PRP's whose liability

derives solely because of their status as owner's of a polluted site, but the text of section 5(b)

makes clear that the exception applies only vis-à-vis other PRP's.   The final clause of Section 5(b) provides an "exception" to the  exception,  because it states that the exception does not apply to the Commonwealth. G.L. c. 21E, § 5(b)("except that any such person liable solely pursuant to clause (1) of paragraph (a) shall be liable to the commonwealth").  Even vis-à-vis the Commonwealth, however, Well-Com is not strictly liable solely because of its status as an owner or operator of a site within the meaning of Section 5(a).  The harsh effects of the strict liability rule are subject to mitigation not only by Section 5(b), but also by certain affirmative defenses that are set out in Section 5(c).  Although Section 5(a) enumerates categories of potentially responsible persons, a PRP is entitled to assert the defenses available under Section 5 (c) in order to avoid liability, following the Commonwealth's cleanup, for expenses which exceed the value of the property. [4]  Section 5(c) provides in pertinent part as follows:

(c)    ….there shall be no liability under paragraph (a) for a person otherwise liable who can establish by a preponderance of the evidence, (a) that the release or threat of release of oil or hazardous material and the damages resulting therefrom were caused by:

 (1)  an act of God;

 (2)  an act of war;

 (3)  an act or omission of a third party other than an employee or agent of the person, or than one whose act or omission occurs in connection with a contractual relationship existing directly or indirectly, with the person  . . . if the person establishes by a preponderance of the evidence that he exercised due care with respect to the oil or hazardous material . . . and complied with all the notification requirements of section seven

---

[4]   Honeywell argues, wrongly, that Well-Com "has not properly pleaded" this affirmative defense.  Honeywell ignores the fact that this is a declaratory judgment action where Well-Com has pleaded a cause of action under G.L. c. 21E for the costs of  its response costs, both past and future, including all reasonable attorney's fees.  Well-Com's Complaint seeks a declaration establishing liability and a judgment for all response costs.

G.L. c. 21E, §5(c).   Section 5(c) affords a defense to Chapter 21E liability following the

Commonwealth's cleanup if a landowner can assert and prove under subsection (3) that the

release of contaminants on its property was caused by "an act or omission of a third party,"

unless the act or omission occurred "in connection with a contractual relationship" with the PRP.

When the words used by the Legislature in § 5(c)(3) are given their plain and ordinary meaning,

the third party defense is available under the circumstances of this case, where Honeywell

qualifies as a third-party whose act or omission caused the release in question, and Well-Com

had no connection whatsoever to the release of hazardous materials, and has acted with due care

with regard to the hazardous materials.    It is undisputed that Well-Com acquired a 100%

interest in the site in 1996, through conveyances from Well-Com, Inc. and Well-Com Associates,

Inc., long after the Site was contaminated by Allied and its predecessors . SOF, ¶¶ 53, 62, 66-

68.    Although the deeds from Well-Com's predecessors were contracts (and hence, the parties

entered a contractual relationship), there was no connection between these deeds and the release

of oil or hazardous material which contaminated the site. SOF, ¶¶ 62, 63, 66-68.   Affidavit of

Robert J. Ankstitus, ¶ 23 ("[i]t is my opinion that the contaminants on the Site are the direct

result of past operations at the Site by Honeywell International, Inc. . . . and its predecessors,

including Allied Chemical and the Barrett Company") . Additionally, it is undisputed that Well-

Com has exercised due care with respect to the oil and hazardous materials, within the meaning

of the statute, by hiring a Licensed Site Professional to prepare and implement an in-depth site

investigation and remedial implementation plan.    SOF, ¶¶ 55-62, 69-72.   Affidavit of Robert J.

Ankstitus, ¶ ¶ 20-55 . And finally, Well-Com has complied with the notification requirements

of section seven, within the meaning of the statute. SOF, ¶¶57-58 . Therefore, when the words

of the statute are given their plain meaning, Well-Com is entitled to invoke the third-party

defense under section 5(c), and thereby establish its status as an "innocent landowner," to whom

liability cannot attach under section 5(a), unless the state has "incurred costs for assessment,

containment or removal."  See G.L. c. 21E, §§ 5(c) and 5(d).

Honeywell argues that Well-Com cannot invoke the innocent landowner defense under

Section 5(c) because it  acquired the site with knowledge that it was contaminated, and

Honeywell supports this theory by referring to CERCLA, which is  the federal counterpart to

Chapter 21E.  See 42 U.S.C. § 9607.  Although it is true that § 9607(b) of  CERCLA  provides

the same defenses to liability that are set forth in Section 5(c) -  i.e., for (1) an act of God; (2) an

act of war; and (3) an act or omission of a third party -  other provisions of CERCLA limit the

availability of these defenses. See 42 U.S.C. § 9607.   Under § 9601 (Definitions), CERCLA

attaches an extremely complex definition to the term "contractual relationship," which alters the

plain meaning of that term.  42 U.S.C. § 9601(35) (A).   Under § 9601(35), the term "contractual

relationship" means "land contracts, deeds, or other instruments transferring title or possession . .

