UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| WELL-COM ASSOCIATES, L.P., | ) |
| Plaintiff, | ) |
| v. | )    Docket No. 05-10056-JLT |
| HONEYWELL INTERNATIONAL INC., | ) |
| Defendant. | ) |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Dated:  March 3, 2006

HONEYWELL INTERNATIONAL INC.,

By its attorneys,

Thomas K. Christo (BBO #083240)
David B. Chaffin (BBO #549245)
HARE & CHAFFIN
160 Federal Street
Boston, Massachusetts 02110-1700
(617) 330-5000

Of Counsel:

Brian D. Israel, Esq.
Arnold & Porter, LLP
555 12th Street, NW
Washington, D.C. 20004
(202) 942-6546

**Table of Contents**

                                                                          Page

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Counter-Statement Of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      Preliminary Observations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      Well-Com's Failure To Comply With Rule 56(e) . . . . . . . . . . . . . . . . . . . . . . . . 3

      Well-Com's Admissions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      Additional Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    I.    Well-Com Is Not Entitled To Pursue
          A Cost Recovery Action Under § 107 . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    II.   Well-Com Is Not Entitled To Recover
          100% On Its Chapter 21E Claim Either . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Table of Authorities**

**Page**

**Cases**

AL Tech Specialty Steel Corp. v. Allegheny International Credit Corp.,
104 F.3d 601(3d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1 n.1

Black v. Coastal Oil New England, Inc.,
699 N.E.2d 353, rev. denied, 707 N.E.2d 1077 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Boylston Water Dist. v. Tahanto Regional School Dist.,
227 N.E.2d 921 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cadillac Fairview/California, Inc. v. Dow Chemical Co.,
299 F.3d 1019 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9 n.5

Church v. General Electric Co.,
138 F. Supp. 169 (D. Mass. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Consolidated Edison Company of New York, Inc. v. UGI Utilities, Inc.,
423 F.3d 90 (2nd Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7 n.4

Cooper Industries, Inc. v. Aviall Services, Inc.,
125 S. Ct. 577 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Franklin County Convention Facilities Authority v. American Premier Underwriters, Inc.,
240 F.3d 534 (6th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10 n.5

Gemme v. Applied Envtl. Tech.,
2003 WL 21500549 (Mass. Super. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13 n.7

King v. Viscoloid Co.,
106 N.E. 988 (1914) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Leary v. Contributory Retirement Appeal Bd.,
657 N.E.2d 224 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Martignetti v. Haigh-Farr, Inc.,
680 N.E. 2d 1131 (Mass. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13 n.7, 14 n.8

Mitchell v. Mitchell,
43 N.E.2d 783 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

O'Neill v. Picillo,
883 F.2d 176 (1st Cir. 1989), cert. denied, 493 U.S. 1071 (1990) . . . . . . . . . . . . . . . . . . . . . . . 8, 9

PMC, Inc. v. Sherwin-Williams Co.,
151 F.3d 610 (7th Cir. 1998), cert. denied, 525 U.S. 1104 (1999) . . . . . . . . . . . . . . . . . . . . . . 9 n.5

Pinal Creek Group v. Newmont Mining Corp.,
118 F.3d 1298 (9th Cir. 1997), cert. denied, 524 U.S. 937 (1998) . . . . . . . . . . . . . . . . . . . . . . 9 n.5

United Technologies Corp. v. Browning-Ferris Industries, Inc.,
33 F.3d 96 (1st Cir. 1994), cert. denied, 513 U.S. 1183 (1995) . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8

**Statutes**

42 U.S.C. § 9607 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5, 6, 7, 8

Mass. Gen. L. ch. 21E, §4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14

Mass. Gen. L. ch. 21E, §5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 13, 14

**Secondary Source**

M.S. Dennison, Current Landowner's Right to Recover Cleanup
Costs from Other Liable Parties Under § 107 of CERCLA,
80 Am. Jur. Proof of Facts 3d 281 (updated through Sept. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 6

Defendant, Honeywell International Inc., respectfully submits this memorandum in opposition to plaintiff's cross-motion for partial summary judgment and in further support of its own motion for partial summary judgment.

