UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WELL-COM ASSOCIATES, L.P., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HONEYWELL INTERNATIONAL, INC., )<br>)<br>Defendant. )<br>) | Docket Number 05-10056-JLT<br><br>**Hearing Requested** |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE PORTIONS
OF AFFIDAVITS SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

The plaintiff, Well-Com Associates, L.P. ("Well-Com"), opposes the motion of the defendant, Honeywell International, Inc. ("Honeywell"), to strike portions of the affidavits submitted by Well-Com in support of its opposition to Honeywell's motion for partial summary judgment and in support of Well-Com's cross-motion for summary judgment.

### I.    ARGUMENT

**A.    AFFIDAVIT OF JOHN M. PEREIRA.**

Homeywell seeks to strike a number of statements contained in the Affidavit of John M. Pereira ("Pereira Affidavit") on the grounds that Mr. Pereira allegedly does not have personal knowledge of the information contained therein. The statements that Honeywell seeks to strike fall into two categories: (1) statements concerning the purchase of property located at 378 Commercial Street, Malden, Massachusetts (the "Site") by entities owned by Joseph Carabetta and Stanton Black; and (2) statements concerning Well-Com's use of the Site. As described in detail below, Mr. Pereira has personal knowledge of these facts.

As Honeywell points out in its Statement of Facts in Support of its Motion for Summary Judgment, Mr. Pereira was an attorney for the Mr. Carabetta and Mr. Black in connection with the purchase of the Site from Wellington Realty Corporation. (Honeywell's Statement of Facts, ¶¶14-15). Based on this fact, Honeywell seeks to impute to Mr. Pereira certain information concerning the environmental condition of the Site. (Honeywell's Statement of Facts, ¶¶18-20). Honeywell now, however, claims that Mr. Pereira does not have personal information concerning the transaction and seeks to strike numerous statements from the Pereira Affidavit, including Paragraphs 7, 9-11, and 13-15, concerning the facts of the transaction. This argument by Honeywell belies credibility. Mr. Pereira has established that he has personal knowledge of the facts contained in the Pereira Affidavit and that he is competent to testify as to those facts.

Honeywell also seeks to strike paragraph 17 of the Pereira Affidavit, which states:

> Neither Well-Com, its predecessors-in-interest or its tenants, have performed any operations on the Site that could have contributed to the contamination identified by Rizzo as being present on the Site. Well-Com has not been engaged in any operation concerning the production of coal tar.

As Honeywell points out, however, Mr. Pereira is the owner of Well-Com. (Honeywell's Statement of Facts, ¶3). Honeywell does not even provide any argument in an effort to convince this Court that the owner of Well-Com does not have personal knowledge regarding the use to which Well-Com has put the Site.

For the foregoing reasons, Well-Com has established that Mr. Pereira has personal knowledge of the statements contained in the Pereira Affidavit and it competent to testify as to the statements contained therein. As a result, Honeywell's motion to strike should be denied.

B.   **AFFIDAVIT OF ROBERT J. ANKSTITUS.**

Honeywell seeks to strike the portions of the Affidavit of Robert J. Ankstitus ("Ankstitus Affidavit") concerning opinions about the source of the contamination at the Site on the grounds

2

that: (1) the opinions regarding causation are allegedly conclusory; (2) the "subsidiary opinions" are not presented with the requisite degree of scientific certainty; (3) Mr. Ankstitus allegedly did not consider contrary evidence; and, (4) the opinions regarding causation are irrelevant. As described in detail below, however, Honeywell's motion to strike should be denied.

Contrary to the argument made by Honeywell, the opinions in the Ankstitus Affidavit concerning the cause of the contamination on the Site are not conclusory. The basis for Honeywell's objection appears to be that Mr. Ankstitus spends five pages discussing the Site's history, which Honeywell argues is not enough pages. Honeywell does not state, however, how many pages would be "enough." Contrary to Honeywell's arguments, there is sufficient basis in the Ankstitus Affidavit to support his opinions. At the very least, the Ankstitus Affidavit creates an issue of fact as to the cause of the contamination at the Site. This issue of fact precludes the finding requested by Honeywell in its Motion for Partial Summary Judgment that Honeywell cannot be responsible for 100% of the remediation costs.

