UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WELL-COM ASSOCIATES, L.P., ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Docket No. 05-10056-JLT |
| ) | |
| HONEYWELL INTERNATIONAL, INC., ) | |
| Defendant. ) | |

**REPLY OF PLAINTIFF WELL-COM TO DEFENDANT HONEYWELL'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff Well-Com Associates, L.P. ("Well-Com") respectfully submits this Reply to the Memorandum of Defendant Honeywell International, Inc. ("Honeywell") in Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment.

**I.    WELL-COM IS ENTITLED TO RECOVER ITS RESPONSE COSTS AS A MATTER OF LAW, UNDER CERCLA, 42 USC § 9607**

**It Is Undisputed That Well-Com Has Satisfied All Of The Elements Of A Cost Recovery Action Under 42 U.S.C. § 9607(a)(4)(B)**

The First Circuit has instructed that liability for cost recovery actions brought against PRPs under section 107(a) is joint and several and that under section 107, plaintiffs may "recoup the whole of their expenditures." United Techs. Corp. v. Browning-Ferris Indus., Inc., 33 F.3d 96, 100 (1st Cir. 1994). In its Opposition Brief, Honeywell has attempted to avoid the plain mandate that section 107 plaintiffs may "recoup the whole of their expenditures," and has attempted to raise a factual issue which could avoid summary judgment, by arguing that it is not responsible for 100% of the remediation

1

costs in this case, because its predecessors (Barrett and Allied) did not cause 100% of the contamination at the property located at 378 Commercial Street, Malden, Massachusetts (the "Site"). Honeywell has submitted the Declaration of Kerry Tull, an environmental consultant, for the purpose of opining that "it is not reasonable to rule out other sources of the Site contamination, including tenants of Well-Com." [1]See Opposition, p 4. Thus, in its Opposition Memorandum and affidavits, Honeywell attempts to point the finger at other entities (including Well-Com) despite the overwhelming and undisputed fact that its own predecessors operated a coal tar facility on the Site for over thirty years, and despite the undisputed evidence that its predecessor, Allied, received a Notice of Responsibility ("NOR") with regard to the contamination at the Site in December 1986. See SOF, ¶ 41 (DEQE issued a Notice of Responsibility to Allied Corporation on December 17, 1986). Honeywell's Opposition Memorandum states, in pertinent part:

> At the heart of Well-Com's cross-motion are two questions of fact:
>
> (1) whether Honeywell's predecessors caused all of the contamination at the Site, and
>
> (2) whether Well-Com's response costs to date have been reasonable.

See Honeywell's Opposition Memorandum, p. 3.

As a preliminary matter, it is important to point out that Honeywell has not submitted one shred of evidence, by affidavit or otherwise, that Well-Com or its tenants are a source of any of the contamination at the site. There is nothing factual in the record that would provide any basis to imply that Well-Com created any of the pollution at the site. Honeywell merely states, without any factual support, that "it is not reasonable to

---

[1] Well-Com has moved to strike the Tull "Declaration" for a number of reasons, including that there is no factual basis for the above-quoted statements.

2

rule out other sources of the Site contamination, including tenants of Well-Com." Opposition Memorandum, p. 4. In fact, Honeywell is well aware that Well-Com is a non-polluting PRP, whose responsibility derives solely from its present ownership of the site.

Moreover, Honeywell points to nothing in 42 U.S.C. § 9607(a)(4)(B), or for that matter, *in any case construing § 9707(a)(4)(B),* whether from the First Circuit, or any other jurisdiction, which suggests that as an element of a cost recovery action, a § 107 plaintiff has the burden of demonstrating that a polluting PRP created 100% of the contamination at the Site. The Supreme Court has stated unequivocally that "section 107 unquestionably provides a cause of action for private parties to seek recovery of cleanup costs." Key Tronic Corp. v. United States, 511 U.S. 809, 817 (1984). The First Circuit has instructed that liability for cost recovery actions brought against PRPs under section 107(a) is joint and several, and that plaintiffs may "recoup the whole of their expenditures." United Techs. Corp. v. Browning-Ferris Indus., Inc., 33 F.3d at 100. Case law from all over the country, including the First Circuit, is unanimous in holding that a section 107 defendant may seek apportionment only where there is a reasonable basis for determining the contribution of each cause to a single harm. See, e.g., O'Neil v. Picillo , 883 F.2d 176, 178-179 (1st Cir. 1989)("damages should be apportioned only if the defendant can demonstrate that the harm is divisible"); New Castle County v. Halliburton Nus Corp., 111 F.3d 1116, 1121 (3d Cir. 1997)("[i]t is defendant's burden to prove that the harm is divisible and that the damages are capable of some reasonable apportionment"); United States v. Colorado & Eastern R.R. Co., 50 F.3d 1530, 1535 (10th Cir. 1995)("[d]ue to the impossibility of determining the amount of environmental harm

caused by each party where wastes of varying and unknown degrees of toxicity and migratory potential have mixed, the courts have been reluctant to apportion costs between PRPs, and hence have adopted the rule that damages should be apportioned only if the defendant can demonstrate that the harm is divisible"). In <u>Centerior Serv. Co. v. Gen. Elec. Co.</u>, 153 F.3d 344, 348 (6th Cir. 1998), the Sixth Circuit explained as follows:

