UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WELL-COM ASSOCIATES, L.P., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HONEYWELL INTERNATIONAL, INC., )<br>)<br>Defendant. )<br>) | Docket Number 05-10056-JLT |

SUPPLEMENTAL **AFFIDAVIT OF ROBERT J. ANKSTITUS**

I, Robert J. Ankstitus, having personal knowledge of the facts herein stated, under oath depose and say as follows:

1. I am a Senior Project Manager at Rizzo Associates, Inc. ("Rizzo"), a Tetra Tech Company.

2. I have been employed at Rizzo since 1992, and worked in the industry since 1975, including experience with two regulatory agencies and a remediation contractor.

3. I have been retained by Well-Com Associates, L.P. ("Well-Com") as a Licensed Site Professional in connection with property located at 378 Commercial Street, Malden, Massachusetts ("the Site").

4. I received my Bachelor of Science in Civil Engineering from the Worcester Polytechnic Institute in 1975.

5. I received my Master of Science in Civil/Environmental Engineering from the Worcester Polytechnic Institute in 1983.

6. I have attended the following training sessions:

   a. USEPA Incident Response Training, Vanderbilt University
   b. Hazardous Chemical Safety, J.T. Baker

      c.      Personnel Protection and Safety, USEPA
      d.      Hazardous Material Incident Operations, USEPA
      e.      Sampling at Hazardous Materials Incidents, USEPA
      f.      Removal Cost Management Systems, USEPA
      g.      Hazard Evaluation and Environmental Assessment, USEPA
      h.      Media for Managers, USEPA
      i.      Emergency Treatment of Injuries, U.S. Army
      j.      LSPA and DEP courses for MCP/LSP certification
      k.      OSHA 40-Hour Health and Safety Training
      l.      OSHA 8-Hour Refresher Training
      m.      OSHA Competent Persons Training

7. I am a Registered Professional Engineer in Massachusetts since 1990.

8. I am a Licensed Site Professional in Massachusetts since 1993.

9. I am a Certified Hazardous Material Manager, Master Level.

10. I am a Licensed Industrial Wastewater Treatment Plan Operator, Grade 2.

11. In my present position with Rizzo, I am responsible for managing site investigations and remediation projects for public and private clients.

12. My duties include project scheduling, estimating, contract administration, contract compliance, contract negotiations, client relations, regulatory compliance, legal review, expert witness testimony, design, construction, site supervision, and site engineering.

13. My project experience includes execution and review of geotechnical studies, facility assessments, federal regulation, and Massachusetts Contingency Plan (MCP) compliance, treatment system design and construction, remediation of multimedia contaminants, underground storage tank (UST) replacement and remediation programs, transportation and disposal of hazardous wastes, site investigations, and proposal preparation.

14. My project experience includes National Contingency Plan (NCP) compliance. I possess more than eleven years of experience with the Environmental Protection Agency as an On-Scene Coordinator ("OSC"). As an OSC, I implemented the NCP for both oil and hazardous substance releases.

15. My project experience includes site investigations; landfill remediation; landfill stabilization; leachate treatment; provision of alternative water supplies; lagoon stabilization and closure; demolition of contaminated structures; asbestos abatement; emergency response cleanup for oil and chemical spills; cleanup actions at chemical and disposal site fires; decontamination of industrial facilities and residential homes; remediation of releases of oils, hazardous materials; hazardous wastes and mixed wastes to soil, surfacewater, and groundwater; on-site treatment and remediation of oil and chemical wastes; response actions for releases to the air; UST decontamination and removals; aboveground storage tank (AST) decontamination and demolition; abandoned drum and buried drum site remediation; and pesticide use and pesticide burial site cleanups.

16. My experience with technologies at remediation sites includes soil vapor extraction; air stripping; excavation and disposal; on-site soil stabilization/encapsulation; bioventing; biotreatment; pump and treat systems; carbon treatment systems; ion exchange; on-site detoxification; asphalt batching; on-site incineration; air injection systems; air sparging; water curtains; slurry walls; liner systems; landfill gas venting and treatment; sedimentation; flocculation; precipitation; metals sequestering; UV/oxidation; thermal oxidation; chemical oxidation; on-site thermal desorption; phase separation; and dewatering.

17. I possess more than twenty years of emergency response project experience at hundreds of spill response incidents with local emergency officials, responsibly parties, cleanup contractors, and regulatory agencies.

18. I have handled multimedia response incidents for petroleum, PCBs, hazardous materials, and hazardous wastes.

19. I have conducted training in first responder courses for federal Superfund Amendments and Reauthorization Act (SARA) Title III presentations to private industries and public agencies.

