UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

_____
                                    )
WELL-COM ASSOCIATES, L.P.,          )
                                    )
                Plaintiff,          )
                                    )
v.                                  )        Docket No. 05-10056-JLT
                                    )
HONEYWELL INTERNATIONAL INC.,       )
                                    )
                Defendant.          )
_____)

### MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE PORTIONS OF THE DECLARATION OF KERRY TULL

Defendant, Honeywell International Inc. ("Honeywell"), respectfully submits this

opposition to Plaintiff's motion to strike portions of the declaration of Kerry Tull.

### Preliminary Statement

Well-Com's motion to strike "portions" of Mr. Tull's declaration asserts grounds that

apply equally to its own expert's declaration.  Therefore, if Well-Com's motion is granted,

Honeywell's should be as well.  If this were to occur, Well-Com would have absolutely no

admissible evidence on two key issues of fact that its motion for partial summary judgment

raises – whether Honeywell caused all of the contamination at the Site and whether Well-Com's

response costs are reasonable.[1]

But Well-Com's motion should not be granted.  Mr. Tull's opinions are admissible.

---

[1]    To prevail on its cross-motion for summary judgment that Honeywell is liable to Well-Com for 100% of the costs to clean up the Site, Well-Com must establish, as a matter of law, that (1) Honeywell's predecessors caused all of the contamination at the Site, (2) Well-Com's response costs are reasonable, and (3) it is irrelevant under CERCLA and Chapter 21E that Well-Com acquired the Site with knowledge that it was contaminated and at a discount.

**Factual Background**

Well-Com contends that Honeywell's predecessors caused all of the contamination at the Site. In support of this contention, Well-Com submitted an affidavit of Robert J. Ankstitus, dated, February 13, 2006 (Docket # 25). (The affidavit of Mr. Ankstitus that Well-Com filed on March 31, 2006 (Docket # 45) does not address the source(s) of the Site contamination.)

As noted in the memorandum in support of Honeywell's motion to strike, Mr. Ankstitus's opinions reflect extensive uncertainty. (Docket # 37 at 4.) He does say that there are multiple areas of contamination and multiple contaminants at the Site, and he seems to suggest that all of the contamination is the result of (1) the placement of fill on the Site by Honeywell's predecessors, and (2) spilling, leaking, and dumping of contaminants by Honeywell's predecessors. None of the documents on which Mr. Ankstitus relies and to which he refers are attached to his declaration. His assertions concerning Honeywell's predecessors are based, apparently, on records that are attached to the affidavit of Matthew O'Leary, one of Well-Com's lawyers (Docket # 28).

The documents attached to Mr. O'Leary's declaration include hearsay reports of, as Mr. Ankstitus's declaration indicates, only two isolated discharges of contaminants at the Site. (Ankstitus Affidavit, ¶¶ 34, 51; O'Leary Affidavit, Ex. 16.) Also included in the documents attached to Mr. O'Leary's declaration are (a) a permit to Richards & Company (a firm that owned the Site before Honeywell's predecessors took title) allowing Richards & Company to fill a large portion of the Site, (b) plans and other documents that indicate that Richards Company did at least some of the filling, and (c) a permit to the Malden Redevelopment Authority that indicates that it engaged in activity at the Site that appears to have involved some filling. (Docket # 28, Exs. 5 (at plan in particular), 7 (at plan in particular), 11 (at plan in particular).)

Because Mr. Ankstitus has no personal knowledge of what occurred at the Site and the hearsay records Well-Com has submitted refer to only two isolated spills, Mr. Ankstitus must be inferring from current and past Site conditions (the spatial distribution of contaminants and plans) and his understanding of the operations of Honeywell's predecessors at the Site (the basis for which he does not disclose) that additional spilling, leaking, and dumping occurred during the ownership of the Site by Honeywell's predecessors and that no spilling, leaking, and dumping occurred during other periods. Likewise, he must be assuming that no party other than Honeywell did any filling of the Site. He does not mention the operations of Richards & Company (a refiner of non-ferrous metals) or of the Webster tannery, Bell Rock Leather & Tanning Company, or Eastern Metal & Refinishing, all of which Well-Com admits previously owned the Site. (Docket # 24, ¶ 3.) He has excluded their operations as sources of some of the contamination, but he does not explain why he has done so. He does not explain why he has not made with respect to Richards & Company, or with respect to the two tanneries and Eastern Metal, the same inference concerning spilling, leaking, and dumping that he has made with respect to Honeywell's predecessors. And he does not account for the fact that a prior environmental firm found tannery wastes buried at the Site.

