UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| WELL-COM ASSOCIATES, L.P., | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | Docket No. 05-10056-JLT |
| HONEYWELL INTERNATIONAL INC., | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, Honeywell International Inc., respectfully submits this memorandum in opposition to plaintiff's motion for partial summary judgment, and in further support of its own motion for partial summary judgment.

**Preliminary Statement**

Plaintiff has chosen to stand on the summary judgment papers that it filed in February 2006, despite the fact that the Supreme Court, on June 11, 2007, invalidated and/or mooted much of the discussion in plaintiff's 40-page supporting memorandum. Plaintiff's motion for partial summary judgment should be denied for that reason alone.

The Supreme Court ruled that a PRP that undertakes cleanup efforts, but has not been the subject of an enforcement action under § 106 or § 107, may assert a claim against other PRPs for costs actually incurred in the cleanup, pursuant to 42 U.S.C. § 9607 (CERCLA, § 107(a)). United States v. Atlantic Research Corporation, __ S. Ct. __, 2007 WL 1661465 (2007). The Court emphasized, however, that its decision does not

mean that a PRP can "avoid § 113(f)'s equitable distribution of reimbursement costs among PRPs by instead choosing to impose joint and several liability on another PRP in an action under § 107(a)." 2007 WL 1661465, *7. <u>Atlantic Research</u> affirms the fundamental principle that a PRP is subject to equitable distribution of response costs among PRPs, <u>regardless</u> of whether the action is brought under § 107 or § 113(f).[1] The CERCLA discussion at pages 10-28 of plaintiff's memorandum should therefore be disregarded because <u>Atlantic Research</u> is controlling on the issues in this case.

Plaintiff's motion is directed at achieving precisely what the Supreme Court rejected: the imposition by a PRP of joint and several liability on another PRP without equitable contribution. Well-Com is not entitled to 100% of its response costs because it acquired the site at a discount and with knowledge that it was contaminated. Well-Com would receive a windfall if it were permitted to force Honeywell to pay 100% of the Site clean-up costs.[2] Well-Com has consistently sought to avoid the application of equitable principles in order to receive such a windfall. Well-Com's motion should be denied.

---

[1] A detailed discussion of <u>Atlantic Research</u> is contained in Honeywell's Memorandum In Support of Motion to Amend Answer and for Partial Summary Judgment dated July 5, 2007, at pages 1-3 and 12-13.

[2] Perhaps concerned that it will be viewed as looking to line its pockets, Well-Com has tried to capture the high ground. It claims that Honeywell should pay everything because it received money in an insurance settlement based in part on a claim with respect to the Site. And it repeatedly suggests that it is "innocent" and that it is cleaning up the Site voluntarily. But Well-Com has not proved that the settlement to which it refers had anything to do with the Site, nor that Honeywell received any money on account thereof, and Well-Com is no innocent, as recent correspondence from the DEP demonstrates.

**Counter-Statement Of Additional Facts[3]**

**Preliminary**

    **Well-Com's Failure To Comply With Rule 56(e)**

In support of its "Statement of Undisputed Facts," Well-Com has submitted, and cites, affidavits that in varying degrees do not comply with Rule 56(e). Honeywell hereby moves to strike the portions of the affidavits that do not comply.

    **Well-Com's Admissions**

Well-Com has admitted that when it acquired the Site in 1996, it was aware that the Site was contaminated. (Plaintiff's Local Rule 56.1 Statement of Undisputed Facts, ¶¶ 41, 53, 54.)

Well-Com has admitted also that it acquired the Site in 1996 for a small cash payment and the assumption of, in effect, only $2,000,000 in debt. Well-Com has admitted that the appraised fair market value of the Site nine years earlier, taking into account the contamination, was at least $5.6 million. (Id., ¶¶ 47, 52; Honeywell's Motion to Amend Answer and for Partial Summary Judgment and Local Rule 56.1 Statement of Undisputed Facts, ¶¶ 25-28, 36-38, 41.)