.unless the real property on which the facility . . . is located was acquired by the defendant after

the disposal . . . of the hazardous substance . . . and . . . (i), (ii), or (iii) is also established . . ." Id.

In order for innocent landowner status to attach, clause (iii) requires that "[a] t the time the

defendant acquired the facility the defendant did not know and had no reason to know that any

hazardous substance . . . was disposed of . . .at the facility."  42 U.S.C. § 9601(35)(A).

Honeywell argues that the court should apply this definition, and deny Well-Com the defense of

an innocent landowner, because it had knowledge that the site was polluted at the time it

acquired the property.

However, Chapter 21E says no such thing.  There is no comparable definition under G.L.
c. 21E and, therefore, the court is required to give the term "contractual relationship," as it is
used in Section 5(c), its plain and ordinary meaning.  <u>Gemme v. Applied Environmental Tech.</u>,
16 Mass. L. Rep. 366 (Mass. Super. 2003)("the plain language contained in G.L. c. 21E, § 5(c)
demonstrates that the Legislature envisioned a broad reading of the term 'contractual
relationship'");  <u>see</u> <u>King v. Viscoloid Co.</u>, 219 Mass 420, 425 (1914)("we have no right to . . .
read into the statute a provision which the Legislature did not see fit to put there, whether the
omission came from inadvertence or set purpose").  Chapter 21E mirrors CERCLA in many
ways and, therefore, the Legislature must be presumed to have known how Congress defined the
term "contractual relationship."  If the Legislature had intended for Massachusetts citizens to be
bound by such a definition, it could have enacted a similar provision.  Since the Legislature
chose not to use similar words, this court should decline to imply language that was intentionally
omitted.  <u>Leary v. Contributory Retirement Appeal Bd.</u>, 421 Mass 344, 348 (1995)("in these
circumstances, where the statute is detailed and precise, we regard the omission as purposeful").
"If the Legislature intentionally omits language from a statute, no court can supply it."  <u>Boylston</u>
<u>Water District v. Tahanto Regional School District</u>, 353 Mass 81, 84 (1967) citing <u>Mitchell v.</u>
<u>Mitchell</u>, 312 Mass. 154, 162 (1942).

When the words of G.L. c. 21E, § 5(c) are given their plain and ordinary meaning, as
written by the Legislature, Well-Com is entitled to invoke the "third party" defense and thereby
establish innocent landowner status.  <u>United States v.  New England Coal and Coke Co.</u>, 318
F.2d 138, 142 (1st Cir. 1963)("this court is guided by the Supreme Court's rule of interpretation
which is that 'in matters of statutory construction the duty of this Court is to give effect to the

38

intent of Congress, and in doing so our first reference is of course the literal meaning of the words employed'"). Therefore, Well-Com can establish an absence of liability vis-à-vis Honeywell by invoking the protection of both Sections 5(b) and 5(c). Although the Section 5(b) exception applies only as to Honeywell, Section 5(c) provides a broader defense to liability under Chapter 21E, and absolves Well-Com from any and all liability to the Commonwealth, unless the Commonwealth itself[5] incurs costs for an assessment, containment or removal of hazardous materials from the site.

## V.    __CONCLUSION__

For all of the above reasons, Well-Com respectfully requests that the Court deny Honeywell's motion for partial summary judgment. Additionally, Well-Com requests that the court enter partial summary judgment in its favor, and against Honeywell, and rule that (1) Well-Com is entitled to recover all of its costs for assessment, containment or removal of hazardous materials pursuant to G.L. c. 21E, §4, §4A and §5; (2) Well-Com is entitled to recover its attorney's fees under G.L. c. 21E, § 15; and (3) Well-Com is entitled under 42 U.S.C. § 107(a)(4)(B) to recover all of the costs it has incurred relating to the assessment of hazardous wastes at the site, and is entitled to recover all future remediation costs incurred in a clean up of the site.

---

[5]   Well-Com has also asked for attorney's fees to be awarded by the court. Mass. Gen. L. c. 21E § 15 provides: § 15. Citizen Enforcement.

In any suit by Massachusetts residents to enforce the requirements of this chapter, or to abate a hazard related to oil or hazardous materials in the environment, the court may award costs, including reasonable attorney and expert witness fees, to any party other than the commonwealth who advances the purposes of this chapter.

Respectfully submitted,

Well-Com Associates, L.P.
By its attorneys,


/s/ A. Neil Hartzell
A. Neil Hartzell (BBO # 544752)
Patricia B. Gary (BBO #554731)
Donovan Hatem LLP
World Trade Center East
Two Seaport Lane
Boston, MA 02210
617-406-4500

Dated February 13, 2006

## CERTIFICATE OF SERVICE

I, Matthew M. O'Leary, hereby certify that on this 13th day of February, 2006, a copy of the foregoing was served on the attorney for the defendant by electronic means pursuant to Local Rule 5.2(b).

/s/ Matthew M. O'Leary
Matthew M. O'Leary

00979449.DOC