## Preliminary Statement

Honeywell's motion for partial summary judgment is designed to break the logjam created by plaintiff's no-compromise approach. It raises only five points:

- Numerous federal courts of appeals, including the First Circuit, and district courts have held (and have been observed by the Supreme Court to have held) that a party that is itself liable under § 107 of CERCLA cannot sue to recover all of its response costs under § 107.
- Well-Com, as the owner and operator of the property at issue (the "Site"), is liable under § 107.
- Because it is liable, Well-Com cannot sue to recover all of its response costs under § 107.
- On its claim for contribution under CERCLA, Well-Com is not entitled to 100% of its response costs because, among other reasons, it acquired the Site at a discount and with knowledge that it was contaminated.
- On its claim under Chapter 21E, Well-Com is not entitled to 100% of its response costs because, among other reasons, it acquired the Site at a discount and with knowledge that it was contaminated.

The purpose of the motion is to establish that there are limits to Well-Com's claims, not to deny Well-Com a recovery.

Well-Com does not deny that it is the owner/operator of the Site or that it acquired the site at a discount and with knowledge that it was contaminated. Nor does it discuss or even cite the case law that establishes that an owner/operator that acquired property with knowledge that the property was contaminated, and at a price that reflected the contaminated state of the property, is not entitled to recover all of its response costs.[1]

---

[1] Thus, Well-Com does not mention the cases cited at page 14 of Honeywell's memorandum or these words by now Justice Alito in AL Tech Specialty Steel Corp. v. Allegheny International Credit Corp., 104 F.3d 601, 607 (3d Cir. 1997): "A reduction in the purchase price of a facility is certainly a valid factor to be considered in allocating response costs among responsible parties . . ., and the amount of the discount is, of course, important." (Citation omitted.)

1

Instead, Well-Com devotes a large part of its 40-page brief to an attempt to persuade the Court that it has a cause of action for cost recovery under § 107. The attempt fails, for the law is against Well-Com, and Well-Com's devices do not work. One of its devices is to set up a straw man, only to knock it down: Well-Com says that Honeywell has argued in effect that Well-Com has no cause of action under CERCLA and that, if the Court were not to permit Well-Com to pursue a cost recovery claim, Well-Com might be without recourse under CERCLA. Honeywell has **not** so argued.

Well-Com also insists that despite its own liability, its pre-acquisition knowledge of the contamination, and the discounted acquisition price, it is entitled to recover all of its response costs (and more) under Chapter 21E. Well-Com misreads Chapter 21E as well.

Having acquired the Site with knowledge of the contamination and for short money, Well-Com would receive a windfall if it were permitted to force Honeywell to pay 100% of the Site clean-up costs. Perhaps concerned that it will be viewed as looking to line its pockets, Well-Com has tried to capture the high ground. It claims that Honeywell should pay everything because it received money in an insurance settlement based in part on a claim with respect to the Site. And it repeatedly suggests that it is "innocent" and that it is cleaning up the Site voluntarily. But Well-Com has not proved that the settlement to which it refers had anything to do with the Site, or is in any way relevant, and Well-Com is no innocent, as recent correspondence from the DEP demonstrates.

**Counter-Statement Of Facts**

**Preliminary Observations**

### Well-Com's Failure To Comply With Rule 56(e)

In support of its "Statement of Undisputed Facts," Well-Com has submitted, and cites, affidavits that in varying degrees do not comply with Rule 56(e). Honeywell has moved to strike the portions of the affidavits that do not comply.

### Well-Com's Admissions

Well-Com has admitted that when it acquired the Site in 1996, it was aware that the Site was contaminated. (Plaintiff's Local Rule 56.1 Statement of Undisputed Facts, ¶¶ 41, 53, 54.)

Well-Com has admitted also that it acquired the Site in 1996 for a small cash payment and the assumption of, in effect, only $2,000,000 in debt. Well-Com has admitted that the appraised fair market value of the Site nine years earlier, taking into account the contamination, was at least $5.6 million. (Id., ¶¶ 47, 52; Honeywell's Motion for Partial Summary Judgment and Local Rule 56.1 Statement of Undisputed Facts, ¶¶ 36-38, 41.)

**Additional Facts**

At the heart of Well-Com's cross-motion are two questions of fact: (1) whether Honeywell's predecessors caused all of the contamination at the Site, and (2) whether Well-Com's response costs to date have been reasonable. Well-Com claims there is no genuine issue of fact with respect to either of these questions.