Mr. Ankstitus reaches his opinion that the contamination was caused by Honeywell and/or its predecessors based on numerous facts outlined in the Ankstitus Affidavit. (Ankstitus Affidavit, ¶¶25-52). Mr. Ankstitus also performed a number of investigations of the Site and prepared a number of reports. (Ankstitus Affidavit, ¶20). Based on the facts outlined in the Ankstitus Affidavit and the investigations, Mr. Ankstitus identifies the types of contamination on the Site (Ankstitus Affidavit, ¶¶29-32) and opines that such contamination was likely caused by the operations of Honeywell and/or its predecessors. (Ankstitus Affidavit, ¶¶36-38).

Nor is there any requirement that Mr. Ankstitus opine that the contaminants on the Site were the result of the operations of Honeywell and/or its predecessors with 100% certainty as suggested by Honeywell. (Honeywell Motion to Strike, p. 5). The case law cited by Honeywell

for this proposition is inapposite. Burke v. Town of Walpole, 405 F.3d 66 (1st Cir. 2005) did not address the degree of certitude required of an expert opinion in a civil case. Instead, Burke dealt with whether or not an opinion by an expert witness concerning the identity of the criminal defendant based on bite marks was sufficient to meet the probably cause standard to obtain an arrest warrant. Id. at 91. To the extent that Burke is applicable to the case at bar, its definition of a "reasonable degree of scientific certainty" is consistent with the Ankstitus Affidavit. The Court in Burke defined "reasonable degree of scientific certainty" as "a standard requiring a showing that the injury was more likely than not caused by a particular stimulus, based on the general consensus of recognized [scientific] thought." Id. quoting Black's Law Dictionary 1294 (8th ed. 2004). The opinion contained in the Ankstitus Affidavit that Honeywell's predecessors caused the contamination on the Site meets this standard.[1]

Honeywell also attacks the Ankstitus Affidavit on the grounds that Honeywell believes that Mr. Ankstitus did not consider evidence that is allegedly contrary to his opinion that Honeywell's predecessors caused the contamination on the Site. (Honeywell Motion to Strike p. 6). This argument is also without any basis. While Honeywell purports to provide other possible causes for the contamination at the Site, this merely creates an issue of fact as to whether the operations of Honeywell and/or its predecessors caused all of the contamination at the Site. Moreover, there is no evidence that Mr. Ankstitus did not consider the alleged evidence put forth by Honeywell. Mr. Ankstitus does opine, however, that the contaminants cited by Honeywell as possibly coming from other sources – heavy metals such as chromium and lead and tar – came

---

[1] Honeywell also intimates, without any analysis, that the Ankstitus Affidavit does not meet the standards set out by Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), and its progeny. Daubert indicated that the following determinations would be relevant to whether expert testimony is reliable: (1) whether the theory or technique had been subjected to peer review and publication; (2) whether the technique had a known or potential rate of error; (3) whether there are standards controlling the operation of the technique; and (4) whether the theory or technique had general acceptance in the relevant scientific community. Id. at 593-595. Honeywell has not even attempted to establish that the Ankstitus Affidavit does not meet the test for reliability set forth in Daubert.

4

from the operations of Honeywell and its processors, rather than the sources cited by Honeywell. The basis for these opinions are outlined in the Ankstitus Affidavit. While Honeywell's expert may disagree[2] with the opinions reached by Mr. Ankstitus, this is not a basis for this Court to strike the Ankstitus Affidavit.

Finally, Honeywell argues that the opinion in the Ankstitus Affidavit that Honeywell's predecessors caused the contamination on the Site is irrelevant because Well-Com is allegedly not entitled to 100% of its response costs. (Honeywell Motion to Strike, p. 7). This argument is without any merit. As Well-Com sets out in its Cross-Motion for Summary Judgment and supporting papers, it is entitled to recover 100% of its response costs from Honeywell under a strict liability theory.

**C.    AFFIDAVIT OF MATTHEW M. O'LEARY.**

Honeywell seeks to strike all of the exhibits attached to the Affidavit of Matthew M. O'Leary ("O'Leary Affidavit") arguing that each of the exhibits must be struck for one of the following reasons: (1) lack of authentication; and, (2) inadmissible hearsay. As described in detail below, however, each of the documents attached to the O'Leary Affidavit are admissible documents that this Court may consider on summary judgment.