> Liability for cost recovery actions brought against PRPs under § 107(a) is strict. *United States v. Eastern Railroad Co.,* 50 F.3d 1530, 1535 (10th Cir. 1995); *Farmland Indus. v. Morrison Quirk Grain Corp.,* 987 F.2d 1335, 1339 (8th Cir. 1993). Liability is also generally joint and several on any defendant PRP regardless of fault. *Colorado & Eastern Railroad*, 50 F.3d at 1535; *Newcastle County v. Halliburton Nus Corp.*, 111 F.3d 1116, 1121 (3d Cir. 1997). After bringing a cost recovery action, plaintiffs must prove only that each defendant is a 'liable' party and not that defendants are responsible for a certain share of the plaintiff's response costs. Only if a defendant can affirmatively demonstrate that the harm is divisible, will damages from a cost recovery action brought pursuant to § 107(a) be apportioned according to fault. *Colorado & Eastern Railroad*, 50 F.3d at 1535; *see also New Castle*, 111 F.3d at 1121, n. 4; *O'Neil v. Picillo*, 883 F.2d 176, 178 (1st Cir. 1989). Given the nature of hazardous waste disposal, rarely if ever will a PRP be able to demonstrate the divisibility of harm, and therefore joint and several liability is the norm. *See Colorado & Eastern Railroad*, 50 F.3d at 1535.

<u>Centerior Serv. Co. v. Gen. Elec. Co.</u>, 153 F.3d at 348. In the present case, the exception to pure joint and several liability is not applicable, because Honeywell does not contend (nor has it presented any evidence) that the harm at the site is divisible. Thus, this Court should hold that, as a matter of law, Well-Com is not required to prove that Honeywell is responsible for a certain share of the response costs, but is entitled, as a matter of law, to recover all of its response costs.

Allowing a PRP who initiates a cleanup to bring a cost recovery action advances two of CERCLA's most important underlying policies: "(1) encouraging prompt and voluntary cleanup of hazardous wastes, and (2) imposing the costs of cleanup on

4

responsible parties." Crofton Ventures Ltd. P'ship v. G&H P'ship., 1997 U.S. Dist. Lexis 8067, * 12 (1997). As explained by the district court in Pinal Creek Group v. Newmont Mining Corp., 926 F.Supp. 1400 (D. Ariz. 1996), allowing a PRP who initiates a cleanup to bring a cost recovery action under section 107 furthers both of these goals. The Pinal Creek court noted five incentives, as follows:

1. shifting the difficult burden of proof concerning the allocation of cleanup costs from plaintiffs to defendants;

2. relieving plaintiffs of the risk of being held liable for 'orphan shares' (cleanup costs that would otherwise be charged to insolvent or absent parties);

3. minimizing plaintiffs' transaction costs involved in tracking down and suing every PRP;

4. limiting the range of available defenses to those enumerated in § 107(b); and

5. giving parties who initiate cleanups the benefit of a longer statute of limitations

Pinal Creek Group v. Newmont Mining Corp., 926 F.Supp. 1400 (D. Ariz. 1996). The CERCLA statutory scheme is intended to provide incentives for early cleanup. The incentives include that defendant PRPs who initiate a cleanup are relieved of the risk of being held liable for costs attributable to "orphan shares" – those shares attributable to PRPs who either are insolvent or cannot be located or identified. In this way, section 107 shifts the burden of proof from plaintiffs to defendants to prove that the harm at the site is divisible. See, e.g., Crofton Ventures Ltd. P'ship v. G&H P'ship, 1997 U.S. Dist. Lexis 8067, * 12 – 13 (1997) (prohibiting PRPs from bringing cost recovery actions under § 107 'would turn the CERCLA scheme on its head' because parties who initiate a clean up would be forced to locate all other PRPs, prove that the harm is divisible, and carry the burden of proof in a contribution action); Adhesives Research, Inc. v. American Inks &

Coatings, 931 F.Supp. 1231, 1244 (1996)(if cost recovery under § 107 were unavailable, "plaintiffs who made an affirmative effort to clean the environment would be 'rewarded' by being forced to carry the burden of proof in a contribution action to show that they incurred more than their fair share of the cleanup costs. . . [t]o successfully prosecute such a contribution action, the plaintiff would necessarily incur large transaction costs in locating all other PRPs and proving that harm to the site was divisible").  In this case, the Massachusetts Department of Environmental Quality Engineering ("DEQE") issued a Notice of Responsibility ("NOR") to Honeywell's predecessor, Allied Corporation, in December 1986, nearly twenty years ago. See SOF, ¶ 41.  Despite receiving the NOR, neither Allied nor Honeywell has ever initiated a cleanup of the Site.  Instead, Honeywell has denied and attempted to avoid its legal responsibility for over twenty years, and has forced Well-Com, a non-polluting PRP, to prosecute the present lawsuit in order to recover its necessary costs of response.