20. Prior to joining Rizzo, I served as Senior Project Manager for Clean Harbors of Kingston, Inc. from 1998 to 1992, a Civil/Environmental Engineer, On-Scene Coordinator/Project Manager from 1977 to 1988 at the U.S. Environmental Protection Agency Prior, and as Field and Construction Engineer for Alaskan Resource Sciences Corporation from 1975 to 1977.

21. As a Licensed Site Professional at the Site for Well-Com, I prepared and implemented the following documents:

       a. Phase I Initial Site Investigation of August 18, 2000
       b. Tier Classification Submittal of August 18, 2000
       c. Phase II Comprehensive Site Assessment of August 6, 2004
       d. Phase III Remedial Action Alternatives Report of August 27, 2004
       e. Phase IV Remedy Implementation Plan of April 29, 2005
       f. Release Abatement Measure Plan of May 24, 2005
       g. Tier II Extension of September 1, 2005

22. Rizzo submitted the above documents to the Department of Environmental Protection on behalf of Well-Com. By virtue of these response actions, Well-Com has exercised due care with respect to the oil or hazardous material on the Site. Well-Com has complied with the notification provisions of M.G.L. c. 21E, §7.

23. The expenses and actions of Well-Com to date were necessary, appropriate and consistent with the Massachusetts Contingency Plan within the meaning of M.G.L. c. 21E, §4 and the National Contingency Plan within the meaning of 42 U.S.C. §9607(a)(4)(B).

24. The anticipated actions and costs incurred by Well-Com in assessing and cleaning up the Site are necessary, appropriate and consistent with the Massachusetts Contingency Plan

within the meaning of M.G.L. c. 21E, §4 and the National Contingency Plan within the meaning of 42 U.S.C. §9607(a)(4)(B).

25. The Massachusetts Contingency Plan promotes a response action selection process that protects human health and the environment through the utilization of permanent solutions and alternative treatment or resource recovery technologies to the maximum extent possible.

26. The National Contingency Plan promotes response actions that assess, contain, and mitigate all releases, and that such response actions are reasonably calculated to be successful and not excessive given the projected uses for the Site.

27. I prepared and Rizzo submitted a Phase I Initial Site Assessment ("Phase I") to the Department of Environmental Protection on behalf of Well-Com on August 18, 2000, attached hereto as Exhibit A. The Phase I was filed pursuant to the Massachusetts Contingency Plan, 310 CMR 40.0480 and the National Contingency Plan, 40 CFR 300.300. The Phase I facilitated the evaluation and Tier Classification of the Site. The Phase I consisted of the advancement of 15 soil borings and the installation of three groundwater monitoring wells at the Site. Soil samples were collected during the advancement of soil borings for field screening and/or laboratory analysis. The Phase I identified stratified layers of coal tar, and elevated concentrations of lead, arsenic, polynuclear aromatic hydrocarbon and extractable petroleum hydrocarbon compounds, cadmium and cyanide.

28. I prepared and Rizzo submitted a Phase II Comprehensive Site Assessment ("Phase II") to the Department of Environmental Protection on behalf of Well-Com on August 6, 2004, attached hereto as Exhibit B. The Phase II was filed pursuant to the Massachusetts Contingency Plan, 310 CMR 40.0830 and the National Contingency Plan, 40 CFR 300.305. The Phase II facilitated the development of the scope of work at the Site, documented

information obtained as a result of Comprehensive Site Assessment ("CSA") activities, and supported conclusions and Opinions based upon the finding of the CSA.  The Phase II consisted of the advancement of 89 soil borings and the installation of seven groundwater monitoring wells at the Site, and the sampling of soil, sediment, groundwater and surface water.  The investigation included a subsurface investigation, a groundwater elevation survey, an assessment of Little Creek and the Malden River, and a review of existing data to facilitate the preparation of a risk characterization of the Site.  Phase II identified elevated concentrations of Site Contaminants of Concern ("COCs") in soil and groundwater within six distinct source areas at the Site and within the sediments of Little Creek.

29.     I prepared and Rizzo submitted a Phase III Remedial Action Alternatives Report ("Phase III") to the Department of Environmental Protection on behalf of Well-Com on August 27, 2004, attached hereto as Exhibit C.  The Phase III was filed pursuant to the Massachusetts Contingency Plan, 310 CMR 40.0850 and the National Contingency Plan, 40 CFR 300.310.  The Phase III assessed the existence of technically and financially feasible remedial alternatives that could be implemented at the Site to achieve either a Permanent Solution or Temporary Solution at the Site under the Massachusetts Contingency Plan.  The assessment identified ten remedial alternatives for soil and six remedial alternatives for groundwater that were evaluated during initial screening to determine which were potentially suitable for implementation at the Site. Following the initial screening, two alternatives with the potential to mitigate or eliminate the risks associated with soil contamination at the Site and four alternatives with the potential to mitigate or eliminate the risks associated with groundwater contamination at the Site were selected for a detailed evaluation of their suitability for implementation at the Site.