Against this backdrop, Mr. Tull prepared his declaration. He gathered technical reports and other documents concerning the Site history and operations (including Well-Com's Rule 56.1 statement (Docket # 24), Mr. O'Leary's affidavit (and attachments), Rizzo reports, and technical reports by two other environmental firms), which he identified in his declaration. He used these documents to assess Well-Com's contention that Honeywell's predecessors caused all of the contamination at the Site. The documents on which Mr. Tull relied are documents of the sort on which experts in his field reasonably rely. (Supplemental Declaration of Kerry Tull, ¶¶

1-2.)  Mr. Tull opined that for various reasons, it is not reasonable to conclude that Honeywell's

predecessors caused all of the contamination at the Site.[2]

**Argument**

**THE PORTIONS OF THE TULL DECLARATION THAT
WELL-COM SEEKS TO STRIKE ARE ADMISSIBLE**

**A.    Two Objections That Are
        Raised Repeatedly Are Not Valid**

Well-Com asks the Court to strike 20 separate paragraphs of Mr. Tull's declaration.  The

20 paragraphs contain every one of Mr. Tull's opinions.  Well-Com addresses each paragraph

separately, but with a near litany of objections.  Two objections that are raised repeatedly are

addressed once in order to conserve space.

Well-Com repeatedly objects on the basis that Mr. Tull does not have "personal

knowledge" of a subject.  There is no requirement that an expert have personal knowledge of a

subject as to which he or she opines.  Fed. R. Evid. 703.

Well-Com repeatedly objects on the basis that the facts or data on which Mr. Tull relies

are "not in the record."  There is no requirement that the facts or data on which an expert relies

be in the record.  Fed. R. Evid. 703.  Evidence outside the "record," even inadmissible facts and

data, may form the basis for an opinion provided they are of the sort on which experts in the field

reasonably rely.  Id.  In his supplemental declaration, Mr. Tull explains that the facts and data on

which he relied are indeed of the sort on which experts in his field reasonably rely.

---

[2]      Mr. Tull's declaration apparently hit home, for Well-Com says in its opposition to Honeywell's motion to strike:  **"While Honeywell purports to provide other possible causes for the contamination at the Site, this merely creates an issue of fact as to whether the operations of Honeywell and/or its predecessors caused all of the contamination at the Site."**  Plaintiff's Opposition to Defendant's Motion to Strike Portions of Affidavits Submitted in Support of Plaintiff's Motion for Summary Judgment and in Opposition to Defendant's Motion for Partial Summary Judgment (Docket # 41) at 4 (emphasis added).

**B.**    **Well-Com's Other Objection Are Baseless**

For ease of reference, Honeywell follows Well-Com's paragraph-by-paragraph approach. To conserve space, where Well-Com has objected to a particular paragraph based on one of the grounds discussed above, the following appears:  "See Section A."

**Paragraph 5 Is Admissible**

Paragraph 5 of Mr. Tull's declaration is:

> 5.    The Site was used for storage, operations, and/or disposal by a tannery.  Wastes that may only be attributed to a tannery (e.g. animal hides, etc.) were encountered on Site.  The contaminants associated with tannery wastes include many of the contaminants detected on Site including, but not limited to, heavy metals, such as chromium and lead.

Even though it admits that two tanneries owned (Docket # 24, ¶ 3.) the Site, Well-Com contends that this paragraph should be stricken because "there is nothing in the record indicating that any tannery used the Site for storage or disposal."  Well-Com's objection is not entirely clear.  If the objection is that there is no evidence that a tannery or tanneries used the site for disposal, etc., the argument is just wrong.  As Mr. Tull points out, Norwood Engineering reported that it had dug test pits at the site and unearthed tannery wastes.  (If Well-Com's position is that this is insufficient evidence of disposal, then it is hoist by its own petard, for Mr. Ankstitus relies on the same sort of evidence, if not less.)  If the objection is that the Norwood report was not submitted by Mr. Tull, it fails for two reasons.  First, the report is attached to the accompanying Supplemental Declaration of Kerry Tull.  Second, See Section A.  (Further, if this is Well-Com's objection, it once again is hoist by its own petard, for Mr. Ankstitus did not submit the documents on which he had relied.)