**Additional Facts**

At the heart of Well-Com's motion are two questions of fact: (1) whether Honeywell's predecessors caused all of the contamination at the Site, and (2) whether Well-Com's response costs to date have been reasonable. Well-Com claims there is no genuine issue of fact with respect to either of these questions. For purposes of this motion only, Honeywell will not dispute Well-Com's position on the second issue, but

---

[3] This counterstatement refers to the earlier Well-Com papers filed in February 2006, which it has chosen to "refile" by reference, supra.

3

only insofar as past costs are concerned (and despite the facts that Well-Com's principal has known about the contamination for 20 years, Well-Com has done little actual clean-up, and Well-Com is considered by DEP to be in violation of the MCP).

Honeywell does disagree with Well-Com with respect to the first issue, for two reasons. First, Well-Com's position as to causation is based solely on the opinion of its expert. Honeywell moves to strike the opinion. Second, Honeywell relies on the previously filed Declaration of Kerry Tull (Docket # 38) and Supplemental Declaration of Kerry Tull (Docket # 47). Mr. Tull is an environmental consultant who opines, to a reasonable degree of scientific certainty, that it is not reasonable to rule out other sources of the Site contamination.[4]

In any event, the issue actually is not relevant for present purposes. Even if Honeywell's predecessors did cause all of the contamination at the Site, Well-Com would not be entitled to recover all of its response costs. Because Well-Com acquired the Site at a discounted price, knowing it was contaminated, it has to share in the cost to clean it up. Otherwise it would receive a multi-million dollar windfall.[5]

---

[4] The declarations were filed in 2006 in connection with Honeywell's motion for partial summary judgment and in opposition to plaintiff's cross-motion for partial summary judgment.

[5] Well-Com asserts as fact that Honeywell (then Allied-Signal) received in settlement of an insurance coverage action proceeds based on or related to the Site. It has not submitted evidence, much less admissible evidence, to establish this fact. In support of the assertion, it cites only (1) the amended complaint in Allied-Signal's environmental coverage action, which is dated June 30, 1988, and which includes a list of over 350 sites in connection with which Allied-Signal had exposure and was seeking coverage, and (b) an opinion of the Delaware Chancery Court that states that the litigation had been settled in 1990. (Well-Com Rule 56.1 Statement, ¶¶ 73-81.) It is **not** a fair inference from these two documents that Honeywell (or Allied-Signal) received money from its insurer based on or related to the Site. The assertion that any part of the settlement proceeds related to the Site is pure speculation. Moreover, even assuming some component of the global settlement related to the Site, it would not follow that Well-Com is entitled to the relief it seeks: The amount of the component would simply factor into the equitable allocation analysis; it would not open the door to Well-Com's recovery of 100% of its response costs. For example, if, hypothetically, Allied-Signal received $2,000 in respect to the Site (and there is no evidence that even this amount was received), this could be used as a set-off of some sort, after taking into account as well the amount Honeywell itself contributed to the environmental studies at the Site, which far exceeds $2,000.

**ARGUMENT**

The following discussion will respond briefly to the points raised by plaintiff in its earlier motion. Honeywell relies on the points and authorities set forth in its July 5, 2007 Memorandum in Support of Motion to Amend Answer and for Partial Summary Judgment for a full discussion of the relevant issues.

### I. Well-Com Cannot Avoid Equitable Distribution of Reimbursement Costs By Bringing An Action Under § 107 For Cost Recovery

The essence of Well-Com's CERCLA argument [6] is (1) that Well-Com is entitled to bring an action under § 107 and (2) that it is entitled to full recovery of costs because liability under that section is joint and several. Only the first point is correct. Well-Com can, and indeed must, proceed under § 107 because it has not been the subject of an enforcement action. Per Well-Com's argument, joint and several liability with no equitable contribution automatically follows. The Supreme Court has rejected that precise proposition. A PRP may <u>not</u> avoid equitable contribution by virtue of the fact that the action is brought under § 107 for cost recovery. <u>Atlantic Research</u>, 2007 WL 1661465, *7. Principles of equitable contribution apply regardless of whether the action is brought under § 107 or § 113(f).[7] <u>Id</u>. There is no "pure" joint and several liability in a cost recovery action by one PRP against another, as Well-Com erroneously asserts.[8]

The principles set forth in <u>Atlantic Research</u> apply regardless of whether Well-Com is an "innocent" PRP. Indeed, the Supreme Court rejected any distinction between

---

[6]   Well-Com's CERCLA argument is set forth at Section B of its February 2006 memorandum of law, pages 10-29.