Well-Com's position on the first question is incorrect, for two reasons. First, its position as to causation is based solely on the opinion of its expert. Honeywell has

3

moved to strike the opinion. Second, Honeywell submits herewith the Declaration of Kerry Tull, an environmental consultant, who opines, to a reasonable degree of scientific certainty, that it is not reasonable to rule out other sources of the Site contamination, including tenants of Well-Com (and its corporate predecessors). (In any event, the issue actually is not relevant for present purposes. Even if Honeywell's predecessors did cause all of the contamination at the Site, Well-Com would not be entitled to recover all of its response costs. Because Well-Com acquired the Site at a discounted price, knowing it was contaminated, it has to share in the cost to clean it up. Otherwise it would receive a multi-million dollar windfall.)[2]

A genuine issue exists as to the second issue as well. As Honeywell previously indicated, DEP considers Well-Com to be in violation of the MCP. Indeed, the undersigned received today a letter from Associate Counsel for Well-Com in which she indicates that Well-Com is prepared to enter into an Administrative Consent Order with the DEP. The Administrative Consent Order clearly indicates not only that Well-Com is

---

[2]    Well-Com asserts as fact that Honeywell (then Allied-Signal) received in settlement of an insurance coverage action proceeds based on or related to the Site. It has not submitted evidence, much less admissible evidence, to establish this fact. In support of the assertion, it cites only (1) the amended complaint in Allied-Signal's environmental coverage action, which is dated June 30, 1988, and which includes a list of over 350 sites in connection with which Allied-Signal potentially had exposure and was seeking coverage, and (b) an opinion of the Delaware Chancery Court that states that the litigation had been settled in 1990. (Well-Com Rule 56.1 Statement, ¶¶ 73-81.) It is **not** a fair inference from these two documents that Honeywell (or Allied-Signal) received money from its insurer based on or related to the Site. The assertion that any part of the settlement proceeds related to the Site is pure speculation. Further, even assuming Allied-Signal received money from its insurer based on or related to the Site, Well-Com is not entitled to take advantage of it. Any such payment would have been the result of separate contractual or business relationships between Allied-Signal and its insurer, for which Allied-Signal paid. The relationships were not for the benefit of Well-Com. And, any consideration of the payment inevitably would require an analysis of the net benefit to Allied-Signal, taking into account premiums paid, costs of recovery, etc. This would lead to a trial within a trial. Finally, even assuming some component of the global settlement related to the Site, it would not follow that Well-Com is entitled to the relief it seeks: At most, the amount of the component would simply factor into the equitable allocation analysis; it would not open the door to Well-Com's recovery of 100% of its response costs. For example, if, hypothetically, Allied-Signal received a net payment of $2,000 in respect to the Site (and there is no evidence that even this amount was received), this could be used as a set-off of some sort, after taking into account as well the amount Honeywell itself contributed to the environmental studies at the Site, which far exceeds $2,000.

4

liable under Chapter 21E, but also that it has violated the MCP. Further, even though Well-Com's principal has known about the contamination for 20 years and has had a beneficial interest in the Site for nearly that long, little actual clean-up has been effected. Whether Well-Com and its predecessors have exacerbated the Site conditions by their inaction is a genuine issue.

**Argument**

### I. WELL-COM IS NOT ENTITLED TO PURSUE A COST RECOVERY ACTION UNDER § 107

Well-Com devotes 20 pages of its brief to an argument designed to convince the Court that it may pursue a cost recovery claim under § 107 of CERCLA to recover 100% of its response costs from Honeywell. It needs this claim, Well-Com says, because Honeywell has argued in effect that Well-Com may not seek contribution under CERCLA. It is entitled to pursue this claim, Well-Com says, because:

1. The Supreme Court and the First Circuit have not ruled that a party must prove an affirmative defense under § 107 before pursuing a cost recovery claim;
2. Well-Com can prove all of the necessary elements of a cost recovery claims under § 107; and
3. Liability under § 107 is joint and several, and damages may be apportioned only if the harm is divisible, and it is not divisible here.

Well-Com's claim that Honeywell has argued that Well-Com may not pursue a contribution claim is incorrect. The argument does not appear, anywhere, in the papers in support of Honeywell's motion.