"[A]uthentication requires nothing more than proof that a document or thing is what it purports to be and, even though the Federal Rules of Evidence spell out various options, the rules also stress that these options are not exclusive and the central condition can be proved in any way that makes sense in the circumstances." Yongo v. INS, 355 F.3d 27, 31 (1st Cir. 2004); Fed. R. Evid. 901(a). "The rule does not erect a particularly high hurdle." United States v. Ortiz, 966 F.2d 707, 716 (1st Cir. 1992). The burden of authentication "does not require the proponent of

---

[2]   Well-Com has filed a motion to strike the affidavit submitted by Honeywell's expert on the grounds that the statements made therein are speculative and are based on facts not in the record.

5

the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood." United States v. Holmquist, 36 F.3d 154, 168 (1st Cir. 1994).

Hearsay is a statement, other than one made by the declarant while testifying at trial that is offered in evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). The Federal Rules of Evidence provide a number of exceptions to the hearsay rule, including an exception for: (1) records of documents reflecting an interest in property; (2) statements in documents over twenty years old; and, (3) statements in commercial publications generally used and relied upon by the public. Fed. R. Evid. 803.

**Exhibit 1**

Exhibit 1 to the O'Leary Affidavit contains a copy of Complaint filed in Allied Signal, Inc., et al. v. Abeille-Paix Reassurances, Superior Court of New Jersey, Morris County, Docket No. MRSL 226-88 and a copy of an exhibit to that Complaint. Honeywell claims that this document is not admissible because it is allegedly not properly authenticated and is inadmissible hearsay. Notably, Honeywell does not argue that this document is not a true and accurate copy of the original document filed with the Superior Court of New Jersey.

As stated in paragraph 1 of the O'Leary Affidavit, all of the exhibits attached thereto, including Exhibits 1, were obtained from public records. Well-Com conducted extensive investigation into the history of the Site. As part of that investigation, Well-Com obtained a number of documents, including Exhibits 1. Exhibit 1 contains the stamp of the Clerk of the Morris County Superior Court and is signed by the attorney of record for Honeywell's predecessor, Allied-Signal, Inc. ("Allied"). Honeywell has put forth no evidence that Exhibit 1

6

is not authentic. As a result, the record before this Court establishes that Exhibit 1 is authentic. Fed. R. Evid. 901(b)(7).

Nor does Exhibit 1 contain inadmissible hearsay as argued by Honeywell. Well-Com has not offered Exhibit 1 for the truth of any of the statements contained in that document. Instead, Well-Com has offered Exhibit 1 to establish the existence of litigation brought by Honeywell's predecessor to recover against its insurance companies for contamination at the Site. Fed. R. Evid. 801(c). Moreover, to the extent that Exhibit 1 may be offered to establish the truth of any of the statements contained therein, the statements in the Complaint were made by an agent of Allied, Honeywell's predecessor, and are, therefore, admissions of a party opponent. Fed. R. Evid. 801(d)(2).

**Exhibit 2.**

Exhibit 2A consists of a page from Honeywell's website, which Honeywell claims is not properly authenticated and is inadmissible hearsay. Exhibit 2A, however, was printed off of Honeywell's own website. Honeywell does <u>not</u> argue that it is not an accurate copy of its website. As the O'Leary Affidavit establishes in Paragraph 1, this document was printed off of the world wide web. As a result, the record before this Court establishes that Exhibit 2A is authentic. Exhibit 2A also does not contain inadmissible hearsay. Because it was printed off of Honeywell's own website, it is an admission of a party opponent. Fed. R. Evid. 801(d)(2).

Exhibit 2B is a copy of Honeywell's Form 8-K filed with the Securities and Exchange Commission ("SEC"). This document was obtained from public records by Well-Com. Honeywell does <u>not</u> argue that it is not what it purports to be. The document is signed by Honeywell's Senior Vice President and General Counsel. As a result, the record before this Court establishes that it is authentic. With regard to the argument that Mr. O'Leary lacks

7

personal knowledge to state that Exhibit 2B is a true and accurate copy of the original, Mr. O'Leary copied the documents and is, therefore, in a position to state that the copy submitted to the Court is a true and accurate copy of the document obtained from the SEC. With regard to the argument that Exhibit 2B is inadmissible hearsay, Honeywell filed this document with the SEC and Honeywell's Senior Vice President and General Counsel signed it. It is, therefore, an admission of a party opponent. Fed. R. Evid. 801(d)(2).