Having failed in its attempts to get Honeywell to clean up the site, Well-Com commenced the present lawsuit over a year ago.  Honeywell moved for summary judgment on January 18, 2006, on the grounds, *inter alia*, that Well-Com is not entitled to bring a cost recovery action under section 107 because it cannot prove that (1) it is an "innocent" landowner[2] entitled to invoke an affirmative defense under 42 USC § 9607(b) and (2) 100% of the contamination at the site is attributable to the activities of Honeywell's predecessors.  Throughout this litigation, Honeywell has adamantly refused to acknowledge that the elements of a cost recovery action, as set forth by the First

---

[2] Honeywell continues to claim, without any factual support, that Well-Com acquired the property at a discount.  Honeywell states in its Opposition Memorandum, at p. 1, that "Well-Com does not deny that it acquired the site at a discount."  However, Well-Com did not purchase the site at a discount.  See Supplemental Affidavit of John M. Pereira, ¶ 9.

6

Circuit in In re Hemingway Transp., Inc., 993 F.2d 915, 931 (1st Cir. 1993), do not require proof of either "innocent" landowner status, or proof that defendant is responsible for a certain percentage of the harm at a site.   In its summary judgment papers, Honeywell argues that Well-Com's only avenue of relief under CERCLA must be through a contribution action under section 113. Opposition Memorandum, p. 6 – 9 ("the court of appeals of every federal circuit has [held] . . . that a claim by one PRP against another PRP must necessarily be one for contribution controlled by Section 113(f), not Section 107(a)").   This argument is contrary to the law under CERCLA and should be disregarded by the court.[3]

Honeywell's summary judgment pleadings ignore the Supreme Court's decision in Cooper Indus., Inc. v. Aviall Serv., Inc., 543 U.S. 157 (2004) and rely instead upon many of the pre-Cooper decisions of the Courts of Appeals that were effectively overruled by the Supreme Court's recent Cooper Industries decision.   See Opposition Brief, p. 6 (quoting commentator M.S. Dennison at 80 Am. Jr. Proof of Facts 3d 281, §

---

[3] In its Opposition Memorandum, at p. 1, n.1, Honeywell states that "Well-Com does not mention the cases cited at page 14 of Honeywell's memorandum," or the "words of Justice Alito in AL Tech Specialty Steel Corp. v. Allegheny Intern. Credit Corp., 104 F.3d 601, 607 (3d Cir. 1997)." But, Well-Com has addressed the "innocent" landowner argument advanced by Honeywell. The AL Tech Specialty Steel Corp. case is a 12-page bankruptcy decision in which the Third Circuit reviewed the decision of a district court affirming a bankruptcy court's disallowance of a claim against the debtor in the debtor's bankruptcy proceeding. The Court reversed the order of the district court as it related to the debtor's equitable share of a creditor's federal environmental liabilities, on the grounds that there was insufficient evidence before the court to support the finding on the discount issue. Id. The case is not particularly helpful to Honeywell. As a preliminary matter, it is not clear from the case whether the creditor (AL Tech) had asserted a cost recovery claim against the debtor in the bankruptcy proceeding, or whether the creditor's claim was brought under § 113(f). The case says simply that "[a]fter Allegheny International filed a bankruptcy petition in 1988, Al Tech filed a timely proof of claim, alleging that Allegheny International was liable for a share of the incurred, contingent, and unliquidated response costs required to remediate the contamination." Id. The case goes on to mention that "[a]fter estimating AL Tech's response costs to total $12,792,000, the bankruptcy court proceeded to determine Allegheny International's equitable share of those costs pursuant to § 113(f) of CERCLA, which authorizes a court to allocate response costs among responsible parties "using such equitable factors as [it] determines are appropriate." Id. at 606 citing 42 U.S.C. § 9613(f). Well-Com does not disagree that in a Section 113 contribution proceeding, the court may allocate response costs by using any equitable factors it deems appropriate. However, the case is not on point with the facts in this case, because this is not a bankruptcy proceeding, and is instead a cost recovery proceeding under Section 9607. Further, Honeywell has not asserted a counterclaim for contribution.