30.     Following the completion of Phase III, the Comprehensive Response Action ("CRA") selected to be implemented at the Site was the implementation of the source area soil

excavation and off-site disposal alternative with spot groundwater dewatering and treatment using one or more of the following: natural attenuation, pump and treat granular activated carbon, in-situ chemical oxidation, and enhanced bioremediation.

31.   I prepared and Rizzo submitted a Phase IV Remedy Implementation Plan ("Phase IV") to the Department of Environmental Protection on behalf of Well-Com on April 29, 2005, attached hereto as Exhibit D.  The Phase IV was filed pursuant to the Massachusetts Contingency Plan, 310 CMR 40.0870 and the National Contingency Plan, 40 CFR 300.315. The Phase IV contained requirements for the design, construction, and implementation of the CRA alternative selected as a result of the Phase III evaluation.  In accordance with the Phase IV, the goal of CRA implementation was to remediate coal tar related COCs in Site soils, Little Creek sediments, and groundwater in order to achieve a level of "No Significant Risk" and achieve a Response Action Outcome ("RAO") under 310 CMR 40.1000.

32.   I prepared and Rizzo submitted a Release Abatement Measure ("RAM") Plan to the Department of Environmental Protection on behalf of Well-Com on May 24, 2005, attached hereto as Exhibit E.  The RAM was filed pursuant to the Massachusetts Contingency Plan, 310 CMR 40.0440.  The goal of the RAM was to stabilize and/or remove quantities of coal tar and coal tar products that recently surfaced onto the asphalt pavement surface at the Site in order to control and/or minimize the potential risk of harm to human health and the environment caused by the presence of accessible coal tar and coal tar product materials at the Site.  The new presence of coal tar and coal tar products upon the asphalt pavement at the Site has resulted in a potential risk to human health and the environment due to the potential for direct contact with coal tar products.  In order to reduce the risk and to minimize the effects of the coal tar and coal tar product materials on the asphalt pavement surface, RAM activities have been undertaken and will be maintained at the Site until the CRA under the Phase IV can be implemented.

33. Currently, I am preparing a revised Phase III Remedial Action Alternatives Report ("Revised Phase III") and revised Phase IV Remedy Implementation Plan ("Revised Phase IV"). The Revised Phase III and Revised Phase IV will be filed pursuant to the Massachusetts Contingency Plan, 310 CMR 40.0850 and 310 CMR 40.0870, and the National Contingency Plan, 40 CFR 300.310 and 40 CFR 300.315. Since filing the Phase III and Phase IV, a RAM has been initiated at the Site to control the recent coal tar "boils" onto the surface of the asphalt pavement at the Site. In addition, since the originally contemplated Phase IV work will require a time period of years to complete, a Temporary Solution is proposed at this time to make progress toward Massachusetts Contingency Plan compliance in the short term and to eliminate the need for the RAM, pending the final outcome of discussions with Honeywell International, Inc./AlliedSignal, Inc.

34. Response actions to date and going forward in the future have been and are reasonably calculated to be successful. Such calculations are the result of assessment work and remediation design at the Site.

35. The Phase II and the pre-Phase IV assessment, coupled with the information gathered during the Phase I Initial Site Assessment and other relevant Site-specific information, have been used as the basis for the design of the selected CRA for the Site.

36. The Phase IV and the Revised Phase IV present relevant Site information, engineering concepts and design criteria used for the design, construction and implementation of the CRA at the Site.

37. Response actions to date and going forward in the future are reasonable given the projected uses for the Site.

38. The Site is presently used for commercial and industrial purposes. However, there is the potential for other future use of the Site. Well-Com intends to implement a

response action or actions that will achieve a level of "No Significant Risk" and achieve a RAO under the Massachusetts Contingency Plan that allows for the present commercial and industrial use, as well as potential future, reasonable alternative uses. Such a solution is reasonable given the suitability of such uses on the Site.

39. The opinions contained herein are based on my experience, education and training described above as well as my personal observations and services provided to Well-Com in responding to the environmental contamination at the Site.

Signed under the pains and penalties of perjury this 31st day of March, 2006.

/s/ Robert J. Ankstitus  
**ROBERT J. ANKSTITUS**

CERTIFICATE OF SERVICE

I, Patricia B. Gary, Esq., hereby certify that on this 31st day of March, 2006, a copy of the foregoing was served on the attorney for the defendant by electronic means pursuant to Local Rule 5.2(b).

/s/ Patricia B. Gary  
Patricia B. Gary / BBO No. 554731

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.