**Paragraph 6 Is Admissible**

Paragraph 6 of Mr. Tull's declaration is:

6.    The Site was developed using substantial fill from the Malden River. In 1925 license was granted to Richards and Co. by the City of Malden for approximately 8,110 cubic yards of fill to be placed on this Site.

See Section A. Well-Com also argues that the fact that a license was issued to Richards & Company to conduct filling is irrelevant "absence (sic) some evidence that the filling actually took place." First, there is evidence that filling by predecessors to Barrett took place. (See supra.) Second, this is the stuff of cross-examination, not a basis for striking an opinion.

**Paragraph 7 Is Admissible**

Paragraph 7 of Mr. Tull's declaration is:

7.    During the late 1960s and the 1970s a number of commercial businesses operated on the Site after Allied left. Because of the nature of these operations, typical disposal practices, and the chemicals and materials routinely used (including vehicle paints, solvents, petroleum products and chemical coatings) these operations may have contributed to a variety of Site related contamination.

See Section A. Well-Com ignores paragraph 28 of the Tull declaration (paragraph 7 being part of Mr. Tull's summary), wherein Mr. Tull explains that the source of his information concerning the identities of the businesses is a report by Rizzo, Mr. Anskstitus's firm. Well-Com's final objection is that Mr. Tull's opinion is speculative. Mr. Tull does no more speculating than Mr. Ankstitus. Mr. Ankstitus is armed with only two hearsay reports of isolated spills of coal tar products only (not metals) during Barrett's ownership. Nevertheless, he opines that the widespread, multi-contaminant contamination (including metals) at the Site is all due to Barrett. How does he do this? He infers from the nature of operations, as does Mr. Tull, and from the location and lay-out of operations, as does Mr. Tull. In other words, if Mr. Tull's opinion is out, so is Mr. Ankstitus's. Well-Com cannot have it both ways.

**Paragraph 8 Is Admissible**

Paragraph 8 of Mr. Tull's declaration is:

8.      Above-ground storage tanks were demolished on-Site circa 1965, leaving the bottoms of these structures in place.  Buildings were constructed on top of these tank bottoms after Allied vacated the Site post 1965.  There was no documentation encountered during this review regarding the condition of these tanks or the contents left in place.  Placing buildings on tank bottoms with chemicals/tar left in place may have caused a release that would not have occurred if these tanks and the bottoms had been properly removed.  This is an area that warrants further investigation.

See Section A.  The argument that the opinion should be stricken as speculative is incorrect.  Mr. Tull merely says that there is evidence that the tank bottoms may not have been removed and that the area warrants further investigation, which will be done.

**Paragraph 11 Is Admissible**

Paragraph 11 of Mr. Tull's declaration is:

11.      *All of these entities may have used the Site for disposal. Specifically, the presence of metals on the site would more likely be attributed to the tannery and metals businesses than the Barrett/Allied products.  Norwood engineering conducted test pits that encountered the remains of animals from tannery processes.*

See Section A.  Further, Mr. Tull notes in the immediately preceding paragraph of his declaration (which Well-Com does not quote) that the source for his observation that two tanneries and two metals companies operated at or adjacent to the Site is Well-Com's own Rule 56.1 statement.  Indeed, the Rule 56.1 statement admits that before Honeywell's predecessors operated at the site, these four firms used the Site.  (Docket # 24, ¶ 3.)  It is not speculative to opine, based on known operations (two tanneries and two metals firms) and Site conditions (metals and contaminants associated with tannery waste), that the known operators more likely than not contributed to the contamination, particularly where Mr. Ankstitus essentially does the same thing (with, of course, a different result) and tannery wastes were found buried at the Site.

**Paragraph 13 Is Admissible**

Paragraph 13 of Mr. Tull's declaration is:

>    **13.**    *Clearly the tannery had open availability to the Site for any uses including disposal.*

See Section A.

**Paragraphs 14 and 15 Are Admissible**

Paragraphs 14 and 15 of Mr. Tull's declaration are:

>    14.    Norwood Report - Identified findings of leather scraps, hide, and cloth in the test pits.

>    **15.**    *Although no structures may have existed related to tannery operations, these types of waste products clearly indicate a tannery was using the Site for dumping and disposal of waste materials.*

See Section A.

**Paragraph 17 Is Admissible**

Paragraph 17 of Mr. Tull's declaration is:

>    **17.**    *Fill from the Malden River would contain an amalgam of wastes disposed from over 50 years of industrial uses upstream from the Site.*

See Section A.