[7]   The Court suggested that the proper vehicle for triggering equitable distribution in an action by a plaintiff PRP for cost recovery would be a counterclaim for contribution by a defendant PRP under § 113(f). <u>Id</u>. Honeywell has moved for leave to amend the complaint to add a formal counterclaim, and has consistently asserted its rights to equitable contribution.

[8]   Plaintiff's Memorandum at 4.

5

innocent and non-innocent PRPs for purposes of actions under § 107.  2007 WL 1661465, **6-7.  Well-Com is subject to equitable contribution principles regardless of whether it caused any of the contamination at the site.

Well-Com's argument that damages may be "apportioned" only if the harm is divisible is irrelevant and misleading.  <u>Nowhere</u> in <u>Atlantic Research</u> does the Supreme Court mention divisibility as a prerequisite to the applicability of equitable contribution in a cost recovery action.  The Supreme Court distinguished between apportionment and contribution.  It noted that the Government improperly "uses the word 'contribution' as if it were synonymous with any apportionment of expenses among PRPs," and explained that equitable contribution is different: it is simply the traditional tort notion of contribution among tortfeasors.  <u>Id</u>. at 6.  Attempting to confuse the notions of apportionment/divisibility with equitable distribution of costs among PRPs gets Well-Com nowhere.  <u>Atlantic Research</u> conclusively puts Well-Com's red-herring divisibility argument to rest.[9]

## II.  WELL-COM IS NOT ENTITLED TO RECOVER 100% ON ITS CHAPTER 21E CLAIM EITHER

Well-Com's argument as to Chapter 21E is equally flawed.  Just as it begins its argument under CERCLA in the middle so as to by-pass the critical importance of its

---

[9]  Even prior to <u>Atlantic Research</u>, the courts, including the First Circuit, drew a similar distinction between apportionment as related to divisibility and contribution among PRPs.  In a § 107 cost recovery action involving multiple PRP defendants, <u>brought</u> <u>by</u> <u>a</u> <u>non-liable</u> <u>party</u>, a particular PRP can avoid being held jointly and severally liable for the entire harm at the site in question by showing that the harm is divisible and that it is not responsible for some divided portion of the harm to the site.  <u>See</u>, <u>e.g.</u>, <u>O'Neill v. Picillo</u>, 883 F.2d 176, 178-79 (1st Cir. 1989), <u>cert</u>. <u>denied</u>, 493 U.S. 1071 (1990) (State of Rhode Island cost recovery action against PRPs).  The <u>O'Neill</u> court recognized that even where a PRP is incapable of establishing divisibility, "a right of contribution [as against other PRPs] undoubtedly softens the blow . . .."  <u>Id</u>. at 179.  In other words, a PRP still is entitled to pursue contribution from other PRPs even if the harm is indivisible.  Divisibility is irrelevant to the rights of contribution as between Well-Com and Honeywell.

own liability, it begins its argument under Chapter 21E at the section of the statute that, at least superficially, allows it to by-pass the same critical fact.

Well-Com begins its argument at § 5 of Chapter 21E, which defines (a) the parties that are liable in connection with a release or threat of release of any hazardous material, (b) the parties to which such liable parties are liable, and (c) that for which such parties are liable. One category of liable parties are, as under CERCLA, owner/operators, and Well-Com acknowledges, as it must, that it "is an owner or operator of a site within the meaning of § 5(a)(1) and, therefore, qualifies as a potentially responsible party, or 'PRP.'" (Well-Com Memo at 29.)

Notably, § 5 provides, but Well-Com neglects to mention, that a liable party shall be liable to the Commonwealth for all response costs and damages to natural resources, but shall be liable to "any person" only for "damage to his real or personal property incurred or suffered as a result of such release or threat of release . . .." The liability under § 5 of a liable party thus extends to property damage, but <u>not</u> response costs, except where the Commonwealth is concerned.