Well-Com's claim that it is entitled to pursue a cost recovery claim also is incorrect. Well-Com has the law wrong. It begins the analysis at the wrong point. The type of relief available under CERCLA depends on whether the plaintiff is a liable party under the statute, and the analysis, therefore, begins with whether the plaintiff is a liable

5

party. <u>United Technologies Corp. v. Browning-Ferris Industries, Inc.</u>, 33 F.3d 96, 99-101

(1st Cir. 1994), <u>cert</u>. <u>denied</u>, 513 U.S. 1183 (1995) ("'Actions for recovery of costs,'

suggests full recovery; and it is sensible to assume that Congress intended only innocent

parties – not parties who were themselves liable – to be permitted to recoup the whole of

their expenditures."). If the plaintiff is liable under § 107, it cannot pursue a cost

recovery claim under § 107. As one commentator has explained:

> A number of courts have considered the important question
> whether a PRP is restricted to bringing a contribution claim under Section
> 113(f) or whether it may also pursue a cost recovery action under Section
> 107(a). The general consensus is that a claim by one PRP against another
> PRP is a contribution claim, regardless of label . . .. In fact, the court of
> appeals of every federal circuit has fully embraced the view that a claim
> by one PRP against another PRP must necessarily be one for contribution
> controlled by Section 113(f), not Section 107(a). Thus a PRP cannot take
> advantage of the joint and several liability of Section 107 to recover all of
> its response costs from other PRPs, but instead is limited to asserting a
> contribution claim under Section 113 to recover an equitable share of the
> costs from the other PRPs.

M.S. Dennison, <u>Current Landowner's Right to Recover Cleanup Costs from Other Liable</u>

<u>Parties Under § 107 of CERCLA</u>, 80 Am. Jur. Proof of Facts 3d 281 § 9 (updated through

Sept. 2005), citing opinions of every federal court of appeals, including <u>United</u>

<u>Technologies</u>. <u>See also</u> <u>Cooper Industries, Inc. v. Aviall Services, Inc.</u>, 125 S. Ct. 577,

585 (2004) ("the parties cite numerous decision of the Courts of Appeals as holding that a

private party that is itself a PRP may not pursue a § 107(a) action against other PRPs for

joint and several liability") (citing <u>United Technologies</u> and numerous other decisions).

The commentator (and the Supreme Court, of course) is correct. No amount of

argument by Well-Com can change the fact that the courts, including the First Circuit,

have recognized the fundamental distinction between (a) a cost recovery action under §

107, in which joint and several liability is pursued and imposed, permitting a non-liable

plaintiff to recover 100% of its response costs, and (b) a contribution action, in which a party that is itself jointly and severally liable seeks an equitable apportionment of response costs. No amount of argument by Well-Com can change the fact that the courts have held that because a cost recovery action by definition seeks to hold the defendant liable for 100% of the costs to clean up a site based on the defendant's joint and several liability under § 107, a party that is itself liable by definition cannot pursue one.[3] See, e.g., United Technologies, 33 F.3d at 99-101.[4] Well-Com itself cites many cases recognizing the fundamental distinction between cost recovery actions and contribution actions, a distinction that precludes liable parties from pursuing the former. See, e.g., Franklin County Convention Facilities Authority v. American Premier Underwriters, Inc., 240 F.3d 534, 547-48 (6th Cir. 2001) (because plaintiff landowner not innocent landowner, its claim of necessity one for contribution and not cost recovery).

Despite all this law and analysis, Well-Com insists that all it needs to do is prove the elements of a cost recovery action. Well-Com correctly states the elements of a cost-recovery claim, but it ignores the antecedent question that must be asked under the authority discussed above: Is Well-Com a liable party? If the answer is "yes," whether Well-Com can establish the elements is irrelevant, for it does not even get a chance to try. And the answer **is** "yes."

---

[3]       Under Well-Com's logic, Honeywell, which has expended costs on the environmental studies of the Site, could have sued Well-Com to recover all of those costs.

[4]       One court of appeals recently changed its mind on this issue, holding that a liable party can pursue a cost recovery claim under § 107. Consolidated Edison Company of New York, Inc. v. UGI Utilities, Inc., 423 F.3d 90, 99-100 (2nd Cir. 2005). At the same time, the court recognized that its decision could result in a party that is itself liable being unjustly enriched by holding another liable party responsible for 100% of the response costs on a joint and several liability basis. 423 F.3d at 100 n.9. The remedy for this potential inequity, the court suggested, is for the defendant to counterclaim for contribution. Should the Court choose to follow the Second Circuit's analysis and, despite United Technologies, permit Well-Com to pursue a full cost recovery claim under § 107, Honeywell would request leave to amend to assert the counterclaim pursuant to the Second Circuit's suggestion.