### Exhibit 3

Exhibit 3 contains a series of plans showing the Site that were obtained from public records. Honeywell does not argue that they are not what they purport to be. The record before this Court establishes that Exhibit they are authentic. Fed. R. Evid. 901(b)(7). With regard to hearsay, the documents contained in Exhibit 3 contain dates establishing that they were created in the late 1800's and, as a result, they are ancient documents, which are exempted from the definition of hearsay. Fed. R. Evid. 803(16).

### Exhibits 4 and 15

Exhibits 4 and 15 are excerpts from the Polk Directories concerning the Site. Honeywell claims that these documents are not properly authenticated. Honeywell, however, does not state why it believes that these documents are not properly authenticated and does not even argue that these documents not true and accurate copies of the Polk Directories. With regard to hearsay, the Polk Directories are directories generally used and relied upon by the public and, as a result, are exempted from the definition of hearsay. Fed. R. Evid. 803(17).

### Exhibit 5

Exhibit 5 is a copy of a license issued by the Commonwealth of Massachusetts to Richards and Company, Incorporated to "fill solid in and over two tidal creeks connecting with

Malden River in the city of Malden." This is a document that was obtained from public records. Fed. R. Evid. 901(b)(7). Honeywell does not state why it is not properly authenticated and does not even argue that it is not what it purports to be. With regard to hearsay, Well-Com has not offered it as proof of any statements contained therein. Instead, Well-Com has offered the document merely as evidence that Richards and Company, Inc. was a former owner of the Site. Moreover, the document is dated in 1925 and is, therefore, an ancient document, which is exempted from the definition of hearsay. Fed. R. Evid. 803(16).

### Exhibit 6 – 11, 18

Exhibits 6-11 and 18 are all documents that were obtained from public records. Fed. R. Evid. 901(b)(7). Honeywell does not state why they believe the documents are not properly authenticated and does not even argue that they are not what they purport to be. With regard to hearsay, all of these documents are, on their face, over twenty years old and are, therefore, ancient documents, which are exempted from the definition of hearsay. Fed. R. Evid. 803(16).

### Exhibit 12 - 14

Exhibits 12 – 13 contain various documents concerning the transfer of the Site to and from different entities. These documents were all obtained from public records. Fed. R. Evid. 901(b)(7). Honeywell does not state why they believe the documents are not properly authenticated and does not even argue that they are not what they purport to be. With regard to hearsay, these documents are all documents that establish or affect an interest in property and, as a result, are exempt from the definition of hearsay. Fed. R. Evid. 803(14).

### Exhibit 16

Exhibit 16 contains a number of articles from newspapers that were obtained from newspaper archives, which are public record. Fed. R. Evid. 901(7). Honeywell does not state

9

why they believe the documents are not properly authenticated and does not even argue that they are not what they purport to be. Honeywell also does not describe why their foundation is unreliable. Moreover, newspaper articles are self-authenticating. Fed. R. Evid. 902(6). With regard to hearsay, all of these documents are, on their face, over twenty years old and are, therefore, ancient documents, which are exempted from the definition of hearsay. Fed. R. Evid. 803(16).

**Exhibit 17**

Exhibit 17 contains a number of aerial photographs of the Site. Honeywell does not state why they believe the documents are not properly authenticated and does not even argue that they are not what they purport to be. With regard to hearsay, the documents are merely photographs and do not contain any "statements." Fed. R. Evid. 801(a).

## II. CONCLUSION

For the foregoing reasons, Well-Com requests that this Court DENY Honeywell's Motion to Strike.

### REQUEST FOR HEARING

Well-Com hereby requests a hearing on its motion in the event it is deemed necessary by the Court.

>Well-Com Associates, L.P.
>By its attorneys,
>
>/s/ A. Neil Hartzell
>A. Neil Hartzell (BBO #544752)
>Patricia B. Gary (BBO #554731)
>Matthew M. O'Leary (BBO #652033)
>Donovan Hatem LLP
>Two Seaport Lane
>Boston, MA 02110
>(617) 406-4500

Dated: March 31, 2006
00987713.DOC

## CERTIFICATE OF SERVICE

    I, Patricia B. Gary, hereby certify that on this 31st day of March, 2006, a copy of the foregoing was served on the attorney for the defendant by electronic means pursuant to Local Rule 5.4(c).

                                        /s/ Patricia B. Gary
                                        Patricia B. Gary