7

9). Compare with Consol. Edison Co.v. UGI Util., Inc., 423 F.3d 90, 100 (2d Cir. 2005) (holding that the Supreme Court's decision effectively overrules former decisions of the Second Circuit and other courts of appeals).   Honeywell's reluctance to provide an analysis based upon Cooper Industries is not surprising, because that decision unequivocally eliminates Honeywell's argument that Well-Com, a party that has never been sued under CERCLA, must utilize section 113 to recoup its cleanup costs.[4] Additionally, the Cooper Industries decision fatally undermines Honeywell's argument that Well-Com must prove its "innocence" before it can bring a cost recovery suit under section 107.  See Consol. Edison Co.v. UGI Util., Inc., 423 F.3d at 100 (Supreme Court's "holding compels us to conclude that it no longer makes sense to . . . read into this language a distinction between so-called 'innocent' parties and parties that, if sued, would be held liable under section 107(a)").

In Cooper Industries, the Supreme Court clarified that a party such as Well-Com, which has never been sued under CERCLA by either the government, or another party, is not a liable party  under CERCLA and, therefore, cannot seek contribution under section 113(f)(1).  The Supreme Court held, specifically, as follows:

> Section 113(f)(1) does not authorize Aviall's suit.  The first sentence, the enabling clause that establishes the right of contribution provides:  'Any person may seek contribution . . . during or following any civil action under section 9606 of this title or under section 9607(a) of this title,' 42 USC § 9613(f)(1) [42 USCS § 9613(f)(1)] (emphasis added)

Cooper Indus., Inc.  v.  Aviall Serv., Inc., 543 U.S. at 165 – 166.   Thus, unless and until Well-Com is sued under CERCLA § 106 or § 107,  either by  the government or a private party,  it cannot be "liable" under CERCLA, for the purposes of assigning responsibility

---

[4] Honeywell's initial summary judgment memorandum focused on the "innocent landowner" argument, but Honeywell's Opposition papers retreat from that stance – Honeywell now contends that Well-Com is relegated to bringing an action under section 113 because it is a "liable" party.

for response action costs, and it is not entitled to seek contribution under section 113(f)(1), as a matter of law. Id. Moreover, as the Supreme Court pointed out in dicta, this conclusion follows not simply from section 113(f)(1) itself, but also from the whole of section 113. Id. at 167. As the Supreme Court explained: "§ 113 provides two express avenues for contribution: § 113(f)(1)("during or following" specified civil actions) and § 113(f)(3)(B)(after an administrative or judicially approved settlement that *resolves liability* to the United States or a State)" (emphasis supplied). Accordingly, a plaintiff cannot bring an action for contribution under section 113 unless or until a PRP has been sued under CERCLA, see § 113(f)(1), or unless a PRP has entered into a judicially approved settlement "that *resolves liability* to the United States or a State," see § 113(f)(3)(B). None of the above conditions exist in the present matter and, therefore, Well-Com is prohibited from bringing an action for contribution as a matter of law.

Likewise, this court should reject Honeywell's charge that Well-Com is a "liable" party for the purpose of assigning responsibility for response action costs and for this reason cannot invoke the cost recovery provisions of section 107. The words and structure of CERCLA illustrate exactly the opposite; i.e, the words and structure of CERCLA distinguish between parties like Well-Com, who are simply "potentially responsible parties" (PRPs), and parties who have actually been sued under CERCLA. For example, section 113(f)(1) states that "[a]ny person may seek contribution from any other person who is *liable* or *potentially liable* under section 107(a) . . ." 42 USC § 9613(f)(1). Thus, the words of CERCLA itself draw an explicit distinction between PRPs such as Well-Com who are only "potentially" liable, and parties who are "actually" liable because they have been sued under the statute. Section 113(g) which sets forth the

9

applicable statute of limitations and/or the time period in which an action for cost recovery or contribution may be brought, further illustrates that there is a distinction between a "liable" party and a "PRP" with regard to limitations periods. Under section 113(g)(3), a "liable" party must seek an action for contribution within 3 years after it has resolved its liability to the United States or a State. Specifically, Section 113(g)(3) provides that:

> (3) Contribution. No action for contribution <u>for any response costs or damages</u> may be commenced more than 3 years after --
> (A) the date of judgment in any action under this Act for recovery of such costs or damages, or
> (B) the date of an administrative order under section 122(g) [42 USCS § 9622(g)](relating to de minimis settlements) or 122(h)[42 USCS § 9622(h)] (relating to cost recovery settlements) or *entry of a judicially approved settlement with respect to such costs* or damages

42 USC § 113(g)(3). The First Circuit has also explained this distinction between PRPs and liable parties by referring to the structure of CERCLA and, in particular, the statute of limitations found in § 113(g)(3). See <u>United Techs. Corp. v. Browning-Ferris Indus., Inc.</u>, 33 F.3d 96, 100 (1st Cir. 1994). Highlighting the distinction between "liable" parties who must bring an action for contribution within a three year limitations period, and PRPs who are entitled to the six-year statute of limitations found in section 9613(g)(2), pertaining to cost recovery actions under § 9607, the First Circuit has explained:

> [I]t is sensible to assume that Congress intended <u>only innocent parties – not parties who were themselves liable</u> – to be permitted to recoup the whole of their expenditures. By contrast, 42 U.S.C. § 9613(g)(3) allows a '<u>non-innocent</u>' party (i.e., a party who himself is liable) only to seek recoupment of that portion of his expenditures which exceeds his pro rata share of the overall liability – in other words, to seek contribution rather than complete indemnity.