**Paragraph 21 Is Admissible**

Paragraph 21 of Mr. Tull's declaration is:

>    **21.**    *This drainage may have been the recipient of a variety of wastes from the Malden DPW.*

See Section A.

**Paragraph 23 Is Admissible**

Paragraph 23 of Mr. Tull's declaration is:

>    **23.**    *This clearly indicates that Rizzo recognized that materials, not directly related to Barrett, were of a different origin and brought onto the Site.*

Paragraph 23 must be read in conjunction with paragraph 22 of Mr. Tull's declaration. When this is done, it becomes clear that Mr. Tull offers a fair reading of Rizzo's report in concluding that some of the contamination on Site is not a by-product of Barrett's coal tar operations.

**Paragraphs 24 And 25 Are Is Admissible**

Paragraphs 24 and 25 of Mr. Tull's declaration are:

24.    DRT – Mr. Timmons indicated during his deposition that he was told by a realtor for the Malden Site that the above ground storage tanks would be cut off and the remaining contents left in place and built upon.

25.    *The apparent reasoning for this approach was the tank bottoms were on a number of pilings that could be utilized by the new proposed buildings. This type of opportunistic building practice may have resulted in the releases of tank bottoms and the exacerbation of conditions that already existed.*

See Section A and response to paragraph 8.

**Paragraph 29 Is Admissible**

Paragraph 29 of Mr. Tull's declaration is:

29.    *Any of these businesses would be suspect for disposal practices that would adversely impact the Site.*

See response to paragraph 7.

**Paragraph 31 Is Admissible**

Paragraph 31 of Mr. Tull's declaration is:

31.    *Barrett was not engaged in coal gasification. Therefore, contamination attributed to coal gasification would have originated at another source and have been brought onto the Site.*

See Section A. Well-Com also objects that Mr. Tull does not reveal the basis for his assertion that Barrett was not engaged in coal gasification. (Nor does Mr. Anskstitus reveal the basis for his assertion that Barrett operated a coal tar facility at the Site.) This is, once again, the

stuff of cross-examination, not a basis to exclude. The fact is, as Well-Com (or at least Rizzo)

knows, that Barrett was not engaged in coal gasification, an activity in which utilities such as

Boston Gas engaged.

**Paragraph 33 Is Admissible**

Paragraph 33 of Mr. Tull's declaration is:

> 33.    *The coal ash and coal tar conditions are exclusive of each other and require separate assessment. While coal tar may be attributed to Barrett, coal ash is a common fill material that is ubiquitous, and treated as a background condition by the MADEP, in this type of urban setting. Additionally, various compounds identified on the Site could be due to uses at the property after 1965, when Barrett ceased operations.*

See Section A.

**Paragraph 35 Is Admissible**

Paragraph 35 of Mr. Tull's declaration is:

> 35.    *Again, no coal gasification operations were conducted at the Site; therefore contaminants related to this type of industry may have originated elsewhere.*

See response to paragraph 31.

**Paragraph 39 Is Admissible**

Paragraph 39 of Mr. Tull's declaration is:

> 39.    *It appears from historical information that the "lagoon" may have been a depression (former stream/wetlands channel) that required filling with Malden River sediments prior to Barrett building on the Site.*

See response to paragraph 6.

**Paragraph 41 Is Admissible**

Paragraph 41 of Mr. Tull's declaration is:

> 41.    *These adjacent parcels could be contributing petroleum related compounds (e.g. benzene, toluene, ethyl benzene) to the Site.*

See response to paragraph 7.

**Paragraph 43 Is Admissible**

Paragraph 43 of Mr. Tull's declaration is:

> 43.    *This indicates a variety of uses on and adjacent to this Site that may have had impacts before and after Barrett.*

See response to paragraph 7.

## Conclusion

For the foregoing reasons, Well-Com's motion to strike portions of Mr. Tull's declaration should be denied.

Dated:  April 14, 2006                          HONEYWELL INTERNATIONAL INC.,

                                                By its attorneys,

                                                /s/David B. Chaffin
                                                Thomas K. Christo (BBO #083240)
                                                David B. Chaffin (BBO #549245)
                                                HARE & CHAFFIN
                                                160 Federal Street
                                                Boston, Massachusetts 02110-1700
                                                (617) 330-5000

                                                Of Counsel:

                                                Brian D. Israel, Esq.
                                                Arnold & Porter, LLP
                                                555 12th Street, NW
                                                Washington, D.C. 20004
                                                (202) 942-6546

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 14, 2006.

                                                /s/David B. Chaffin