Well-Com goes on to point out that § 5(b) (second paragraph) provides that no party that is liable as an owner or operator and "who did not own or operate the site at the time of the release or threat of release in question and did not cause or contribute to such release or threat of release shall be liable to any" other liable person, but shall be liable to the Commonwealth. Mass. Gen. L. ch. 21E, § 5(b) (second paragraph). It then claims that this language applies to it, and that, accordingly, it is not liable to Honeywell.[10] It

---

[10] Honeywell does not concede that the language applies to Well-Com. As indicated in the Declaration of Kerry Tull, there is evidence that some of the contamination may be the result of operations of tenants of Well-Com or its corporate predecessors.

7

says that Honeywell therefore is required to pay 100% of the response costs associated with the Site.

The flaws in Well-Com's argument are many. First, just because Well-Com may not be liable to Honeywell under Chapter 21E, § 5(b), it does not follow that Honeywell is liable to Well-Com for 100% of Well-Com's response costs. Indeed, Well-Com cites no case to support its flawed logic. Well-Com forgets that it is the plaintiff. The result it seeks requires a mechanism that permits it to hold Honeywell 100% liable. Section § 5(b) would only potentially insulate Well-Com from liability for property damage to Honeywell (were Honeywell to sue, which it has not done, of course). It does not expose Honeywell.

Second, Well-Com ignores the limit of liability mentioned above. Section 5 renders a party liable only for property damage, except as to the Commonwealth, which can recover response costs. But Well-Com sues for response costs. See, e.g., Mystic Landing, LLC v. Pharmacia Corp., 443 F. Supp.2d 97, 103 (D. Mass. 2006)(suits by private parties under Section 5 are limited to property damages); Church v. General Electric Co., 138 F. Supp. 169, 174-75 (D. Mass. 2001) (recognizing distinction between § 4 claim for response costs and § 5 claim for property damage); Black v. Coastal Oil New England, Inc., 699 N.E.2d 353, 354-57 (response costs available under § 4, not § 5), rev. denied, 707 N.E.2d 1077 (1998).

Third, and most important, Well-Com fails to focus on, and then misconstrues, the critical section of Chapter 21E, § 4, the cost-recovery mechanism. Section 4 provides in relevant part:

> If two or more persons are liable pursuant to section five for such release or threat of release, each shall be liable to the others for their equitable share of the costs of such response action.

Mass. Gen. L. ch. 21E, § 4.  Under this express language, because Well-Com is a liable party under chapter 21E, [11] Well-Com is entitled to recoup no more than its equitable share from Honeywell.

Well-Com argues, however, that this provision of § 4 is inapplicable because Well-Com is not and cannot be liable to Honeywell.  This argument is not consistent with the statutory language.  Section 4 plainly states that it applies when "two or more persons are liable."  It does not require that those persons be liable <u>to</u> <u>each</u> <u>other</u>.  Elsewhere, Well-Com cites cases holding that the courts may not add language to a statute that the Legislature "did not see fit to put there, whether the omission came from inadvertence or set purpose."  <u>King v. Viscoloid Co.</u>, 106 N.E. 988, 989 (1914); <u>accord</u> <u>Leary v. Contributory Retirement Appeal Bd.</u>, 657 N.E.2d 224, 227 (1995); <u>Boylston Water Dist.</u>

---

[11]  Try as it might, Well-Com fails to escape its owner/operator liability based on the third party/innocent landowner defense, which permits a party to avoid liability upon a showing that the release was caused by "an act or omission of a third party other than [one occurring] in connection with a contractual relationship existing directly or indirectly, with the person."  Mass. Gen. Laws c. 21E, § 5(c)(3).  If, as alleged by Well-Com, the releases at the Site were caused by Honeywell's predecessors, the eventual transfer of title to Well-Com would constitute a "contractual relationship," making Well-Com ineligible for the defense.  The only case cited by Well-Com, ostensibly in support of its position that the term "contractual relationship" was not intended to apply to a deed transfer, is <u>Gemme v. Applied Envtl. Tech.</u>, 2003 WL 21500549 (Mass. Super. 2003).  The case actually undercuts Well-Com's position.  There, the court stated:
> The term "contractual relationship" is not defined in G.L.c. 21E, and there are no Massachusetts appellate decisions that have analyzed the scope of this term as it relates to the third-party liability defense contained in G.L.c. 21E § 5(c).  Nevertheless, the plain language contained in G.L.c. 21E § 5(c) demonstrates that the Legislature envisioned a broad reading of the term "contractual relationship."