Well-Com also makes much of the fact that the First Circuit has never explicitly held that a party must prove an affirmative defense to liability under § 107 in order to pursue a claim under the section. Well-Com is incorrect: The First Circuit has held that a §107 action for cost recovery is available only to a non-liable party. United Technologies, 33 F.3d at 99-101. A necessary implication of this holding is, in fact, that a party that is otherwise liable must establish an affirmative defense to liability; otherwise, the party would not be a non-liable party entitled to pursue the claim. Under the First Circuit's holding, a party, such as Well-Com, that is liable under §107 as the owner/operator of a site remains liable absent proof of one of the exclusive defenses to liability and cannot pursue a §107 cost recovery action. See, e.g., Franklin County Convention Facilities, 240 F.3d at 547-48 (plaintiff not entitled to pursue cost recovery claim under §107 because it had failed to establish innocent landowner defense).

Pointing to decisions holding that apportionment is appropriate only where the harm is divisible, Well-Com also argues that there may be no equitable apportionment in this case because the harm to the Site is indivisible. Even assuming the harm at the Site is indivisible, this argument is flawed, for the decisions do not apply in this context. The courts, including the First Circuit, have held that in a § 107 cost recover action involving multiple PRP defendants, a particular PRP can avoid being held jointly and severally liable for the entire harm at the site in question by showing that the harm is divisible and that it is not responsible for some divided portion of the harm. See, e.g., O'Neill v. Picillo, 883 F.2d 176, 178-79 (1st Cir. 1989), cert. denied, 493 U.S. 1071 (1990) (State of Rhode Island cost recovery action against PRPs responsible for contamination of pig farm used as disposal site for hazardous wastes) ("damages can be apportioned only if the

*defendant* can demonstrate that the harm is divisible"). According to Well-Com, this means that Honeywell cannot escape joint and several liability and can be held liable to Well-Com for 100% of Well-Com's response costs. This argument ignores that Well-Com is itself jointly and severally liable; the proposition recognized in O'Neill applies only where a PRP seeks to limit its liability in a cost recovery action (brought by a non-liable party) based on a showing that it is responsible for only part of the contamination at a Site. Moreover, the O'Neill court recognized (and Well-Com ignores) that even where a PRP is incapable of establishing divisibility, "a right of contribution undoubtedly softens the blow . . .." Id. at 179. In other words, where a PRP cannot limit its liability by showing divisibility, it still is entitled to pursue contribution from other PRPs, which is precisely the situation here, with Honeywell urging the equitable allocation that a contribution action entails.[5]

---

[5]     Well-Com relegates to a footnote its position concerning how, if Well-Com is limited to a claim for contribution, response costs should be equitably apportioned. Ignoring, among other things, the law that makes its knowledge of the contamination and the discounted purchase price relevant, Well-Com says, unsurprisingly, that an equitable split would be Well-Com – 0%, and Honeywell – 100%. The four cases it cites in support of this position (a) do not address the issue at bar (whether an owner/operator that bought at a discount should have a share), and (b) are distinguishable from this case.

The first of the four is Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298 (9th Cir. 1997), cert. denied, 524 U.S. 937 (1998). Pinal Creek did not involve any issue as to equitable allocation. In dicta in a footnote, the Ninth Circuit simply observed that it did "not foreclose the possibility that a court could find, after balancing the equities as required by § 113, that a particular PRP's equitable share of the total liability should be zero." 118 F.3d at 1301 n.3. Parenthetically, Pinal Creek is an example of the many cases that are inconsistent with Well-Com's argument that it is entitled to pursue a cost recovery action: The Ninth Circuit observed, for example, that "[b]ecause all PRPs are liable under the statute, a claim by one PRP against another PRP necessarily is for contribution." 118 F.3d at 1301. The second case is PMC, Inc. v. Sherwin-Williams Co., 151 F.3d 610 (7th Cir. 1998), cert. denied, 525 U.S. 1104 (1999). There, the Seventh Circuit held that the district court had not abused its discretion in deciding that Sherwin-Williams was 100% responsible for the costs of cleaning up a site that it had contaminated during a century of paint, insecticide, and other chemical manufacturing. The court did not address the issue at bar – whether an owner/operator who acquired a site at a discounted price and with knowledge of the contamination must bear a share of the clean-up costs. Parenthetically, PMC, Inc. also is inconsistent with Well-Com's claim that it is entitled to shift 100% of the costs to Honeywell. 151 F.3d at 617 (recognizing limited availability of § 107 claims and need of site owner to establish innocent landowner status). The third case is Cadillac Fairview/California, Inc. v. Dow Chemical Co., 299 F.3d 1019 (9th Cir. 2002). It involved a site that was contaminated as a result of synthetic rubber manufacturing activities during World War II. The site owner sued the United States, Dow Chemical, and certain rubber companies. Dow Chemical and the rubber companies had been involved in the manufacturing process pursuant to contract