<u>United Techs. Corp. v. Browning-Ferris Indus., Inc.</u>, 33 F.3d at 100. In short, the First

Circuit has defined a "liable" party as one who is entitled to bring an action for contribution, and is therefore subject to the § 9613(g)(3) statute of limitations. In the present case, there is no real dispute that Well-Com is not entitled to bring an action for contribution under section 113(f)(1) because it has not been sued under CERCLA. See Cooper Indus., Inc. v. Aviall Serv., Inc., 543 U.S. at 165 – 166. Additionally, Well-Com is not entitled to bring an action for contribution under section 113(f)(3)(B) because it has not "resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement." Therefore, despite Honeywell's bold assertions to the contrary, Well-Com is not a "liable" party within the meaning of the First Circuit's definition of that term.

The First Circuit has recognized on more than one occasion that section 107(a)(4)(B) "provides a private right of action" for CERCLA response costs, which is available "'to any person' who incurs necessary response costs, presumably without regard to whether the plaintiff is an EPA target; i.e., a PRP or 'covered person' under section 9607(a)." In re Hemingway Transp., Inc., 993 F.2d 915, 931 (1993); see also Dedham Water Co. v. Cumberland Farms Dairy, Inc., 889 F.2d 1146, 1150 (1st Cir. 1989). The First Circuit stated in In re Hemingway Transport that "section 9607(a)(4)(B) simply requires the private-action plaintiff to prove that . . .

> (1) a release of a 'hazardous subtance' from the subject 'facility' occurred, or is threatened; (2) the defendant comes within any of four categories of 'covered persons,' which include current owners or operators of the facility, see 42 U.S.C. § 9601(9)(B), as well as the owners and operators of the facility at the time the contamination occurred (3) the release or threatened release has caused (or may cause) the claimant to incur response costs; and (4) the response costs are 'necessary' and 'consistent with the national contingency plan.'

In re Hemingway Transp., Inc., 993 F.2d at 931. The First Circuit explained that "in the event the private-action plaintiff itself is potentially 'liable' to the EPA for response costs, and thus is akin to a joint 'tortfeasor,' section 9607(a)(4)(B) serves as the pre-enforcement analog to the 'impleader' contribution action permitted under section 9613(f). Id. (emphasis supplied). Thus, the First Circuit has recognized that a plaintiff such as Well-Com, who is only "potentially" liable to the EPA, but has not been sued under CERCLA, has a private right of action under 9607(a)(4)(B) for response costs.

Honeywell does not appear to dispute that Well-Com has established the first three elements set forth above, but Honeywell's Opposition Memorandum seems to suggest that Well-Com cannot establish that its response costs have been "necessary and consistent with the national contingency plan." Specifically, Honeywell has stated that: "[a]t the heart of Well-Com's cross-motion are two questions of fact: whether Honeywell's predecessors caused all of the contamination at the Site, and whether Well-Com's response costs to date have been reasonable." Opposition Memorandum, p. 3. (As discussed above, the question whether Honeywell's predecessors caused all of the contamination at the site is not relevant to a cost recovery action under section 107). There is no genuine issue moreover, that Well-Com's response costs to date have been reasonable, necessary and consistent with the national contingency plan. Well-Com's expert, Robert J. Ankstitus, has set forth his opinion, in a Supplemental Affidavit of Robert J. Ankstitus, that Well-Com's response costs to date have been consistent with the National Contingency Plan. See Supplemental Affidavit of Robert J. Ankstitus, ¶ 23; see also Supplemental Affidavit of John M. Pereira, ¶ 13. Honeywell has not argued, or provided any evidence, that the response costs incurred by

12

Well-Com were not consistent with the NCP.  Accordingly, this court should rule that Well-Com is entitled to summary judgment as a matter of law. [5]