It is noteworthy that, for guidance in interpreting Chapter 21E's third party defense, the <u>Gemme</u> court cited the definition of a contractual relationship in CERCLA's parallel third party defense, which includes "land contracts, deeds, . . . or other instruments transferring title or possession."  42 U.S.C. § 9607(b)(3).  <u>Gemme</u>, 2003 WL 21500549 n.4.  The <u>Gemme</u> court was correct in looking to CERCLA, for the Supreme Judicial Court has directed that provisions of Chapter 21E that are like provisions of CERCLA be interpreted consistently with their federal counterparts.  <u>Martignetti v. Haigh-Farr, Inc.</u>, 680 N.E. 2d 1131, 1137 n.12 (Mass. 1997).   By virtue of its acceptance of the deed to the site, Well-Com's "contractual relationship" precludes Well-Com from availing itself of the third party defense.

v. Tahanto Regional School Dist., 227 N.E.2d 921, 923 (1967); Mitchell v. Mitchell, 43 N.E.2d 783, 787 (1942). Well-Com's argument conflicts with the teaching of these cases: It would have the Court change the phrase "If two or more persons are liable pursuant to section five," to "If two or more persons are liable **to each other** pursuant to section five . . .." This the Court cannot do.

Because Well-Com is liable, at a minimum, to the Commonwealth, it cannot pursue a joint and several liability claim against Honeywell under §§ 4 and/or 5. Section 4 limits Well-Com's potential recovery from Honeywell to its equitable share.[12]

The Supreme Judicial Court has instructed that "CERCLA and G. L. c. 21E have similar objectives and overlap in coverage. To the extent that there are similarities in language and structure, it is desirable to arrive at similar interpretations . . .." Martignetti, 680 N.E.2d at 1137 n. 12. Under CERCLA and Atlantic Research, any PRP that brings an action under § 107 is subject to equitable distribution of response costs among PRPs. To reach a different result under Chapter 21E would contravene the principle set forth in Martignetti. There is no rational basis to conclude that the Massachusetts legislature intended an opposite result to apply under state law than under CERCLA, with the result of lessening the liability of owner-operators under state law.

---

[12] Well-Com also seeks judgment awarding it its legal fees. Section 15 of Chapter 21E allows a party to recover attorneys' fees in the discretion of the court and only under certain circumstances. It provides:
> In any suit by Massachusetts residents to enforce the requirements of this chapter, or to abate a hazard related to oil or hazardous materials in the environment, the court may award costs, including reasonable attorney and expert witness fees, to any party other than the commonwealth who advances the purposes of this chapter.

Mass. Gen. L. ch. 21E, § 15. The Supreme Judicial Court has examined the question whether a plaintiff that is not "innocent" should be permitted to recover attorneys' fees from another liable party. Martignetti, 680 N.E. 2d at 1147-50. In concluding that it should not, the court stated that any other outcome would not "advance the purposes" of the statute. Id. at 1147-48. Consequently, because Well-Com is a liable party, it cannot recover its legal fees.

## CONCLUSION

For the foregoing reasons and the reasons stated previously, Honeywell respectfully requests that its motion for partial summary judgment be granted and that Well-Com's motion for partial summary judgment be denied.

Dated:  July 20, 2007          HONEYWELL INTERNATIONAL INC.,

By its attorneys,

/s/David B. Chaffin
Thomas K. Christo (BBO #083240)
David B. Chaffin (BBO #549245)
HARE & CHAFFIN
160 Federal Street
Boston, Massachusetts 02110-1700
(617) 330-5000

Of Counsel:

Brian D. Israel, Esq.
Arnold & Porter, LLP
555 12th Street, NW
Washington, D.C. 20004
(202) 942-6546

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on July 20, 2007.

/s/David B. Chaffin
David B. Chaffin