## II.  WELL-COM IS NOT ENTITLED TO RECOVER
## 100% ON ITS CHAPTER 21E CLAIM EITHER

Well-Com's argument as to Chapter 21E is equally flawed.  Just as it begins its

argument under CERCLA in the middle so as to by-pass the critical importance of its

---

with the government and had been under the direct control of the government.  The district court held the United States 100% liable because, among other reasons, it had had total control and ownership of the manufacturing activities and had enlisted Dow and the others in the activities as part of an emergency wartime effort and had indemnified them.  The Ninth Circuit affirmed, writing:

> This is a shocking case.  The government is trying to take money from firms it conscripted for a critical part of a great war effort.  The government's arguments are strikingly weak.  The pollution occurred over six decades ago.  The polluting conduct was completely under the direction of the government, it was legal at the time, and the government promised to hold the polluters, who acted as government agents, harmless.  The government decided at the time that polluting the land and water this way was preferable to diverting resources from the war effort to do anything about it.  Now the government wants its servants to pay for what it told them to do and promised them they could do with no fear of liability.

299 F.3d 1029.  The case is nothing like the one at bar.  The fourth case cited by Well-Com is Franklin County, 240 F.3d 534.  In that case, which also undercuts Well-Com's claim that it is entitled to pursue a cost recovery action, 240 F.3d at 548-49, the corporate successor to a number of railroads was sued by a municipal authority.  The authority sought to recover response costs incurred in connection with the clean up of contamination from a massive wooden box containing benzene and creosote that the authority unearthed during construction on land on which the railroads had operated and that the municipality had taken by eminent domain.  The district court held the defendant (the successor to the railroads that had buried the box) 100% liable.  The Sixth Circuit upheld the allocation, writing:

> Specifically, the court reasoned that "equitable factors," such as [defendant's] refusal to participate in cleanup efforts despite notice from [plaintiff], militate for this result.  Additionally, we note that [defendant's] predecessor, in its agreement with [the municipality], agreed to remain responsible for any "claims which may affect . . . any portion of the premises."  Mindful of the broad discretion of the district court, we cannot conclude on these facts that the court abused its discretion by allocating total liability to [defendant].

240 F.3d at 549.  Franklin County did not involve any question as to pre-acquisition knowledge or as to a discounted purchase price.  The case is inapposite.

Well-Com suggests that holding Honeywell 100% liable in contribution would be appropriate because "Allied has already recovered insurance proceeds under a Settlement Agreement with Travelers Insurance . . . which covered the Site."  (Well-Com Memo at 18 n.2.)  This assertion is, as noted above, unsupported speculation.  Further, even assuming Allied-Signal received money from its insurer based on or related to the Site, Well-Com is not entitled to take advantage of it.  Any such payment would have been the result of separate contractual or business relationships between Allied-Signal and its insurer, for which Allied-Signal paid.  The relationships were not for the benefit of Well-Com.  And, any consideration of the payment inevitably would require an analysis of the net benefit to Allied-Signal, taking into account premiums paid, costs of recovery, etc.  This would lead to a trial within a trial.  Finally, even assuming some component of the global settlement related to the Site, it would not follow that Well-Com is entitled to the relief it seeks:  At most, the amount of the component would simply factor into the equitable allocation analysis; it would not open the door to Well-Com's recovery of 100% of its response costs.  For example, if, hypothetically, Allied-Signal received a net payment of $2,000 in respect to the Site (and there is no evidence that even this amount was received) this could be used as a set-off of some sort, after taking into account as well the amount Honeywell itself contributed to the environmental studies at the Site, which far exceeds $2,000.

own liability, it begins its argument under Chapter 21E at the section of the statute that allows it to by-pass the same critical fact.

Well-Com begins its argument at § 5 of Chapter 21E, which defines (a) the parties that are liable in connection with a release or threat of release of any hazardous material, (b) the parties to which such liable parties are liable, and (c) that for which such parties are liable. One category of liable parties are, as under CERCLA, owner/operators, and Well-Com acknowledges, as it must, that it "is an owner or operator of a site within the meaning of § 5(a)(1) and, therefore, qualifies as a potentially responsible party, or 'PRP.'" (Well-Com Memo at 29.)