---

[5]  In the present case, Honeywell's predecessor, Allied, received a NOR almost twenty years ago, see SOF, ¶ 41, but Honeywell has avoided its responsibility, and has refused for almost twenty years to initiate a clean up of the site.   Ultimately, in January 2005, Well-Com commenced this lawsuit against Honeywell to recover its response costs in connection with the assessment, containment and removal of the hazardous materials at the site.  Honeywell has continued to adamantly deny that Well-Com can recover its costs under Section 9607, but has never exercised its right to bring a counterclaim for contribution against Well-Com under Section 113.  CERCLA explicitly allows a section 9607 defendant to bring a counterclaim for contribution, and a counterclaim for contribution is necessary to Honeywell's defense against Well-Com's Section 9607 claim.  See, e.g., Consolidated Edison Co. v. UGI Utilities, 423 F.3d 80 (2d Cir. 2005)(no bar precluding a person sued under section 107(a) from bringing a counterclaim under section 113(f)(1); Crofton Ventures Ltd. P'ship v. G&H P'ship, 1997 U.S. Dist. Lexis 8067, * 15 ("defendants may bring counterclaims for contribution"); Adhesives Research, Inc. v. American Inks & Coatings Corp., 931 F. Supp. 1231, 1244 (E.D. PA 1996)(defendants may assert counterclaims).  Honeywell has had an adequate time to bring a counterclaim under Section 113 if it wished to bring one.  Instead, **Honeywell *itself* initiated this summary judgment proceeding** by filing a motion for summary judgment, and asking the court to dismiss Well-Com's cause of action for cost recovery under Section 107.  Well-Com has expended an enormous amount of time and money to prosecute this lawsuit, and to defend against Honeywell's motion for summary judgment.   Under these circumstances, the district court should grant summary judgment in favor of Well-Com on the issue of liability, and rule that Honeywell is not entitled to avoid full responsibility for Well-Com's response costs because Honeywell never brought a counterclaim for contribution in this case.  Compare Mystic Landing, LLC v. Pharmacia Corp., 2006 U.S. Dist. Lexis 8122, *  (2006)(third-party defendant did not avail itself of the "opportunity or the obligation to bring compulsory counterclaims" under G.L. c. 21E).

The case of Int'l Clinical Labs, Inc. v. Stevens, 1990 U.S. Dist. Lexis 3685, * 10 (E.D. NY 1990) is instructive with regard to a Section 9607 defendant's obligation to bring a compulsory counterclaim for contribution.   In Int'l Clinical Labs, Inc. v. Stevens, the district court held that a plaintiff was entitled to recover its expenditures of $164,221.13 in connection with the initial investigation and a DEC-mandated Phase II study.  Id.  More importantly, the court also held that "defendants are not entitled to contribution [ ] for the costs of response," and explained that contribution was not available because **"[n]one of the defendants has asserted a counterclaim against [plaintiff] for response costs; and since such a counterclaim would have been compulsory . . . it has been waived."** Id.   And finally, the court held that the plaintiff was entitled to a declaratory judgment that it could recover all of its future response costs.  Specifically, the court ruled that "defendants are jointly and severally liable for "all other necessary response costs incurred or to be incurred by [plaintiff] consistent with the national contingency plan." Id.  Here, the court should rule that Well-Com is entitled to summary judgment on its claim for cost recovery under 42 U.S.C. § 9607(a)(4)(B) because Well-Com has satisfied all of the elements of such a cause of action .  Specifically, the court should rule that Well-Com may recover all of its expenditures to date, as set forth in the Supplemental Affidavit of John M. Pereira, ¶ 13 (from 1999 through January 2006, Well-Com has paid Rizzo $231, 823.50 for services related to 378 Commercial Street, including actual remediation at the site, and preparation/submission of MCP documents), and that Well-Com is entitled to a declaratory judgment that it may recover all of its future response costs.  Finally, the court should hold that Honeywell is not entitled to contribution, because it has never brought a counterclaim for contribution against Well-Com.  See  Int'l Clinical Labs, Inc. v. Stevens, 1990 U.S. Dist. Lexis 3685, * 10 – 11 (defendants not entitled to contribution for the costs of response because "none of defendants has asserted a counterclaim against [plaintiff] for response costs; and since such a counterclaim would have been compulsory . . . it has been waived"); Compare Mystic Landing, LLC v. Pharmacia Corp., 2006 U.S. Dist Lexis 8122, * (2006)(third-party defendant did not avail itself of the "opportunity or obligation to bring compulsory counterclaims" in an action for contribution under G.L. c. 21E).

13

## II. WELL-COM IS ENTITLED TO RECOVER ITS RESPONSE COSTS, AS A MATTER OF LAW, UNDER G.L. c. 21E

Honeywell argues in its Opposition Memorandum that Well-Com is not entitled to invoke the cost recovery provisions of Section 4 of G.L.c. 21E. However, the clear and unambiguous language of the statute says that Well-Com is entitled to reimbursement. Section 4 provides that "[a]ny person who undertakes a necessary and appropriate response action regarding the release or threat of release of oil or hazardous material shall be entitled to reimbursement from any other person liable for such release or threat of release for the reasonable costs of such response action." G.L. c. 21E, §4 (emphasis supplied). [6] In 1992, the Legislature amended Section 4 to provide that "[i]f two or more persons *are liable pursuant to section five* for such release or threat of release, *each shall be liable to the others* for their equitable share of the costs of such response action." G.L. c. 21E, §4. In construing the meaning of Section 4, Honeywell ignores Section 5, as it is written, and in particular, attempts to delete Section 5(b), in its entirety, from the text of G.L. c. 21E.