Notably, § 5 provides, but Well-Com neglects to mention, that a liable party shall be liable to the Commonwealth for all response costs and damages to natural resources, but shall be liable to "any person" only for "damage to his real or personal property incurred or suffered as a result of such release or threat of release . . .." The liability under § 5 of a liable party thus extends to property damage, but not response costs, except where the Commonwealth is concerned.

Well-Com goes on to point out that § 5(b) (second paragraph) provides that no party that is liable as an owner or operator and "who did not own or operate the site at the time of the release or threat of release in question and did not cause or contribute to such release or threat of release shall be liable to any" other liable person, but shall be liable to the Commonwealth. Mass. Gen. L. ch. 21E, § 5(b) (second paragraph). It then claims that this language applies to it, and that, accordingly, it is not liable to Honeywell.[6] It

---

[6]    Honeywell does not concede that the language applies to Well-Com. As indicated in the accompanying Declaration of Kerry Tull, there is evidence that some of the contamination may be the result of operations of tenants of Well-Com or its corporate predecessors. Further, Well-Com has not complied with the MCP.

11

says that Honeywell therefore is required to pay 100% of the response costs associated with the Site.

The flaws in Well-Com's argument are many. First, just because Well-Com may not be liable to Honeywell under Chapter 21E, it does not follow that Honeywell is liable to Well-Com for 100% of Well-Com's response costs. Indeed, Well-Com cites no case to support its flawed logic. Well-Com forgets that it is the plaintiff. The result it seeks requires a mechanism that permits it to hold Honeywell 100% liable. Section § 5(b) only insulates Well-Com from liability to Honeywell (were Honeywell to sue, which it has not done, of course). It does not expose Honeywell.

Second, Well-Com ignores the limit of liability mentioned above. Section 5 renders a party liable only for property damage, except as to the Commonwealth, which can recover response costs. But Well-Com sues for response costs. Thus, to the extent Well-Com purports to seek response costs under §5, its claim is fatally flawed. See, e.g., Church v. General Electric Co., 138 F. Supp. 169, 174-75 (D. Mass. 2001) (recognizing distinction between § 4 claim for response costs and § 5 claim for property damage); Black v. Coastal Oil New England, Inc., 699 N.E.2d 353, 354-57 (response costs available under § 4, not § 5), rev. denied, 707 N.E.2d 1077 (1998).

Third, and most important, Well-Com misconstrues the critical section of Chapter 21E, § 4, the cost-recovery mechanism. Section 4 provides in relevant part:

> Any person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such response action. If two or more persons are liable pursuant to section five for such release or threat of release, each shall be liable to the others for their equitable share of the costs of such response action.

12

Mass. Gen. L. ch. 21E, § 4 (third paragraph).  Under this express language, because Well-Com is a liable party under chapter 21E,[7] Well-Com is entitled to recoup no more than Honeywell's equitable share from Honeywell.

Well-Com argues, however, that this provision of § 4 is inapplicable because, under § 5(b), Well-Com is not and cannot be liable to Honeywell.  Even accepting the premise that Well-Com qualifies under § 5(b), which Honeywell does not accept, the attempt to shoehorn provisions of § 5(b) into § 4 fails.  Section 4 plainly states that it applies when "two or more persons are liable."  It does not require that those persons be liable to each other.  (Indeed, Well-Com's liability to Honeywell is not even at issue because Honeywell has not counterclaimed under Chapter 21E.)  Elsewhere, Well-Com cites cases holding that the courts may not add language to a statute that the Legislature "did not see fit to put there, whether the omission came from inadvertence or set

---

[7]    Try as it might, Well-Com fails to escape its owner/operator liability based on the third party/innocent landowner defense, which permits a party to avoid liability upon a showing that the release was caused by "an act or omission of a third party other than [one occurring] in connection with a contractual relationship existing directly or indirectly, with the person." Mass. Gen. Laws c. 21E, § 5(c)(3). First, as the letter received today by the undersigned proves, Well-Com admits, as it must, that it is liable to the Commonwealth.  Second, there is substantial evidence that releases may have occurred during the ownership of Well-Com and/or its corporate predecessors and/or that Well-Com and/or its corporate predecessors have been anything but diligent in respect to the contamination at the site. Third, if, as alleged by Well-Com, the releases at the Site were caused by Honeywell's predecessors, the eventual transfer of title to Well-Com (with knowledge) would constitute a "contractual relationship," making Well-Com ineligible for the defense.  The only case cited by Well-Com, ostensibly in support of its position that the term "contractual relationship" was not intended to apply to a deed transfer, is Gemme v. Applied Envtl. Tech., 2003 WL 21500549 (Mass. Super. 2003).  The case actually undercuts Well-Com's position.  There, the court stated:

> The term "contractual relationship" is not defined in G.L.c. 21E, and there are no
> Massachusetts appellate decisions that have analyzed the scope of this term as it relates to
> the third-party liability defense contained in G.L.c. 21E § 5(c).  Nevertheless, the plain
> language contained in G.L.c. 21E § 5(c) demonstrates that the Legislature envisioned a
> broad reading of the term "contractual relationship."

It is noteworthy that, for guidance in interpreting Chapter 21E's third party defense, the Gemme court cited the definition of a contractual relationship in CERCLA's parallel third party defense, which includes "land contracts, deeds, . . . or other instruments transferring title or possession." 42 U.S.C. § 9607(b)(3). Gemme, 2003 WL 21500549 n.4.  The Gemme court was correct in looking to CERCLA, for the Supreme Judicial Court has directed that provisions of Chapter 21E that are like provisions of CERCLA be interpreted consistently with their federal counterparts. Martignetti v. Haigh-Farr, Inc., 680 N.E. 2d 1131, 1137 n.12 (Mass. 1997).  By virtue of its acceptance of the deed to the site, Well-Com's "contractual relationship" precludes Well-Com from availing itself of the third party defense.

13

purpose." King v. Viscoloid Co., 106 N.E. 988, 989 (1914); accord Leary v. Contributory Retirement Appeal Bd., 657 N.E.2d 224, 227 (1995); Boylston Water Dist. v. Tahanto Regional School Dist., 227 N.E.2d 921, 923 (1967); Mitchell v. Mitchell, 43 N.E.2d 783, 787 (1942). Well-Com's argument conflicts with the teaching of these cases: It would have the Court change the phrase "If two or more persons are liable pursuant to section five," to "If two or more persons are liable **to each other** pursuant to section five . . .." This the Court cannot do.

Because Well-Com is liable, at a minimum, to the Commonwealth, it cannot pursue a joint and several liability claim against Honeywell under §§ 4 and/or 5. Section 4 limits Well-Com's potential recovery from Honeywell to Honeywell's equitable share.[8]

---

[8]    Well-Com also seeks judgment awarding it its legal fees. Section 15 of Chapter 21E allows a party to recover attorneys' fees in the discretion of the court and only under certain circumstances. It provides:

> In any suit by Massachusetts residents to enforce the requirements of this chapter, or to abate a hazard related to oil or hazardous materials in the environment, the court may award costs, including reasonable attorney and expert witness fees, to any party other than the commonwealth who advances the purposes of this chapter.

Mass. Gen. L. ch. 21E, § 15. The Supreme Judicial Court has examined the question whether a plaintiff that is not "innocent" should be permitted to recover attorneys' fees from another liable party. Martignetti, 680 N.E.2d at 1147-50. In concluding that it should not, the court stated that any other outcome would not "advance the purposes" of the statute. Id. at 1147-48. Consequently, because Well-Com is a liable party, it cannot recover its legal fees.

## CONCLUSION

For the foregoing reasons and the reasons stated previously, Honeywell

respectfully requests that its motion for partial summary judgment be granted and that

Well-Com's cross-motion for partial summary judgment be denied.

Dated: March 3, 2006                    HONEYWELL INTERNATIONAL INC.,

                                        By its attorneys,

                                        /s/David B. Chaffin
                                        Thomas K. Christo (BBO #083240)
                                        David B. Chaffin (BBO #549245)
                                        HARE & CHAFFIN
                                        160 Federal Street
                                        Boston, Massachusetts 02110-1700
                                        (617) 330-5000

                                        Of Counsel:

                                        Brian D. Israel, Esq.
                                        Arnold & Porter, LLP
                                        555 12th Street, NW
                                        Washington, D.C. 20004
                                        (202) 942-6546

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non-registered participants on
March 3, 2006.

                                        /s/David B. Chaffin
                                        David B. Chaffin

15