Section 5(a) sets out five categories of potentially responsible parties under G.L. c. 21E, and provides that any person or entity which falls within one of the five categories "shall be liable without regard to fault . . . (i) to the commonwealth for all costs of assessment, containment and removal . . . (ii) the commonwealth for all damages for . . . loss of natural resources . . . (iii) to any person for damage to his real or personal property incurred . . . as a result of such release . . . and (iv) to any person for any liability

---

[6] There is no question that Well-Com has satisfied the notification requirements, set forth in Section 4A, which are a pre-requisite to bringing a cost recovery action under Section 4, for reimbursement. Honeywell has not disputed that its predecessors, Barrett and Allied, caused releases of hazardous materials at the site, which caused contamination at the site.

14

that another person is relieve of pursuant to the fourth paragraph of section four." The last sentence of Section 5(a) states that "[e]xcept as provided in paragraphs (b) and (k) such liability shall be joint and several." Thus, Section 5(a) makes clear that joint and several liability is the norm, but that Section 5(b) provides an exception to joint and several liability. Section 5(b) provides that :

> No person who is liable solely pursuant to clause (1) of paragraph (a) and who did not own or operate the site at the time of the release or threat of release in question and did not cause or contribute to such release or threat of release shall be liable to any person who is liable pursuant to clauses (2), (3), (4), or (5) of said paragraph, except that such person liable solely pursuant to clause (1) of paragraph (a) shall be liable to the commonwealth as set forth in paragraph (d).

G.L. c. 21E, § 5(b). Determining liability for contamination is the focus of G.L. c. 21E, § 5(b). The language and structure of G.L. c. 21E, § 5(b) provides an exception to liability for a PRP whose liability derives solely because of its status as an owner of a polluted site. Applying the plain mandate of section 5(b) to the present case, Well-Com cannot be liable to Honeywell if Well-Com "did not cause or contribute" to the release of hazardous materials at the site. To date, Honeywell has produced no factual evidence that could support a finding (or raise a genuine issue of fact) that Well-Com has caused or contributed to the release at the site. To the contrary, it is undisputed that the contamination at the Site was first revealed in reports prepared by TRC Environmental Consultants and Norwood Engineering in 1985 and 1986, more than twenty years ago, shortly before the DEQE issued a Notice of Responsibility ("NOR") to Honeywell's predecessor, Allied Corporation, in December 1986. See SOF, ¶ 41. Notwithstanding Honeywell's vague and conclusory suggestion that "Well-Com and its predecessors . . . [may] have exacerbated the Site conditions by their inaction," see Opposition

Memorandum at p. 5, there is no proof in the record, i.e., there is nothing in the record, aside from these vague and conclusory allegations of expected proof, which suggests that the harm at the site has, in fact, been "exacerbated" in any way by Well-Com or its tenants. Conclusory statements, without more, are legally insufficient to withstand a motion for summary judgment. Carroll v. Xerox Corp., 294 F.3d 231, 236-237 (1st Cir. 2002) ("neither conclusory allegations [nor] improbable inferences" are sufficient to defeat summary judgment); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)(evidence that is "merely colorable or is not significantly probative" cannot deter summary judgment). Accordingly, Well-Com requests that this Court rule, as a matter of law that Well-Com cannot be liable to Honeywell because there is no evidence whatsoever that Well-Com has caused or contributed to the harm at the site. See Affidavit of Robert J. Ankstitus, ¶ 24.

      Both the language and the structure of Chapter 21E evince a Legislative intent that if Well-Com "is liable solely pursuant to clause (1) or paragraph (a) and did not own or operate the site at the time of the release . . . in question and did not cause or contribute to such release," its liability is not joint and several, except as to the Commonwealth. See G.L. c. 21E, § 5 ("[e]xcept as provided in paragraphs (b) . . . such liability shall be joint and several"). By virtue of § 5(b), Well-Com is not liable to Honeywell and, for this reason, it cannot be "liable to [Honeywell]" within the meaning of the phrase, "each shall be liable to the others," in G.L. c. 21E, § 4. In short, if Well-Com is not liable to Honeywell under § 5(b), then Well-Com cannot be liable to Honeywell for an "equitable share of the costs of [a] response action." G.L. c. 21E, § 4. By contrast, it is undisputed that Honeywell's liability is joint and several under Section 5(a) and, for this reason,

16

Well-Com may recover its full damages for the full cost of a reasonable and appropriate response action. See Commonwealth v. Boston Edison, 44 Mass. 324, 328 (2005)("[w]here joint and several liability applies, plaintiffs may recover their full damages from any liable party").

Finally, it is undisputed that Honeywell has not brought a claim and/or counterclaim against Well-Com for "contribution, reimbursement or equitable share" within the meaning of G.L. c. 21E, § 4.[7]  See G.L. c. 21E, § 4 ("[a]ll claims and actions for contribution, reimbursement or equitable share by persons other than the commonwealth pursuant to this paragraph . . . shall be subject to, and brought in accordance with, the procedures set forth in section four A"). Accordingly, this court

---

[7]     Honeywell states that "try as it might, Well-Com fails to escape its owner/operator liability based on third party/innocent landowner defense." Opposition Memorandum, p. 13, n. 7. Honeywell seems to be asking the court to hold, erroneously, that the affirmative defenses set forth in c. 21E, § 5(c) would provide Well-Com with a complete defense to liability (if Well-Com was sued under Chapter 21E) because the affirmative defenses under CERCLA provide a complete defense to liability if a party is sued under CERCLA. See Opposition Memorandum, p. 13, n. 7.  However, even though the affirmative defenses set forth in CERCLA, § 9607(b)(3) "would afford a complete defense to CERCLA liability" if a party was sued under CERCLA, see In re Hemingway Transport, Inc., 993 F.2d 915, 932 (1st Cir. 1993), the same is not true under c. 21E. Chapter 21E. Section 5(c) begins with the phrase, "Subject to the limitation provided in paragraph (d) . . ." See  G.L. c. 21E, § 5(c). Section 5(d), in turn, provides that "any person whose property has been the site of a release of hazardous material for which the department has incurred costs for assessment, containment or removal . . . shall be liable to the commonwealth only to the extent of the value of the property . . ." Thus, the affirmative defenses under c. 21E do not always provide a landowner with a "complete defense" to c. 21E liability. Even if a landowner can prove that it is entitled to assert an affirmative defense under Section 5(c), it is still liable to the Commonwealth under Section 5(d), if the Commonwealth is forced to perform a cleanup of the Site. Nassr v. Commonwealth, 394 Mass 767, 774 (1985)("even if the owner successfully argues this defense . . . he is liable . . . to the extent of the value of the property . . . following the Commonwealth's cleanup").

        It is Well-Com's position that it would be able to invoke the protection of Section 5(c) and assert such an affirmative defense against Honeywell, in addition to the exception to liability afforded by Section 5(b). See Plaintiff's Memorandum In Support Of Its Cross-Motion For Partial Summary Judgment, pp. 35 – 39. However, as noted above, Well-Com should not need to prove that it is entitled to assert an exception to liability against Honeywell pursuant to Section 5(b), or assert an affirmative defense pursuant to Section 5(c), in order to recover under the cost recovery provisions of c.21E, § 4, because Honeywell never brought a counterclaim for "contribution or equitable share" within the meaning of c.21E. See c. 21E, § 4A(d) ("[i]n any civil action in which a . . . counterclaim . . .is filed pursuant to section four of this section, the court shall award contribution . . .or equitable share . . .). Honeywell has itself initiated a summary judgment proceeding in this case. As discussed, *supra*, any such counterclaim would have been compulsory, and has now been waived. See Mystic Landing, LLC v. Pharmacia Corp., 2006 U.S. Dist. Lexis 8122, * (2006)(third party defendant in an action under G.L. c. 21E failed to "avail[] itself of the opportunity or the obligation to bring compulsory counterclaims").

17

should hold that, as a matter of law, Well-Com may invoke the cost recovery provisions of G.L. c. 21E and is entitled to  "reimbursement from any other person [i.e., Honeywell] liable for such release or threat of release for the reasonable costs of such response action."  G.L. c. 21E, §4.

### III.     CONCLUSION

For all of the above reasons, Well-Com respectfully requests that the Court deny Honeywell's motion for partial summary judgment.  Additionally, Well-Com requests that the court enter partial summary judgment in its favor, and against Honeywell, and rule that (1) Well-Com is entitled to recover all of its costs for assessment, containment or removal of hazardous materials pursuant to G.L. c. 21E, §4,  §4A and §5, and is entitled to  a declaratory judgment that Honeywell is liable for future response costs;  (2) Well-Com is entitled to recover its attorney's fees under G.L. c. 21E, § 15; and  (3) Well-Com is entitled under 42 U.S.C. § 107(a)(4)(B) to recover all of  the costs it has incurred relating to the assessment of hazardous wastes at the site, and is entitled to recover all future remediation costs incurred in  a clean up of the site.

    Respectfully submitted,

    Well-Com Associates, L.P.
    By its attorneys,

    /s/ A. Neil Hartzell
    A. Neil Hartzell (BBO # 544752)
    Patricia B. Gary (BBO #554731)
    Donovan Hatem LLP
    World Trade Center East
    Two Seaport Lane
    Boston, MA 02210
    617-406-4500

Dated March 31, 2006

**CERTIFICATE OF SERVICE**

    I, Patricia B. Gary, hereby certify that on this 31st day of March, 2006, a copy of the foregoing was served on the attorney for the defendant by electronic means pursuant to Local Rule 5.2(b).

                                          /s/Patricia B. Gary
                                          Patricia B. Gary